ANDREW S. AZARMI (SBN 241407)
andrew.azarmi@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
Telephone:   415 882 5000
Facsimile:   415 882 0300

ANNE E. WADDELL (SBN 311388)
anne.waddell@dentons.com
4675 Macarthur Court, Suite 1250
Newport Beach, CA 92660
Telephone:   949 732 3700
Facsimile:   949 732 3739

MARK G. CALIFANO (*pro hac vice forthcoming*)
mark.califano@dentons.com
MATTHEW A. LAFFERMAN (*pro hac vice forthcoming*)
matthew.lafferman@dentons.com
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Telephone:   202 496 7500

Attorneys For Petitioners
TERRAFORM LABS PTE LTD, and DO HYEONG KWON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SUBPOENA TO PAYWARD, INC D/B/A KRAKEN<br><br>In Connection With:<br><br>Securities and Exchange Commission<br><br>v.<br><br>Terraform Labs PTE LTD, and Do Hyeong Kwon<br><br>Case No. 1:23-cv-01346<br>United States District Court<br>Southern District of New York | Case No. 3:23-mc-80248<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA OR FOR TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:<br>Time:<br>Dept.:<br>Judge:<br><br>Date Action Filed: September 28, 2023<br>Trial Date: None Set |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, at a date and time to be determined[1], Petitioners Terraform Labs Pte. Ltd. and Do Hyeong Kwon will and hereby do move the Court, located at 450 Golden Gate Ave., San Francisco, CA 94102 (or, depending on case assignment, at 1301 Clay St., Oakland, CA 94612), pursuant to Federal Rule of Civil Procedure 45, for an order:

1. Compelling third party Payward, Inc., d/b/a Kraken ("Kraken") to comply with Subpoena to Produce Documents, Information, or Objects, Request for Production Number 4; or, in the alternative

2. Transferring this Motion to the United States District court for the Southern District of New York pursuant to Fed. R. Civ. P. 45(f).

This Motion is based upon this Notice and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed declaration of Matthew A. Lafferman with attached exhibits, the concurrently-filed request for judicial notice, oral argument of counsel at hearing, all pleadings and papers on file in this action, and any other matters the Court may properly consider by judicial notice or otherwise.

Dated: September 28, 2023                                  DENTONS US LLP


                                                           By:  _____/s/ Anne E. Waddell_____
                                                                     Anne E. Waddell

                                                           Attorney for Petitioner TERRAFORM LABS, PTE LTD, and DO HYEONG KWON

---

[1] Petitioners Terraform Labs Pte. Ltd. and Do Hyeong Kwon will re-notice the motion once a judicial assignment becomes available.

DENTONS US LLP
4675 MACARTHUR COURT
NEWPORT BEACH, CALIFORNIA 92660
949 732 3700

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................3

II. STATEMENT OF FACTS....................................................................................................4

    A.    Background on Petitioners and UST/LUNA................................................4

    B.    The SEC's Action and Allegations of Petitioners' Purported Fraud Related to the Stability of the LUNA / UST Mint-Burn Algorithm and the May 2022 Depeg ..........................................................................................5

    C.    Petitioners' Defense and Related Discovery Efforts...................................6

III. ARGUMENT .......................................................................................................................8

    A.    Legal Standard .............................................................................................9

    B.    Kraken Waived All Objections to the Subpoena .........................................9

    C.    The Trading Data Sought from Kraken on May 9 and 10, 2022 is Directly Relevant to the Underlying Action ............................................................10

    D.    Alternatively, This Motion Should Be Transferred to the Southern District of New York...............................................................................................12

IV. CONCLUSION ..................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC v. Aereo. Inc.*,
  No.: 5:12mc80300, 2013 WL 1508894 (N.D. Cal. Apr. 10, 2013) .......................................... 9

*Adler v. Payward, Inc.*,
  827 F. App'x 133 (2d Cir. 2020) ......................................................................................... 12

*Adler v. Payward, Inc. d/b/a Kraken*,
  *No.* 18 CIV. 8100 (PAC), (S.D.N.Y. Sept. 5, 2018) (Kraken's pending lawsuit
  in S.D.N.Y.) ......................................................................................................................... 12

*Erickson v. Builder Advisor Grp. LLC*,
  No. 22-mc-80094-TSH, 2022 WL 3109587, at *3 (N.D. Cal. July 6, 2022) ......................... 10

*La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*,
  285 F.R.D. 481 (N.D. Cal. 2012) ........................................................................................... 9

*Mariano v. Villa*,
  No. 5:16-cv-03467-EJD, 2020 WL 3615554 (N.D. Cal. July 2, 2020) ................................. 9

*McCoy v. Sw. Airlines Co.*,
  211 F.R.D. 381 (C.D. Cal. 2002) ......................................................................................... 10

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005) ........................................................................................... 9

*Poturich v. Allstate Ins. Co.*,
  No. 5:15-cv-00081, 2015 WL 12766048 (C.D. Cal. Aug. 11, 2015) .................................... 10

*Schoonmaker v. City of Eureka*,
  No. 3:17-CV-06749 (RMI), 2018 WL 5829851 (N.D. Cal. Nov. 7, 2018) .......................... 10

*SEC v. Terraform Labs, PTE LTD, and Do Hyeong Kwon*,
  S.D.N.Y., Case No. 1:23-cv-01346 ............................................................................ *passim*

*United States v. Payward Ventures, Inc.*,
  No. 23-MC-80029-JCS, 2023 WL 4303653 (N.D. Cal. June 30, 2023) ............................... 12

**Other Authorities**

Kraken, *What is Kraken.com?* (last accessed on Sept. 27, 2023),
  https://bit.ly/48tGJyr; ............................................................................................................ 7

*Trading Starts December 16 – Deposit Now* (Dec. 14, 2021),
  https://bit.ly/3tcalQM ............................................................................................................ 7

DENTONS US LLP
4675 MACARTHUR COURT
NEWPORT BEACH, CALIFORNIA 92660
949 732 3700

*Trading Starts February 17 – Deposit Now* (Feb. 15, 2022), https://bit.ly/3tfskWE; ................... 7

**Rules & Regulations**

Federal Rules of Civil Procedure 26 ................................................................................................ 9

Federal Rules of Civil Procedure 26(b) ........................................................................................... 9

Federal Rules of Civil Procedure 26(b)(1) ...................................................................................... 9

Federal Rules of Civil Procedure 45 ..................................................................................... 7, 9, 12

Federal Rules of Civil Procedure 45(c)(2)(B) ................................................................................. 7

Federal Rules of Civil Procedure 45(d)(1) ...................................................................................... 9

Federal Rules of Civil Procedure 45(d)(2)(B) ................................................................................. 9

Federal Rules of Civil Procedure 45(f) .......................................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Petitioners Terraform Labs, PTE LTD ("TFL") and Do Hyeong Kwon (collectively with TFL, "Petitioners") bring this motion to compel Payward, Inc., d/b/a Kraken ("Kraken") to produce data responsive to a third-party subpoena that is *vital* to Petitioners' defense in a complex cryptocurrency action brought by the Securities and Exchange Commission ("SEC") in the Southern District of New York. *SEC v. Terraform Labs, PTE LTD, and Do Hyeong Kwon*, S.D.N.Y., Case No. 1:23-cv-01346 (the "Underlying Action").

TFL is a software development firm headquartered in Singapore that supported the development of the Terra blockchain. The Terra blockchain is a blockchain built to support a range of assets and protocols, including algorithmic stablecoins—cryptocurrency tokens whose value is tied or "pegged" to fiat currency. Among other claims, the SEC alleges that the Petitioners falsely represented the stability of one of its algorithmic stablecoins, TerraUSD or UST—specifically, in its ability to withstand market forces due to its algorithmic "mint/burn" mechanism. The SEC further alleges that this purported misrepresentation resulted in the occurrence of a market event causing the destabilization of Petitioner's ecosystem and the depeg of UST from about May 6 to May 12, 2022 (the "May 2022 Depeg"). In response, Petitioners contend that this market destabilization did not result from instability in the algorithm of the UST stablecoin but instead resulted from an intentional effort by third parties to "short" and depeg UST from its price and involved a direct market intervention by TFL and others in an effort to combat the short.

In order to establish this defense, Petitioners served a subpoena on the cryptocurrency exchange Kraken on June 28, 2023 (the "Subpoena") seeking trade data related to the May 2022 Depeg. Despite Kraken filing its objections late, Petitioners nonetheless worked in good faith with Kraken over the next month-and-a-half to narrow the requests in the Subpoena to two core sets of data: (1) trading data associated with crypto wallets and the trading accounts identified as causing and contributing to the May 2022 Depeg, accounts which were hosted by the Kraken cryptocurrency exchange and (2) data showing the trading of Terra Native Tokens that occurred on Kraken deposit wallet addresses during the May 2022 Depeg.

Petitioners' dispute with Kraken centers around the dates for the second set of trade data. Kraken agreed to produce trading data of all cryptocurrency tokens on the Terra blockchain that Kraken represented that it supports from May 6 through May 8, 2022. However, despite the fact that the May 2022 Depeg occurred through May 12, 2022 and the data sought is for only two more days (May 9 and 10), Kraken refused to produce trade data from May 9 to May 10, 2022.

Kraken's trading data is directly relevant to understanding the market event and consequently Petitioners' defense. Trading data shows that when the price of UST significantly deteriorated on May 9, TFL and the Luna Foundation Guard ("LFG") engaged in a major effort to support the price. On May 10th, that effort was overwhelmed by a tidal wave of selling. As a result, trade data from these dates is necessary for Petitioners to determine the complete picture of trading during this period and demonstrate how the effort to intentionally short UST impacted the broader market for UST and other tokens based on the Terra blockchain—which would certainly include trading that occurred on Kraken, a major cryptocurrency exchange. Without it, Petitioners will be significantly hampered in establishing their defense in the Underlying Action, which will result in irreparable civil—and possibly other—injury. As a result, Petitioners respectfully request the Court issue an order compelling Kraken to produce the requested trade information from May 9, 2022 and May 10, 2022.

## II.   STATEMENT OF FACTS

### A.   Background on Petitioners and UST/LUNA

TFL is a Singaporean open-source software development firm, to which Mr. Kwon served as CEO. Ex. A to Decl. of Matthew A. Lafferman ("Lafferman Decl."), Am. Compl. (hereinafter, the "AC") ¶¶ 15–16. TFL developed the Terra blockchain, which is a blockchain built to support a range of assets and protocols, including algorithmic stablecoins—cryptocurrency tokens whose value is tied or "pegged" to fiat currency. *Id.* ¶¶ 31–33. These assets include (1) TerraUSD or UST, which was a decentralized algorithmic stablecoin value-pegged to the U.S. dollar, and (2) LUNA, which was a non-stablecoin cryptocurrency intended to absorb volatility and stabilize the UST price peg for TerraUSD. *Id.* Both cryptocurrency tokens operated in tandem to stabilize the UST peg through a mint burn mechanism—minting 1 UST would burn $1 worth of LUNA and minting $1

USD worth of LUNA would burn 1 UST. *Id.* The opportunity to arbitrage between the price of UST and $1 incentivized users to interact with the protocol to decrease and increase the supplies of UST and LUNA to normalize the price of UST relative to $1. *Id.*

**B.  The SEC's Action and Allegations of Petitioners' Purported Fraud Related to the Stability of the LUNA / UST Mint-Burn Algorithm and the May 2022 Depeg**

The SEC filed its initial Complaint in the Underlying Action in February 2023 and the AC in March 2023 alleging different violations of securities laws. Lafferman Decl. ¶ 4 & Exs. A, C. The SEC alleges that Petitioners offered and sold cryptocurrency tokens, including UST and LUNA, that purportedly constituted unregistered securities and security-based swaps. AC ¶¶ 39–117. In addition, the SEC brings two different fraud claims. First, SEC alleges that Defendants falsely represented that a Korean payment system, known as Chai, used the Terra blockchain to process and settle commercial payments, and the Defendants did so in order to encourage purchases of the two tokens used on the Terra blockchain—LUNA and UST. *Id.* ¶¶ 121–52.

Second—and directly relevant here—the SEC alleges that Petitioners misled investors about the stability of UST by falsely claiming that the algorithm was able to automatically restore and maintain the price peg, which establishes the reliability and effectiveness of UST. *Id.* ¶¶ 1, 6–9, 153–73. Specifically, the SEC alleges that after the market price of UST declined from its peg of one U.S. Dollar in May 2021 ("May 2021 Depeg"), Petitioners misrepresented the cause of UST's recovery by claiming that the algorithm was able to restore and maintain the price peg; when—according to the SEC—it instead recovered because Petitioners entered an arrangement with a U.S. trading firm, Jump Trading LLC, (Jump is referred to at paragraphs 153 to 169 of the AC as the "U.S. Trading Firm") to purchase substantial amounts of UST to support the price. The SEC further alleges that the market price of UST again declined from its peg of one U.S. Dollar during the May 2022 Depeg but was unable to be restored because there was no intervention similar to Jump's alleged intervention in the May 2021 Depeg. According to the SEC, the Petitioners'

purported misrepresentation as to these destabilization events resulted in the loss of $40 billion of market value, including devastating losses for U.S. retail and institutional investors.[2]

### C. Petitioners' Defense and Related Discovery Efforts

In response to the SEC's allegations related to the stability of the algorithm, Petitioners contend that the May 2022 Depeg did not result from instability in the algorithm of the UST stablecoin but instead resulted from an intentional effort by third parties to "short" and depeg UST from its price, which was met with direct market intervention by TFL and LFG to combat the short. *See*, *e.g.*, Ex. B to Lafferman Decl., Answer ¶ 170 (stating that "the cause of the depeg appears to have been concerted action by certain market participants to depress the price of UST"). Prior to the May 2022 Depeg, a significant portion of UST was deposited in a lending protocol on the Terra blockchain—known as the Anchor Protocol—which paid a return of almost twenty percent on crypto assets on the Terra blockchain. The May 2022 Depeg was precipitated by the withdrawal of close to $100 million of UST from the Anchor Protocol and depositing most of this UST in a liquidity pool for stablecoins that sits on the Ether blockchain—known as the UST/3CRV curve pool—where this UST was sold for other stablecoins, forcing the price of UST below its $1 price peg. The market was further destabilized by near-simultaneous larger withdrawals of UST from the Anchor Protocol that were sent to the 3CRV curve pool and other centralized exchanges and quickly sold. The timing and volume of this trading reflects that the May 2022 Depeg reflects that this was not normal market activity but a coordinated effort to short UST.

In an effort to collect evidence the necessary trading data, Petitioners issued subpoenas to multiple cryptocurrency exchanges. Although cryptocurrency trading data that occurs on the blockchain is publicly accessible, trades that occur on cryptocurrency trading platforms or exchanges is not publicly available, and trade data from these exchanges includes counterparties, execution methods, and other trade economics that are only available from the exchange. Thus, to

---

[2] Despite the complexity and novelty of the SEC's action—with the case being one of the first cases in which the SEC asserted that cryptocurrency tokens constitute securities—both the SEC and Petitioners have been operating under an accelerated discovery period. Despite the case being filed in February 2023 and Petitioners' Motion to Dismiss only being denied on July 31, 2023, discovery is scheduled to end on October 13, 2023 with the parties being expected to be prepared for trial on November 30, 2023. Lafferman Decl. ¶¶ 4–5 & Ex. D.

understand the causes that led to the May 2022 Depeg, review and analysis of the transactions that occurred during May 2022 on cryptocurrency exchanges that hosted UST and LUNA trading, like the Kraken exchange,[3] is required. Specifically, the order and trade volume data in Terra-based tokens that occurs on these exchanges will help determine whether the certain entities or individuals are pushing the bulk of the volume in sell orders and trades that created the selling pressure leading to the depeg and whether the activity is consistent with coordinated trade sale and activity.

As part of this effort, on June 28, 2023—the same day that Judge Rakoff issued his Civil Case Management Plan—service of a Rule 45 document subpoena (the "Subpoena") was executed on the third party and cryptocurrency exchange Kraken, requiring a response by July 28, 2023. Lafferman Decl. ¶ 6 & Exs. E–F. Requests No. 1 through 3 and 5 through 10 of the Subpoena sought communications, trading records, and other information related to crypto wallets and the trading accounts that Petitioners had identified as causing and contributing to the May 2022 Depeg that were hosted by the Kraken cryptocurrency exchange (identified in the Subpoena as "Target Wallets"). *Id.* Request No. 4 sought data showing the trading of cryptocurrency tokens—including Bitcoin, UST, LUNA, Bitcoin, and other stablecoins—that occurred on certain Kraken deposit wallet addresses (identified in the Subpoena as "Hot Wallets") during the May 2022 Depeg. *Id.* Kraken belatedly served objections on July 28, 2023. *Id.* ¶ 7 & Ex. G; *see also* Fed. R. Civ. P. 45(c)(2)(B).

Notwithstanding this waiver, Petitioners worked in good faith over the next month-and-a-half to narrow the scope of the Subpoena in response to Kraken's expressed concerns. Specifically, from August 2, 2023 through September 26, 2023, Petitioners engaged in efforts to meet and confer with Kraken via email and Zoom over a dozen times. Lafferman Decl. ¶¶ 8–19 & Exs. H–O. On multiple occasions, Petitioners agreed to narrow the Subpoena in response to concerns as to burdens expressed by Kraken. For example, Petitioners agreed to withdraw Request No. 6 and

---

[3] Kraken is a centralized cryptocurrency exchange that listed both UST and LUNA as of February 2022. *See* Kraken, *What is Kraken.com?* (last accessed on Sept. 27, 2023), https://bit.ly/48tGJyr; Kraken Blog, *TerraUSD (UST) Trading Starts February 17 – Deposit Now* (Feb. 15, 2022), https://bit.ly/3tfskWE; Kraken Blog, *Terra (LUNA) Trading Starts December 16 – Deposit Now* (Dec. 14, 2021), https://bit.ly/3tcalQM.

agreed to forego its requests for Bitcoin trading included in Request No. 4 to the Subpoena. Lafferman Decl. ¶¶ 9 (showing Petitioners agreed to withdraw Request No. 6), 12–19 (showing Petitioners backed off on seeking Bitcoin trading data after Kraken's objections). As of today, Kraken has produced or agreed to produce (1) data related to the Target Wallets identified in the Subpoena, (Lafferman Decl. ¶ 12 & Ex. J) and (2) trade data on Hot Wallets for all Terra-based cryptocurrency tokens hosted by Kraken[4] from May 6 to May 8, 2022 with anonymized account identifications. Id. ¶ 19 & Ex. O. However, Kraken refused to produce trade data for the later for May 9 to May 10, 2022.

### III. ARGUMENT

The trading data from May 9 to May 10, 2022 that Petitioners seek is directly relevant to the Underlying Action and discoverable with minimal burden to Kraken. Even assuming that Kraken has not waived its objections by filing them late, the trading data on May 9 and May 10, 2022 is directly relevant to the May 2022 Depeg and by extension establishing Petitioners defense that the depeg resulted from efforts to intentionally short UST. And any burden to Kraken in producing only two days of additional trading data—after already agreeing to produce three days of trading data—is minimal.

Alternatively, Petitioners seek to transfer this matter to the Southern District of New York before Judge Rakoff in the Underlying Action. The court management issues created by the accelerated timeline and potential rulings on similar subpoenas to various cryptocurrency exchanges constitute the "exceptional circumstances" that would support transfer of this matter to Judge Rakoff in the Underlying Action. And any resulting burden to Kraken would be minimal, as Kraken is a global platform that is no stranger to defending lawsuits in the Southern District of New York.

---

[4] The relevant trading pairs identified by Kraken are Luna for USD (and vice versa), UST for USD (and vice versa), LUNA for Euro (and vice versa), UST for Euro (and vice versa), UST for USDT (and vice versa), and UST for USDC (and vice versa). Ex. O to Lafferman Decl. (September 26 email from D. Clarkson).

DENTONS US LLP
4675 MACARTHUR COURT, SUITE 1250
NEWPORT BEACH, CALIFORNIA 92660
415 882 5000

### A.  Legal Standard

Subpoenas served pursuant to Rule 45 of the Federal Rules of Civil Procedure are subject to the relevance requirements set forth in Federal Rule 26(b). *Mariano v. Villa*, No. 5:16-cv-03467-EJD, 2020 WL 3615554, at *2 (N.D. Cal. July 2, 2020). Rule 26 states, in part, that the scope of discovery permits parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and to the needs of the case" and that such information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rule 45 also requires the party issuing the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In determining whether a subpoena poses an undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). This determination requires the court to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id*. (citations and quotations omitted).  Additionally, although the party seeking to compel discovery has the burden to prove that its request satisfies the relevance requirements, *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012), the party challenging the subpoena has the burden of persuasion. *ABC v. Aereo. Inc.*, No.: 5:12mc80300, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed.").

### B.  Kraken Waived All Objections to the Subpoena

At the outset, Kraken has waived its objections to the Subpoena. Rule 45 clearly states that any objections to such subpoenas must be served "before the earlier of the time specified for compliance ***or 14 days*** after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). Petitioners served Kraken with the Subpoena on June 28, 2023, and the Subpoena demanded compliance on July 28, 2023.  Lafferman Decl. ¶ 6 & Exs. E, F. Pursuant to Rule 45, objections were due July 12, 2023. Nonetheless, Kraken did not serve its objections until July 28, 2023. Lafferman Decl. ¶ 7 & Ex. G. "Failure to serve timely objections waives all grounds for objection."

*McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002); *see also Erickson v. Builder Advisor Grp. LLC*, No. 22-mc-80094-TSH, 2022 WL 3109587, at *3 (N.D. Cal. July 6, 2022), *report and recommendation adopted*, No. 22-MC-80094-JST, 2022 WL 3109563 (N.D. Cal. Aug. 4, 2022); *Schoonmaker v. City of Eureka*, No. 3:17-CV-06749 (RMI), 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018); *Poturich v. Allstate Ins. Co.,* No. 5:15-cv-00081, 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015) (finding that non-party witness "has failed to object within the time required and hence, has waived any objections."). Accordingly, Kraken has waived all objections.

### C. The Trading Data Sought from Kraken on May 9 and 10, 2022 is Directly Relevant to the Underlying Action

The trading data that Petitioner seeks from Kraken from May 9 and May 10, 2022 is directly relevant to Petitioners' defenses in the Underlying Action and poses a minimal, if any, burden to Kraken to produce.

First, the data sought bears directly on Petitioners' defenses to the SEC's claims in the Underlying Action. The SEC alleges that the May 2022 demonstrates Petitioners purported fraud and misrepresentations as the stability of UST and that the algorithm was able to automatically restore and maintain the price peg. Petitioners' defense to this claim is that the May 2022 Depeg did not result from instability in the algorithm of the UST stablecoin but instead resulted from an intentional effort by third parties to "short" and depeg UST from its price. Ex. B to Lafferman Decl., Ans. ¶ 170 (stating that "the cause of the depeg appears to have been concerted action by certain market participants to depress the price of UST").

Kraken's trading data from May 9 and 10, 2022 would bear directly on the cause of the May 2022 Depeg. Publicly available data reflects that starting around 10:30 CDT on May 9, 2022, selling pressure in trading venues increased substantially and continued at an increased pace through May 10, 2022. This selling pressure resulted in UST losing its peg on May 9, 2022, after which TFL engaged in a major effort to support the price that was overcome by a tidal wave of trading on May 10, 2022. General order book data collected from centralized cryptocurrency exchanges like Kraken, which is commercially available, reflects the same selling pressure. The following chart,

which shows Kraken market depth and trading volume for UST/USDT from May 6 to May 10, 2022, reflects this selling pressure:



As a result, Kraken's account-based trading data over these two days is instrumental to analyze this selling pressure and, more importantly, identify if this selling pressure resulted from certain entities or actors in a manner consistent with intentional short activity. Petitioners' limitation to these two days worth of day is generous, given the SEC's allegations that the May 2022 Depeg occurred throughout a broader period in May 2022. AC ¶¶ 170–71. As such, the requested trading information is directly relevant to why the May 2022 Depeg occurred, and thus, is relevant to Petitioners' defense in the Underlying Action.

Further, there is minimal burden on Kraken to producing this information. Kraken has already produced limited trading data for May 6 to May 8 and agreed to reproduce this data. Petitioners cannot obtain this information through any other means and its solely within Kraken's possession and control. Including only two additional days' worth of trading data with the other trading data that Kraken has already agreed to produce imposes minimal burden, if any, on Kraken.

1  This conclusion is only reinforced when considering the relevancy of the information requested—
2  with the two days at issue (May 9 and 10, 2022) being the exact dates of that UST was ultimately
3  depegged. As a result, the Court should find such trading data relevant to the Underlying Action
4  and enter an order compelling Kraken to produce it to Petitioners.

### D. Alternatively, This Motion Should Be Transferred to the Southern District of New York

Alternatively, the Court should transfer this Motion to the Underlying Action in the Southern District of New York, which issued the Subpoena, for Judge Rakoff's consideration and decision. Rule 45 permits a court to transfer a motion to compel a Rule 45 subpoena even over Kraken's objection if there are "exceptional circumstances." Fed. R. Civ. P. 45(f). Exceptional circumstances exist here as the issues implicate Judge Rakoff's accelerated discovery schedule in complex and novel cryptocurrency case where similar issues may arise. Specifically, the committee notes to this provision of Rule 45 states that transfer may be warranted "in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f), advisory committee's note to 2013 Amendment. As noted above, not only will the accelerated discovery schedule in the Underlying Action likely creates challenges for resolving the present dispute over the Subpoena, Petitioners have issued similar subpoenas to various cryptocurrency exchanges for similar trading data and thus the same issue may arise in various districts where compliance is being sought. Thus, transferring this application will permit Judge Rakoff to consider these issues and address them in a manner that is consistent with his overall management of the case and avoid inconsistencies over the issue.

Further, the burden on Kraken from transferring this matter is minimal. Kraken is not an individual or a small entity. *United States v. Payward Ventures, Inc.*, No. 23-MC-80029-JCS, 2023 WL 4303653, at *1 (N.D. Cal. June 30, 2023) (recognizing Kraken as offering "services to both U.S. and international users in more than 190 countries), and has defended or pending lawsuits in the Southern District of New York. *See, e.g., Adler v. Payward, Inc. d/b/a Kraken, No.* 18 CIV.

8100 (PAC), (S.D.N.Y. Sept. 5, 2018) (Kraken's pending lawsuit in S.D.N.Y.); *Adler v. Payward, Inc.*, 827 F. App'x 133 (2d Cir. 2020). Accordingly, transfer is warranted.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Petitioners' motion to compel or, in the alternative, transfer this application to the Southern District of New York.

Dated:  September 28, 2023

Respectfully submitted

DENTONS US LLP

By:    */s/ Anne E. Waddell*
       Anne E. Waddell

Attorney for TERRAFORM LABS PTE LTD, and DO HYEONG KWON