# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>    v.<br><br>TERRAFORM LABS PTE LTD. and<br>DO HYEONG KWON,<br><br>                  Defendants. | No. 1:23-cv-1346 (JSR)<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its Amended Complaint against Defendants Terraform Labs PTE Ltd. ("Terraform") and Do Hyeong Kwon ("Kwon") (collectively "Defendants"), alleges as follows:

### SUMMARY

1.    From at least April 2018 through May 2022 ("Relevant Period"), Terraform and Kwon offered and sold crypto asset securities[1] in unregistered transactions and perpetrated a fraudulent scheme that led to the loss of at least $40 billion of market value, including devastating losses for U.S. retail and institutional investors.

2.    Defendants' crypto asset securities offerings involved an array of interrelated tokens that were created, developed, promoted, offered, and sold by Defendants as profit-seeking investments.

---

[1] As used in this complaint, "crypto asset security" refers to an asset that is issued and/or transferred using distributed ledger or blockchain technology – including, but not limited to, so-called "digital assets," "virtual currencies," "coins," and "tokens" – and that meets the definition of "security" under the federal securities laws. "Security" includes any "investment contract," "security-based swap," or "receipt for" a security.

EXHIBIT A

3.      Terraform and Kwon marketed the crypto asset securities to investors in the United States and abroad, repeatedly claiming that the tokens would increase in value and touting Defendants' managerial and entrepreneurial efforts to do so.  For example, Defendants touted and marketed a Terraform-created "yield-bearing" blockchain protocol, dubbed the Anchor Protocol, which promised to pay 19-20% interest on one of Terraform's crypto assets.

4.      Defendants' efforts at attracting investors and growing the size and value of the Terraform "ecosystem" were initially successful.  By April 2022, one of Terraform's crypto asset securities, the LUNA token, had a market value among the ten highest in the world for crypto assets.  And Terraform's so-called "stablecoin" Terra USD ("UST") – a crypto asset security that Terraform designed to maintain a one-to-one peg to the U.S. dollar by virtue of an algorithm coded into the blockchain tying its value to LUNA – was also among the world's largest, with a total market value of over $17 billion as of April 2022.

5.      Defendants also engaged in a fraudulent scheme to mislead investors about the Terraform blockchain and its crypto asset securities.  Terraform and Kwon repeatedly – and falsely – told the investing public that a popular Korean electronic mobile payment application called "Chai" employed the Terraform blockchain to process and settle commercial transactions between customers and merchants.  If true, this would have been a breakthrough for the Terraform blockchain, a supposed real-world use that could increase the value of LUNA as demand for the token rose in connection with increased use of the Terraform blockchain. Investors bought in, purchasing LUNA and other Terraform crypto assets, based in part on Terraform's and Kwon's claims that Chai payment transactions were being processed and settled on the Terraform blockchain.  But in reality, Chai payments did not use the Terraform blockchain to process and settle payments.  Rather, Defendants deceptively replicated Chai

2

payments onto the Terraform blockchain, in order to make it appear that they were occurring on the Terraform blockchain when, in fact, Chai payments were made through traditional means.

6.     Terraform and Kwon also misled investors about one of the most important aspects of Terraform's offering – the stability of UST, the algorithmic "stablecoin" purportedly pegged to the U.S. dollar.  UST's price falling below its $1.00 "peg" and not quickly being restored by the algorithm would spell doom for the entire Terraform ecosystem, given that UST and LUNA had no reserve of assets or any other backing.

7.     In May 2021, UST dropped below $1.00.  In response, Defendants secretly discussed with a third party that the third party would purchase massive amounts of UST to restore the $1.00 peg.  As UST returned to $1.00, Kwon and Terraform publicly and repeatedly touted the restoration of the $1.00 UST peg as a triumph of decentralization and the "automatically self-heal[ing]" UST/LUNA algorithm over the "decision-making of human agents in time of market volatility," misleadingly omitting the actual reason why the $1.00 peg was restored:  the third party's intervention to prop up UST's price.  By late May, Terraform was publicly boasting to the investing public that it had purportedly proven the reliability of the UST $1.00 peg – the "lynchpin for the entire [Terraform] ecosystem" – in a "black swan" event that was "as intense of a stress test in live conditions as can ever be expected."

8.     After the UST peg was restored in May 2021, investors poured additional billions of dollars into the Terraform ecosystem, mostly through investor purchases of LUNA and UST.

9.     One year later, in May 2022, under selling pressure from large UST holders, UST de-pegged from the U.S. dollar again.  This time, without secret intervention to save it, the price of UST and LUNA plummeted to nearly zero, bringing down with them the other crypto asset securities in the interconnected Terraform ecosystem, wiping out over $40 billion of total market

3

value in these assets and sending shock waves through the crypto asset community.  A number of retail investors in the United States lost their life savings.  And some U.S. institutional investors lost billions of dollars in the market value of their LUNA and UST holdings.

## VIOLATIONS

10.     As a result of the conduct alleged in this Complaint, Defendants violated the securities offering registration provisions of the federal securities laws, namely Section 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e, along with certain security-based swap provisions of the federal securities laws, specifically, Section 5(e) of the Securities Act, 15 U.S.C. § 77e, and Section 6(l) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78f(l).  Specifically, Defendants offered and sold crypto asset securities to investors without registering the offers and sales with the SEC as required by the federal securities laws.  Defendants further violated the federal securities laws by offering, selling, and effecting transactions in securities-based swaps, in the form of "mAssets" based on the value of underling equity securities, to non-eligible contract participants in transactions that were not executed on a national securities exchange and without having an effective registration statement filed with the Commission covering the offer and sale.

11.     Defendants' conduct set forth in this Complaint also violated the antifraud provisions of federal securities laws, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, along with Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

12.     Unless restrained and enjoined, Defendants will continue to violate the federal securities laws.

EXHIBIT A

## NATURE OF PROCEEDINGS AND RELIEF SOUGHT

13.     The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d)(1) of the Exchange Act, 15 U.S.C. §§ 78u(d)(1).

14.     The Commission seeks a final judgment: (i) ordering permanent injunctions restraining and enjoining Defendants from again violating the federal securities laws described herein; (ii) ordering Defendants to pay disgorgement with prejudgment interest; (iii) ordering Defendants to pay civil money penalties; and (iv) prohibiting Defendants from (a) participating, directly or indirectly, in the purchase, offer, or sale of any crypto asset security, or (b) engaging in activities for purposes of inducing or attempting to induce the purchase, offer, or sale of any crypto asset security by others; and (v) imposing such other and further relief as the Court may deem just and appropriate.

## DEFENDANTS

15.     **Terraform Labs PTE Ltd.** ("Terraform") is a private company registered and headquartered in Singapore.  During the Relevant Period, Terraform had numerous employees located in the United States, including its General Counsel, Head of Research, and Director of Special Projects.  Terraform also operated a website available in the United States that offered and sold crypto asset securities to U.S.-based investors and, through its authorized representatives, often met with investors in the United States to offer and sell Terraform's crypto asset securities.  Neither Terraform nor its offers or sales of crypto asset securities were registered with the SEC in any capacity.

16.     **Do Hyeong Kwon**, age 31, was a resident of Korea and Singapore during the Relevant Period.  Kwon is and was the ultimate decision-maker at Terraform throughout the

5

EXHIBIT A

Relevant Period.  Kwon is also the sole director, Chief Executive Officer, and majority

shareholder of Terraform, owning 92% of its shares.  Press reports indicate that a Korean court

issued an arrest warrant for Kwon.  On or about March 23, 2023, Kwon was arrested by

authorities in Montenegro.  An indictment was also filed in this Court that charged Kwon with,

among other things, securities fraud.  *United States v. Kwon*, No. 23-cr-151-JPC (S.D.N.Y.).

During the Relevant Period, Kwon traveled to the United States on behalf of Terraform to market,

offer, and sell Terraform's crypto asset securities.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction over this action pursuant to Sections

20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a), and Sections

21(d) and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa(a).

18.     The Court has personal jurisdiction over Defendants and venue is proper in this

District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of

the Exchange Act, 15 U.S.C. § 78aa(a), because, among other things, some of the acts and

transactions in which Defendants engaged and that constitute violations of the federal securities

laws occurred in this District.  For example, as alleged herein, Defendants offered and sold

securities and made materially false and misleading statements to investors located in this

District in unregistered transactions.  One or more investors who purchased crypto asset

securities offered by Terraform and Kwon also had their principal place of business and/or

residence within this District.

19.     In addition, this Court has personal jurisdiction over Defendants because

Defendants engaged in conduct within the United States that constituted significant steps in

furtherance of the violations of the federal securities laws alleged in this Complaint, even if some

EXHIBIT A

of the transactions at issue may have occurred outside the United States and involved foreign

investors; and/or further because Defendants, whether within or outside of the United States,

engaged in conduct that had a foreseeable substantial effect within the United States.

20.     In connection with the conduct alleged in this Complaint, Defendants, directly

and indirectly, singly or in concert with others, have made use of the means or instrumentalities

of interstate commerce, the means or instruments of transportation or communication in

interstate commerce, the mails, and/or the facilities of a national securities exchange – namely,

through Defendants' use of the Internet and the U.S. banking system when engaging in the acts

and transactions described herein.

## STATUTORY AND LEGAL FRAMEWORK

21.     Congress enacted the Securities Act to regulate the offer and sale of securities.  In

contrast to ordinary commercial principles of caveat emptor, Congress enacted a regime of full

and fair disclosure, requiring those who offer and sell securities to the investing public to provide

sufficient, accurate information to allow investors to make informed decisions before they invest.

22.     Sections 5(a) and 5(c) of the Securities Act require that an issuer of securities like

Terraform register offers and sales of those securities with the SEC when they offer and sell

securities to the public.  Registration statements relating to an offering of securities thus provide

public investors with material information about the issuer and the offering, including financial

and managerial information, how the issuer will use offering proceeds, and the risks and trends

that affect the enterprise and an investment in its securities.

23.     The definition of a "security" under the federal securities laws includes a wide

range of investment vehicles, including "investment contracts.  *See* 15 U.S.C. § 77b(a)(1)

(Securities Act Section 2(a)(1)).  Investment contracts are instruments through which a person

EXHIBIT A

invests money in a common enterprise and reasonably expects profits or returns derived from the entrepreneurial or managerial efforts of others.  Courts have found that novel or unique investment vehicles constitute investment contracts, including interests in orange groves, animal breeding programs, railroads, mobile phones, crypto assets, and enterprises that exist only on the Internet.  As the United States Supreme Court noted in *SEC v. W.J. Howey Co.*, Congress defined "security" broadly to embody a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."  328 U.S. 293, 299 (1946).

24.     Security based swaps, which are themselves securities, include any agreement, contract, or transaction that is a swap as defined in Section 1a of the Commodity Exchange Act (CEA) and is based on a single security, including on the value thereof.  *See* 15 U.S.C. § 78c(a)(68) (Exchange Act Section 3(a)(68)).  Section 1a(47) of the CEA defines "swap" to include "any agreement, contract, or transaction" that "provides on an executory basis for the exchange . . . of 1 or more payments based on the value or level of 1 or more . . . securities . . . and that transfers, as between the parties to the transaction, in whole or in part, the financial risk associated with a future change in any such value or level without also conveying a current or future direct or indirect ownership interest in [the] asset . . . ."

25.     Securities Act Section 5(e) makes it unlawful for any person to offer to sell, offer to buy, or purchase or sell a security-based swap to any person who is not an "eligible contract participant" without an effective registration statement.  15 U.S.C. § 77e(e).  Exchange Act Section 6(l) also makes it unlawful for any person to effect transactions in security-based swaps to any person who is not an "eligible contract participant" unless the transaction is effected on a registered national securities exchange.  "Eligible contract participants" are defined to include

high-net-worth individuals with "amounts invested on a discretionary basis" of $10 million (or $5 million if the individual enters into a hedging agreement) and certain types of sophisticated and/or regulated entities.  7 U.S.C. § 1a(18).

## BACKGROUND ON CRYPTO ASSETS

26.     The term "crypto asset" generally refers to an asset issued and/or transferred using distributed ledger or blockchain technology, including assets sometimes referred to as "cryptocurrencies," "digital assets," "virtual currencies," "digital coins," and "digital tokens."

27.     A blockchain or distributed ledger is a peer-to-peer database spread across a network of computers that records all transactions in theoretically unchangeable, digitally recorded data packages.  The system relies on cryptographic techniques for secure recording of transactions.  Blockchains can also record "smart contracts," essentially computer programs designed to execute the terms of a contract when certain triggering conditions are met.

28.     Blockchains typically employ a consensus mechanism to "validate" transactions, which, among other things, aims to achieve agreement on a data value or on the state of the ledger.  Crypto assets may be traded on crypto asset trading platforms in exchange for other crypto assets or fiat currency (legal tender issued by a country).

29.     A blockchain "protocol" is a code, software, or algorithm that governs how a blockchain, or a feature of a blockchain, operates.

30.     On July 25, 2017, the SEC issued the *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, advising "those who would use . . . distributed ledger or blockchain-enabled means for capital raising[] to take appropriate steps to ensure compliance with the U.S. federal securities laws," and finding that the offering of crypto assets at issue in that report involved investment contracts and, therefore, securities.  In

9

analyzing whether something is a security, "form should be disregarded for substance," *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967), "and the emphasis should be on economic realities underlying a transaction, and not on the name appended thereto." *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975).

**FACTS**

**I.     Defendants Created and Developed the Terraform Ecosystem.**

31.     In March 2018, Defendants began creating the Terraform ecosystem.  Kwon and Terraform's co-founder published a white paper announcing the Terraform blockchain (referred to as the "Terra protocol") and the LUNA token, the first crypto asset created by Terraform. Eventually, the ecosystem would come to include a series of interconnected crypto assets whose purported adoption, liquidity, and value became highly dependent on the public's willingness to buy into Terraform's and Kwon's blockchain empire.

32.     In April 2019, Kwon and others published another white paper, entitled "Terra Money: Stability and Adoption," that announced the adoption of so-called "stable-coins," including one later named UST, which Terraform described as the "lynchpin" of Defendants' interrelated "ecosystem" of crypto assets.

33.     In the April 2019 white paper and elsewhere, Defendants stated that UST's value was pegged to the U.S. dollar by virtue of an algorithm tying UST's value to LUNA. Specifically, this algorithm sought to maintain UST's price at $1.00 through a complex system in which, rather than being backed by actual dollars, UST would be created, or "minted," and "burned," or destroyed, in parallel with Terraform's companion token, LUNA.  For example, holders of LUNA could swap $1.00 worth of LUNA for 1 UST based on LUNA's then-current market price.  And holders of UST could likewise exchange 1 UST for $1.00 worth of LUNA.

10

The algorithm theoretically provided an arbitrage opportunity for traders to help keep the price of UST pegged at one dollar.  If, for example, UST slipped to $0.95, traders could buy UST at that price and exchange it for $1 of LUNA "burning" UST and "minting" LUNA.  Doing so reduced the supply of UST and, in theory, would increase its price until it reached a dollar.

34.    On or about April 24, 2019, Terraform and Kwon officially launched the Terraform blockchain and created one billion LUNA tokens.  Kwon wrote the code underlying the initial version of the blockchain.  As described in more detail below, Terraform and Kwon offered and sold LUNA to investors to raise funds to develop the Terraform blockchain and ecosystem.  During the Relevant Period, Terraform maintained over a hundred code repositories that enabled Terraform employees, including Kwon, to create, contribute, maintain, and update the Terraform blockchain protocols.

35.    Throughout the Relevant Period, Terraform and Kwon continued to develop and market the Terraform blockchain and related protocols and crypto assets, which they promoted as profit opportunities for investors.  In September 2020, for example, Terraform and Kwon began publicly marketing UST as a "yield bearing" stablecoin together with something they called the Anchor Protocol.  Terraform launched the Anchor Protocol in March 2021, with Defendants advertising rates of return of 19-20% on investors' deposited UST, leading to significant investor demand for UST.

36.    The total amount of UST, which was first "minted" in June 2019, was slow to grow, with under 300 million UST circulating by early 2021.  In the two months following the launch of the Anchor Protocol, the number of UST in circulation increased by close to one billion.  By May 2022, there were approximately 19 billion UST, with 14 billion deposited in the Anchor Protocol.

EXHIBIT A

37.     Over time, Defendants created other protocols and crypto asset securities.  In December 2020, Defendants launched the "Mirror Protocol," which they continued to develop and maintain.  The Mirror Protocol allowed users to create what Terraform called an "mAsset," short for "mirrored asset", which was designed to track or "mirror" the price of equity securities or other types of securities, including U.S. equity securities.  For example, mAssets designed to "mirror" the stock of Apple, Inc. were named "mAAPL" and were designed so that their value increased and decreased with the value of Apple, Inc. stock.  As Terraform explained on its website, "mAssets mimic the price behavior of real-world assets and give traders anywhere in the world open access to price exposure without the burdens of owning or transacting real assets."

38.     The Mirror Protocol also provided users with the ability to obtain a "MIR token," the so-called "governance token"[2] for the Mirror Protocol.  MIR tokens received value based upon, among other things, fees generated under the Mirror Protocol.

## II.     Terraform's Crypto Assets Were Offered and Sold As Securities.

39.     As alleged in greater detail below, Terraform offered and sold five groups of crypto asset securities: LUNA tokens, a version of LUNA called "wrapped" LUNA, UST, MIR tokens, and security-based swaps or mAssets.  Defendants solicited investors for these crypto assets by touting their profit potential.  Defendants repeatedly stated that the crypto assets would increase in value based on Terraform's development, maintenance, and promotion of its blockchain, protocols, and the entire Terraform ecosystem.  Defendants also promoted to

---

[2]  "Governance tokens" are tokens that can, among other features, purportedly give their holders voting power over the development and structure of the protocol or blockchain, including the right to propose changes.

EXHIBIT A

investors the ability to trade Terraform's crypto assets on the secondary market, with the success of the investment again depending on Defendants' efforts.

40.     Defendants further touted the professional expertise and success of the Terraform team, including Kwon, claiming that Terraform was "led by serial entrepreneurs" and was a team with "deep relevant expertise," and providing biographies or links to LinkedIn profiles that highlighted Terraform employees' and Kwon's expertise in crypto assets, finance, and technical experience with software coding, engineering, and development.

41.     In addition, Defendants advertised their considerable efforts to ensure that UST – the "lynchpin of the [Terraform] ecosystem" – maintained its $1.00 peg.  In January 2022, Defendants announced the creation of the "Luna Foundation Guard," which had no employees and was controlled by Kwon, with the purpose of serving as an "asset reserve [] to back the UST."  The Luna Foundation Guard was funded with a "gift" of 50 million LUNA (at the time, worth billions of dollars) directly from Terraform.

42.     Defendants also aggressively marketed Terraform's crypto asset securities to U.S. investors, by posting information and promotional materials to accounts on several publicly accessible online social media platforms, such as Twitter accounts, blog posts, YouTube, and messaging applications like Telegram.  Kwon and other Terraform employees further gave interviews or quotes to media promoting its crypto assets, including U.S.-based outlets, as described in greater detail below.

43.     Additionally, during the Relevant Period, Kwon and other Terraform employees traveled to the United States to meet personally with existing and potential investors to solicit investment in Terraform's crypto asset securities, including meetings in San Francisco and New York, and to attend and speak at an industry conference and events in New York.  Defendants'

U.S.-based promotional efforts also included a partnership with the Washington Nationals baseball team, as a result of which the word "Terra" was placed on every seat behind home plate and elsewhere around the stadium in Washington, D.C.  Defendants also arranged to have several of their crypto assets listed (made available for trading) on several major crypto asset trading platforms, including a prominent U.S.-based trading platform.

### A.    LUNA

#### 1.    *Investment of Money.*

44.    Investors tendered fiat currency or crypto assets in exchange for LUNA. Institutional investors typically purchased LUNA directly from Terraform after meeting with Kwon in person or via videoconference.  U.S. retail (or non-institutional) investors, who purchased LUNA from crypto asset trading platforms, including at least one trading platform in the U.S., also tendered fiat currency or crypto assets in exchange for LUNA.

#### 2.    *Common Enterprise.*

45.    Purchasers of LUNA invested into a common enterprise with other LUNA purchasers, as well as with Terraform and Kwon.

46.    Terraform and Kwon pooled the funds received from investors to develop the Terraform ecosystem and increase the value of LUNA.  Investors in LUNA shared equally in LUNA price increases, or suffered LUNA price decreases equally, such that if one investor profited, all investors did so as well.  Because LUNA is fungible, the fortunes of LUNA purchasers were tied to one another, and each depended on the success of Defendants' efforts and strategy and the Terraform ecosystem.

47.    Specifically, proceeds of Terraform's sales of LUNA were sent to crypto asset wallet addresses controlled by Terraform to fund Terraform's efforts to develop and fund

14

operations.  During fundraising presentations, Terraform and Kwon explained how Terraform would use proceeds from LUNA sales to help grow and expand the Terraform ecosystem.  For example, in August 2018, when Terraform announced its first raise of capital of $32 million, it noted that "Terra will invest the initial seed capital in building the modern financial system on the blockchain."  In fact, Terraform presentations to investors stated that 20% of the initial billion LUNA tokens were to be used for development and operations.

48.     Moreover, throughout the Relevant Period, Defendants held a significant amount of LUNA, tying their fortunes with respect to LUNA with LUNA investors' fortunes.  Terraform owned hundreds of millions of LUNA tokens through the Relevant Period.  In 2020, Kwon tweeted that he had purchased 50 million LUNA, in addition to the 70 million LUNA tokens that he owned from the time of the blockchain launch in 2019.

### 3.     Reasonable Expectation of Profits From Defendants' Managerial Efforts.

49.     Defendants led investors in LUNA to reasonably expect profits from Defendants' efforts to develop and support the Terraform ecosystem.

50.     Defendants publicly pitched LUNA as an investment that would increase in value with increased usage of the Terraform blockchain that could result from Defendants' continued development and maintenance.  Defendants publicly stated that as the Terraform ecosystem grew based on Defendants' efforts, the value of LUNA would go up as well.  As Kwon explained in an April 7, 2021 thread accessible to U.S. investors on Twitter (referring to LUNA as "moon"):

EXHIBIT A



51.     In the same April 7, 2021 thread, Kwon explicitly touted that the value of LUNA could grow as the Terraform "ecosystem" grows, specifically tying that potential growth to his own efforts (which he promised would be successful by touting that he would "kick ass") while investors remained passive (or "s[a]t back") in the enterprise.



52.     As one Terraform employee put it in Terraform's publicly-available Telegram messaging application, the "[v]alue of Luna grows as Terra [ecosystem] gets adopted and used."

16

Another Terraform employee noted in an online Ask-Me-Anything interview on Reddit: "[i]n the long-run ... Terra's transaction volume will be the main determinant of Luna's value."[3]

53.    In marketing materials distributed to potential investors in January 2019, Terraform described purchases of LUNA as "investments" and LUNA buyers as "investors." The same materials noted that "top global exchanges and funds" already had "invested in" Terraform (referring to their purchase of LUNA), and that Terraform had raised $32 million in July 2018 from an "elite group of VCs" referring to venture capital firms.

54.    Some of Terraform's offers and sales of LUNA were governed by purchase agreements between Terraform and LUNA investors. These agreements generally entitled buyers to acquire LUNA at a discount to market prices. By selling at a discount to market prices, Defendants incentivized buyers to seek to sell their LUNA into public markets in order to realize a profit. Moreover, for some buyers who purchased LUNA prior to the public launch of the token, Defendants provided in some of the agreements for a gradated token distribution schedule that would control for the flow of LUNA tokens being sold into the market, such that early investors would receive their LUNA continuously over a period of 12-18 months. These provisions controlled the release of LUNA over a longer period of time in smaller quantities, to control for potential negative effects on LUNA's price that could occur with large distributions of LUNA into the market. These provisions reflected the expectations of both Defendants and investors that that these LUNA investors would seek to sell their LUNA into public markets for a

---

[3]  Another Terraform employee agreed in an internal communication:  "Luna receives value from Terra [stablecoin] as Terra [stablecoin] is transacted.  In a way, investing in Luna is a bet that Terra's economy will grow larger over time. Investors buy into Luna, not Terra."

EXHIBIT A

profit and sought to protect LUNA's trading price by limiting amounts that could be resold during any given time period.

55.     Defendants also engaged in efforts to develop, support, and grow the Terraform ecosystem.  Defendants publicly touted these efforts through a variety of forums, including online social media platforms accessible to U.S. investors, such as accounts with Twitter and Medium, messaging applications with public channels like Telegram, and YouTube. Terraform's stated efforts to grow the Terraform ecosystem included four substantial version upgrades of the Terraform blockchain, adding myriad back-end technical features and front-end user applications, entering into partnerships with collaborators to develop ecosystem features, and otherwise extensively and publicly promoting the Terraform ecosystem.

56.     As Defendants engaged in and touted these efforts, the market price of LUNA increased from under a dollar in early 2021 to a high of around $119.18 in April 2022, before it crashed to under a penny in May 2022, as represented by the graph below:



57.     Defendants also provided monthly "Community Updates" on publicly available Medium blog posts, which discussed Defendants' coding and development the Terraform

ecosystem.  Similarly, Terraform employees and Kwon touted their efforts to develop and

support the Terraform ecosystem in monthly investor emails that they distributed called

"Terraform Labs Investor Update" (later renamed to "Terraform Labs Ecosystem Update").  The

recipients of these "Updates" had email addresses that included, for example, an email group

investment@terra.money.  These emails highlighted Terraform's engineering, coding, and

integration of applications to the Terraform ecosystem, among other things.  These emails also

announced new Terraform hiring for positions "key" to the ecosystem's development.

58.     Terraform and Kwon also engaged in other efforts to create LUNA resale

opportunities by applying to crypto asset trading platforms to make LUNA available for trading,

including submitting questionnaires that provided information about LUNA and Terraform, and

then furthered LUNA investors' reasonable expectations of profits by publicly announcing new

trading platform listings.

### B.      "Wrapped" LUNA

59.     Some crypto assets, like UST, LUNA, and the MIR tokens on the Terraform

blockchain, are issued and transferred on a particular blockchain – meaning that they are

represented on that blockchain.  Generally speaking, different blockchains are not interoperable

with one another.  In other words, crypto assets on one blockchain cannot be automatically

transferred to another blockchain.

60.     To address this limitation, "cross-chain" and "bridge" protocols were created to

allow investors to move value across blockchains.  One example is the "wrapped" LUNA token

(or "wLUNA").  These wLUNA tokens are generally created, or "bridged," from the Terraform

blockchain to another blockchain by depositing LUNA in a particular wallet address on the

19

Terraform blockchain, and then having an associated smart contract on different blockchains, such as the Ethereum blockchain, to create wLUNA.

61.     Similarly, wLUNA could be bridged back to the Terra blockchain by having wLUNA destroyed, or "burned," by the smart contract on the non-Terraform blockchains and receiving LUNA from the address or smart contract on the Terraform blockchain.  In essence, this mechanism created a pool of LUNA on the Terraform blockchain, through which wLUNA owners could convert their holdings back into LUNA.

### 1.     *Investment of Money.*

62.     Investors purchased wLUNA with other crypto assets or with fiat currency through crypto asset trading platforms.  For example, to create wLUNA, investors deposited LUNA to an address or smart contract on the Terraform blockchain, which was then "bridged" to the Ethereum or other blockchains to create wLUNA.

### 2.     *Common Enterprise.*

63.     Investors in wLUNA invested in a common enterprise with other wLUNA investors and LUNA investors.  To create wLUNA, LUNA was pooled together in an address or smart contract on the Terraform blockchain.  For each LUNA that entered into the pool, a new wLUNA would be created on a different blockchain, such as Ethereum.

64.     As LUNA and wLUNA were exchangeable on a one-to-one basis, the price of wLUNA generally equaled the price of LUNA.  Therefore, holders of wLUNA shared in the rise and fall of the value of the wLUNA and LUNA token.  As a result, the fortunes of wLUNA investors were tied to one another and to the fortunes of Defendants.

### 3. *Reasonable Expectation of Profits from Defendants' Managerial Efforts.*

65.     Just like LUNA investors, investors in wLUNA had an expectation of profits based on the managerial efforts of Defendants because the price of wLUNA, by definition, equaled the price of LUNA.

66.     Reasonable investors purchasing wLUNA either understood this economic reality, or believed that they were purchasing LUNA when they were in fact purchasing wLUNA.  In fact, Kwon himself used the terms LUNA and wLUNA interchangeably.  For instance, when Kwon tweeted about wLUNA's availability on a prominent U.S.-based trading platform, he referred to it as "$LUNA," which is how he frequently referred to LUNA.

67.     Regardless of whether investors understood the difference between LUNA and wLUNA, investors purchased wLUNA with the understanding that the value of the token would be driven by the value of LUNA.  As described above, Defendants led investors to reasonably expect to profit from LUNA, and therefore wLUNA, based on the managerial efforts of Terraform and Kwon to develop the Terraform ecosystem.

### 4. *wLuna Is a Receipt for a Security.*

68.     The definition of security under Securities Act 2(a)(1) and Exchange Act Section 3(a)(10) includes a "receipt for" a security. As described above, when an investor "bridges" LUNA to obtain wLUNA, the owner of the wLUNA has the right and ability at any time to exchange the wLUNA for LUNA, which was offered and sold as a security.  This mechanism created a pool of LUNA on the Terraform blockchain through which wLUNA owners could convert their holdings back into LUNA. As a result, wLUNA is also a security because it is a receipt for a security.

21

EXHIBIT A

### C.   UST

#### 1.   *Investment of Money.*

69.     Investors tendered fiat currency or crypto assets in exchange for UST.  As advertised by Defendants, to "earn" nearly 20% annual returns via the Anchor Protocol, investors deposited their UST into a smart contract associated with the Anchor Protocol.

#### 2.   *Common Enterprise.*

70.     Investors in UST invested in a common enterprise with other UST purchasers, as well as with Terraform and Kwon.

71.     Defendants created, developed, updated and maintained profit-bearing opportunities for UST, including the yield-bearing "Anchor Protocol" to generate profits for UST purchasers.  Defendants' Anchor Protocol pooled UST investor funds and lent them out to borrowers to generate returns for the investors.  Defendants' Anchor Protocol also did not manage individual or separate accounts for investors.  If deployment of funds within the Anchor Protocol was successful in generating returns, all investors profited equally in proportion to their investment.  Accordingly, each investor's fortune was tied to the fortunes of the other investors.

72.     UST investors' fortunes were also tied to Defendants' fortunes.  Terraform and Kwon both deposited UST, sometimes in the millions or tens-of-millions, respectively, into the Anchor Protocol.  Kwon tweeted in May 2021 that Terraform owned $59 million in UST, and Kwon consistently held in excess of 1 million UST, further showing that investors' fortunes were tied to the fortunes of Defendants.

73.     That Defendants' and investors' fortunes were tied to each other and to the success of the Anchor Protocol was demonstrated when, in May 2022, the UST de-peg resulted

EXHIBIT A

in the collapse of the Terraform ecosystem and left the UST held by investors and Defendants nearly valueless.

> ### 3. *Reasonable Expectation of Profits Based on the Managerial Efforts of Defendants.*

74.    Defendants led UST/Anchor Protocol investors to reasonably expect profits based on Defendants' managerial efforts.

75.    As advertised by Defendants, to "earn" what Terraform advertised as nearly 20% annual returns via the Anchor Protocol, investors deposited their UST into a smart contract associated with the Anchor Protocol.  Just prior to the collapse of the Terraform ecosystem in early May 2022, over 70% of UST was deposited into the Anchor Protocol, meaning that investors deposited into the protocol close to 14 billion (or nearly 74 percent) of the almost 19 billion in overall UST.

76.    Defendants also engaged in efforts to engineer, develop, and support the Anchor Protocol, for the purpose of maintaining the promised returns to investors.  Defendants touted these efforts to investors in their monthly investor updates, including, among other things, their efforts building out its front-end user access and back-end features, facilitating user access to the protocol through third-parties' crypto asset financial services, and funding and managing the Anchor Protocol "yield reserve," which was used to pay investors interest on their UST.

77.    Specifically, when revenue from the Anchor Protocol was not sufficient to cover its advertised returns to UST depositors, Terraform and Kwon sought to ensure that the Anchor Protocol had enough reserve assets to pay investors the promised interest and continue attracting UST/Anchor Protocol investors.

78.    For example, in July 2021, Terraform provided approximately $70 million of UST to the Anchor Protocol yield reserve.  By early 2022, the yield reserve was quickly running

EXHIBIT A

out of money, and it again was topped up by the Luna Foundation Guard with another approximately $450 million of UST.  This replenishment was directed by Kwon, who at the time was the director of the Luna Foundation Guard.  At Kwon's request and authorization, the Luna Foundation Guard directed some of its LUNA to the Anchor Protocol to be converted into UST and deposited into the yield reserve.

79.     Defendants touted that returns to UST investors from the Anchor Protocol were derived from their efforts supporting the Anchor Protocol, highlighting in public statements and statements to groups of investors that Defendants' work would support the Anchor Protocol and its yield rate.  For example, in January 2022, Kwon tweeted publicly about Defendants' efforts to support the Anchor Protocol's yield reserve:



80.     Defendants also took drastic steps to maintain UST's "peg" to the U.S. dollar, including by gifting the Luna Foundation Guard billions of dollars to buy UST in the event of the price of UST going below $1 and "defend the peg."

24

81.     Many domestic retail investors purchased UST for the sole purpose of earning a return on the Anchor Protocol developed and maintained by Defendants.

82.     These U.S. retail investors, all of whom lost nearly their entire UST investments in May 2022, lacked the technical expertise to generate returns with respect to their UST purchase for themselves.  They included a musician in Venice, California; a pharmacist in Cypress, California; a painter in Brattleboro, Vermont; an accountant in Stockton, California; an engineer in Knoxville, Tennessee; and an IT worker in Orange County, California.  Many lacked significant investment experience and educated themselves about UST and the Anchor Protocol via the Internet and social media.  They considered UST to be safe with an almost 20% yield when invested in the Anchor Protocol, as marketed by Terraform and Kwon.

83.     For much of the Relevant Period, UST and the Anchor Protocol appeared to meet investors' expectations.  With the exception of a brief episode in May 2021 (discussed below), the price of UST remained pegged to the U.S. dollar until plummeting to under a penny and wiping out billions of dollars of investor money in May 2022.

### *4.     UST Is a Security Because It Could Be Exchanged for LUNA*

84.      UST is also a security because it gave investors a "right to subscribe or purchase" another security[4]—namely, it could be exchanged for LUNA, another security as detailed above. Given that UST investors had the right to convert UST to one dollar's worth of LUNA via the Terraform blockchain, investors who bought UST had the right to subscribe to or purchase a security (*i.e.* LUNA).

---

[4]  Securities Act Section 2(a)(1); Exchange Act Section 3(a)(10)

25

### D.    MIR Tokens

#### 1.    *Investment of Money.*

85.    Investors in MIR tokens tendered crypto assets or fiat currency in exchange for MIR.

#### 2.    *Common Enterprise.*

86.    Investors in MIR tokens invested in a common enterprise with other MIR token purchasers, as well as with Defendants.

87.    Proceeds of the sales of MIR tokens were pooled together to develop and fund Terraform operations and, specifically, the Mirror Protocol.  The ability of a MIR investor to profit was dependent on the success of the Mirror Protocol because MIR increased in value with increased usage of the Mirror Protocol.

88.    Moreover, MIR tokens are fungible and interchangeable with each other.  MIR investors shared equally in MIR price increases, or suffered MIR price decreases equally, such that if one investor profited, all investors did so as well.

89.    After the launch of the Mirror Protocol, Terraform "farmed" MIR tokens to distribute to investors pursuant to agreements between investors and a wholly owned subsidiary of Terraform which were signed by Kwon.  Terraform farmed more MIR tokens than it was required to distribute, and retained or sold the excess tokens.  If the price of MIR increased (or decreased), both Defendants and investors would benefit (or suffer losses) in proportion to their holdings, thus tying the MIR investors' fortunes to those of Defendants.

EXHIBIT A

### 3.   *Reasonable Expectation of Profits Based on Defendants' Managerial Efforts.*

90.   Defendants touted an investment in MIR as a way for investors to invest in the potential success of the Mirror Protocol.

91.   Investors bought MIR with the expectation that the price of MIR would increase based on Defendants' managerial efforts.  Defendants told investors that the price of the MIR was directly correlated with Terraform's and Kwon's efforts to increase the usage of the Mirror Protocol because its value was dependent on the fees generated by usage of the Mirror Protocol. In promotional materials provided to investors in September 2020, Terraform noted that Defendants would heavily promote the Mirror Protocol, which would increase the price of the MIR tokens.  These materials also provided a revenue projections table that estimated the price of MIR based on how much the Mirror Protocol was used.

92.   Defendants also sold approximately 37 million MIR tokens through "Simple Agreements for Farmed Tokens" or "SAFTs" without restricting resale of the tokens, reflecting Defendants' and investors' expectations that MIR tokens could be resold in secondary markets for a potential profit.

93.   Defendants further held themselves out to the public as managing and working on the Mirror Protocol as part of their work to build out the Terraform ecosystem.

94.   Consistent with their public touting, Defendants engaged in entrepreneurial and managerial efforts to make the Mirror Protocol a successful enterprise.  For example, they controlled websites related to the Mirror Protocol that promoted, explained, and facilitated its use for the general public.

95.   Defendants, in fact, controlled many aspects of the Mirror Protocol and engaged in myriad efforts to facilitate and support its function. For example, Terraform engineered,

27

EXHIBIT A

launched, and upgraded versions of the Mirror Protocol.  In addition to employing engineers responsible for coding and substantially upgrading the Mirror Protocol, Terraform also employed a "product manager" for the Mirror Protocol.  Terraform further controlled a mechanism that provided a price check on the underlying assets for the mAssets for the purpose of facilitating the creation and liquidation of mAssets on the protocol.

96.     Terraform and Kwon also promoted the Mirror Protocol through, among other means, Terraform's website, web application, social media accounts, podcast interviews, and through U.S. media.  Kwon tweeted extensively prior to and after the release of the Mirror Protocol, noting Terraform's continued participation and partnerships to help the project succeed.  Upon announcing the Mirror Protocol to the public in December 2020, Kwon tweeted "Going forward, we look forward to being active contributors in the community to help @mirror_protocol succeed."  Following the launch of the Mirror Protocol, Terraform and Kwon advertised it aggressively, including in blog posts, tweets and interviews.  In January 2021, a Mirror Community update on the Mirror Medium page stated, "We're always working hard to improve Mirror and rely on our brilliant community for feedback and ideas."  Terraform and Kwon also regularly emailed updates about Terraform's work and development on the Terraform ecosystem, including to an email group with the recipient name of "mirror_investors."

97.     Terraform employees also engaged in public and extensive entrepreneurial and managerial efforts with respect to the Mirror Protocol, including by heavily promoting it and touting its growth in public presentations.  For example, in June 2021, Terraform's U.S.-based Director of Special Projects provided a presentation to the "Defi Summit" on behalf of Terraform that included an extensive discussion of Terraform's Mirror Protocol.  Among other things, Terraform's Director of Special Projects stated that, not only was Terraform responsible for

28

launching the Mirror Protocol, but "we've grown [the Mirror Protocol] to two billion [dollars] in total value locked and one million [dollars] in liquidity." He also discussed how "we just want to create a very delightful and magical experience . . . for users providing a Robinhood-like interface." Additionally, Terraform's Business Development lead and its Head of Communications participated in an interview that publicized and explained the Mirror Protocol, noting that Terraform has a "team of [approximately] 40 people working full-time across Asia/US." The article explained that "Mirror is a synthetic assets protocol" and that Terraform planned to expand Mirror "beyond SE Asia and the typical US market."

### E. mAsset Transactions Were Security-Based Swaps

98.     Terraform's Mirror Protocol permitted the creation of assets—called "mAssets"—that "mirrored" the price of securities. The mAssets were created when, based on the smart contract coded into the Terraform blockchain, an investor provided a payment equal to 150% of the value of the security that the mAsset mirrored. In return, the investor received an mAsset equal to the value of the security that the mAsset was designed to mirror, such as the stock of Apple, Inc.

99.     Once an mAsset was created, if the price of the referenced security rose so that the collateral rate was no longer satisfied, the investor was required to deposit additional collateral based on the value of such increases or the investor's collateral would be liquidated.

100.    The investor could terminate the transaction by making a final payment in the form of the mAsset (also called "burning" or returning the mAsset). At the point of the termination of the transaction, the investor was entitled to receive payment back in the form of the entire collateral.

EXHIBIT A

101.    For example, an investor could create an "mAAPL" mAsset by making a payment equal to at least 150% of the value of Apple stock into a smart contract on the Mirror Protocol. In return, the investor received "mAAPL."  If the actual price of Apple stock rose in value, the investor was required to deposit additional payments such that the investor's collateral equaled 150% of the now increased value of Apple, or else the collateral would be liquidated and a portion paid back to the investor.  The investor could terminate the transaction by paying the mAAPL back to the smart contract in the Mirror Protocol, at which point the investor was entitled to receive a payment back of all of the investor's collateral.

102.    Each transaction offering or selling an mAsset thus constituted a security-based swap.  First, each transaction provided on an executory basis for an exchange of a payment, based on the value of a security.  That is, an investor provided a payment in the form of collateral equal to at least 150% of the value of the security (e.g., Apple stock) that the mAsset mirrored, in exchange for an mAsset (e.g., mAAPL).

103.    Second, each transaction transferred, between the investor and the Mirror Protocol, the financial risk associated with a future change in the value of a security without also conveying a current or future direct or indirect ownership interest in the underlying security. This is because the mAsset (e.g., "mAAPL") tracked the rise or fall in price of the underlying security, (e.g., Apple stock), but did not convey any direct or indirect interest in the underlying security (i.e., the investor in mAAPL did not own any direct or indirect interest in Apple stock even though the value of her mAAPL tracked the change in value of Apple stock).

104.    The mAsset transactions were generally offered, sold, or effected through the Mirror Protocol (and not a registered national securities exchange) with or for persons who were

30

not eligible contract participants, in violation of Securities Act Section 5(e) and Exchange Act Section 6(l).

## III. Defendants Offered and Sold Crypto Asset Securities in Unregistered Transactions

105.    Beginning in 2018 and continuing until the collapse of the Terraform ecosystem in May 2022, Defendants engaged in capital fundraising activities through the unregistered offering and sales of the crypto asset securities described above.

106.    With respect to LUNA, the unregistered public offering included a pre-seed and seed round, loans of LUNA for distribution into the market for resales, and Terraform's direct sales on crypto asset trading platforms.

107.    From at least April 2018 through September 2018, as part of one continuous offering, Terraform sold close to 200 million LUNA to institutional investors, including at least one U.S. entity, and offshore entities controlled by U.S. entities.  The terms of these sales imposed no restrictions on when those tokens could be resold by the investors.  Terraform distributed to some of the investors less than a year after the executed agreements, and Kwon signed the purchase agreements.  The terms of these agreements reflect the expectation that most, if not all, of these purchasers would sell their LUNA into public markets.  In other words, Defendants were essentially embarking on a large-scale unregistered public distribution of LUNA.

108.    Later that year, in November 2019, Terraform and its wholly owned subsidiary loaned 30 million LUNA to a U.S.-based proprietary trading firm, through an affiliate, (together, the "U.S. Trading Firm").  Kwon emailed a small group of investors to inform them that the purpose of the transaction was to "improve liquidity" of LUNA, because of the "lackluster [ ] performance of the LUNA token."  In July 2020, the U.S. Trading Firm began actively selling

EXHIBIT A

LUNA into the market, allowing public investors to purchase LUNA through transactions in secondary markets.

109.    In September 2020, Terraform and its wholly owned subsidiary "loaned" an additional up to 65 million LUNA to the U.S. Trading Firm.  In order to receive the LUNA, the U.S. Trading Firm had to meet certain thresholds related to trading in UST.  It met the first threshold and began receiving LUNA pursuant to the loan from Terraform in January 2021.  The U.S. Trading Firm subsequently began continuously selling LUNA into the market, including through a major U.S. crypto asset trading platform once that platform began listing LUNA in August 2021.  Terraform's "loan" to the U.S. Trading Firm and the U.S. Trading Firm's subsequent sales thus allowed public investors, including those in the U.S., to acquire or transact in LUNA through transactions in the secondary market and generated speculative interest in LUNA.

110.    These two transactions between Terraform, its subsidiary, and the U.S. Trading Firm, which are described in more detail below, were, in essence, public distributions of LUNA by Terraform.  The U.S. Trading Firm acquired the LUNA from Terraform and its subsidiary and sold it into the market directly with Terraform's knowledge and expressed intent that the LUNA provided would be so distributed in order to "improve liquidity."

111.    During the Relevant Period, LUNA was also made available for trading on multiple crypto asset trading platforms.  From at least August 2019, through at least February 2022, Terraform sold billions of dollars of LUNA directly into secondary markets through transactions on crypto asset trading platforms, including those available to U.S. investors.

112.    Prior to the launch of the Mirror Protocol, Terraform and Kwon raised over three million dollars by selling approximately 37 million MIR tokens through SAFTs between

EXHIBIT A

investors and a wholly owned subsidiary of Terraform.  These SAFTs were signed by Kwon and

entered into with at least six U.S. purchasers.  The contracts were signed in September of 2020,

and the MIR tokens became available to these pre-launch purchasers by January or February of

2021.

113.    Terraform and Kwon sold these approximately 37 million MIR tokens without

restricting the resale of their tokens and did not take any steps to verify investors' accredited

status.  Although there is no indication of general solicitation, no exemptions to registration were

available given the fact that tokens sold in this offering were available for resale on an

unrestricted basis less than a year after the initial transactions.

114.    In addition to selling MIR tokens pre-launch, Terraform also later sold them

directly into the market through crypto asset trading platforms and made them available on the

Terraform-controlled website for the Mirror Protocol that could be accessed in the U.S.

Terraform entered into a listing agreement with at least one U.S. crypto asset trading platform for

the listing of MIR tokens on the platform.  In addition, Terraform and Kwon "loaned" MIR

tokens to market makers with no restrictions on resale, who then sold the loaned MIR upon

receipt on U.S.-based crypto asset trading platforms and other crypto asset trading platforms that

are available to U.S. investors. Again, the terms of these transactions reflect the expectation that

these market makers would sell their MIR tokens into public markets.

115.    Beginning in late 2020, Terraform also created, offered, sold, and effected

transactions in mAssets through the Mirror Protocol.  Terraform and Kwon offered and sold

mAssets by (i) creating and maintaining the Mirror Protocol, (ii) promoting the investment

opportunity in blog posts, tweets and interviews, and (iii) making them available for sale on

Terraform-controlled websites or through crypto asset trading platforms.  For example, when a

33

user navigated to the website with the domain name http://terra.mirror.finance/trade#buy, a website controlled by Terraform that was accessible to U.S. investors, the potential investor could choose to create, trade, or buy mAssets that mimicked the price of U.S. equity securities:



116.    Terraform created, offered, sold, and effected transactions in mAssets through the Mirror Protocol to persons who were not eligible contract participants, and Defendants made no effort to determine whether potential or actual investors were eligible contract participants.

117.    No registration statement has been filed or was in effect with respect to any of the offers and sales of crypto asset securities described above.  No exemption was available from registration under the Securities Act for any crypto asset securities offered or sold by Defendants.

**IV.    Terraform and Kwon Misled, Deceived, and Defrauded Investors**

34

118.    To inspire confidence in the Terraform ecosystem, and encourage trading in its crypto asset securities, Defendants engaged in a scheme to deceive and mislead investors and prospective investors in the U.S. and abroad.  In particular, from at least mid-2019 through at least March 2022, Defendants misled investors and prospective investors into believing that the Terraform blockchain was being used to process and settle real world purchases by retail consumers in Korea.  In addition, when UST de-pegged briefly from the U.S. dollar in May 2021, Defendants falsely represented that the peg was restored due to the success of UST's algorithm, which, according to Terraform, was the "lynchpin of the entire [Terraform] ecosystem."  Defendants misleadingly omitted the real reason for the re-peg – the deliberate intervention by a third party, as discussed with Defendants, to buy large amounts of UST to restore its value.

119.    Defendants' statements were materially false and misleading and made during a time when Defendants were actively offering, selling, and/or marketing Terraform's crypto assets, including LUNA and UST.  Defendants knew or were reckless in not knowing that these representations were false when they were made.

120.    As one Terraform employee stated in a chat with another employee on September 1, 2021, "working at terra has reinforced my belief in conspiracy theories . . . just the white lies to prop up anchor and mirror and the illusion of decentralization and true extent of chai adoption . . . all from the armchair of a single man sipping whisky" – the reference to a man sipping whisky being Kwon.

A.    **Terraform and Kwon Deceived Investors About Chai**

121.    Terraform and Kwon marketed the Terraform blockchain as having a real-world use.  Specifically, Terraform and Kwon repeatedly claimed that a Korean company, Chai

EXHIBIT A

Corporation ("Chai"), used the Terraform blockchain to process and settle millions of

transactions for Korean consumers at retail establishments, such as online stores, movie theaters,

and convenience stores.  These statements were materially false and misleading.  Chai

transactions were neither processed nor settled on the Terraform blockchain.

122.    To further deceive investors, Terraform and Kwon recorded completed Chai

transactions onto the Terraform blockchain to make it appear as if they were processed on the

blockchain when, in fact, they were not.  The purported "real-world use" of the Terraform

blockchain was a literal fabrication.

123.    Chai is a mobile payment service provider in Korea, similar to PayPal or Venmo,

which Kwon launched, together with Terraform's co-founder, in or around June 2019.

124.    Until early 2020, Chai and Terraform were closely associated with each other,

sharing an office space and overlapping personnel.  During that time, Kwon sat on Chai's board

of directors and was kept up to date on Chai activities.

125.    Sometime in early 2020, Kwon and Terraform's co-founder took steps to separate

Terraform's business from Chai.  Kwon took control of Terraform and moved its offices to a

new location.  At the same time, the majority of Terraform's employees began working solely

for Terraform.  However, until approximately May 2022, Kwon continued to sit on Chai's board

and Defendants continued to represent publicly that Terraform was connected to Chai.

126.    From mid-2019 through at least March 2022, Defendants made numerous and

repeated statements falsely representing that the "backend" of Chai transactions were being

processed and settled using the Terraform blockchain.  Terraform and Kwon also falsely stated

that Chai's use of the Terraform blockchain provided incentives to both Korean merchants and

consumers to use Chai for their transactions.  Specifically, Terraform and Kwon claimed that

EXHIBIT A

Chai's use of the Terraform blockchain meant that merchants experienced faster processing times and lower transaction fees through Chai than through competitor mobile payment services providers. Likewise, Terraform and Kwon maintained that Chai customers would benefit from additional consumer discounts flowing from the lower costs associated with Chai's purported use of the Terraform blockchain. With these misrepresentations, Terraform and Kwon misleadingly used Chai's growth as a proxy for the growth and success of the Terraform ecosystem as a whole.

127. Terraform and Kwon made these false and misleading statements in presentations to solicit investments in Terraform's crypto asset securities, including LUNA, from investors and prospective investors in the U.S. and overseas. In addition, Terraform made and disseminated these false and misleading statements in public interviews, Terraform-sponsored podcasts, and social media posts, which were available to U.S. investors and prospective investors.

128. For instance, in a CNBC Africa presentation transmitted to the U.S. which Terraform later made available to U.S. investors when it posted it to YouTube on October 14, 2019, Kwon discussed Chai in depth, explaining:

> [I]n the backend, it uses Terra's blockchain technology to solve some major pain points and problems for the merchants.
>
> . . .
>
> But in the backend is where the real magic starts to happen. And I contend that Terra solves two of the biggest roadblocks to the adoption of digital payments in Asia and the rest of the world. So the first is slow settlement periods.
>
> . . .
>
> Terra settles in six seconds. So every block for every transaction that has been made, we batch it up and then send it to the merchant so they can have easy and early access to working capital should they choose to do so. The second problem that we solve is high transaction fees.

37

. . .

*So in the thirteen weeks in which we have been operational, early response has been quite explosive.  Up - up to today we have had 430,000 shoppers over the Chai gateway, and most of them coming in the last month. And we've processed nearly 2,000,000 transactions up to date.  And we think that this number will continue to grow.  In terms of daily active users, Terra and Chai has already surpassed some of the most popular tokens.  Our daily active user numbers today currently stand at around 58,000 users. . .*

. . .

*So, basically what we are going for is to facilitate everyday retail transactions that are powered by Terra.*

129.    In an email sent on February 6, 2020 directly to investors, including U.S.-based institutional investors, Kwon noted that "*Chai sits at 1.18 million active accounts today, and we passed the 1M mark on Jan 14th.*"  Similarly, on February 9, 2020, Kwon wrote in the Terra General Discord Channel chat accessible to the public that "*[r]ight now Chai has 12 merchants, all of whom get settled in KRT on the Terraform blockchain.*"

130.    Terraform provided a September 2020 investor slide deck to at least one U.S.-based institutional investor, in which it touted the purported speed and efficiency of Chai in using the Terraform blockchain to process transactions.  One slide titled "*Explosive adoption of payment solutions has generated Terra 16M in annualized fees*" contained a chart of various crypto assets and associated that $16 million with "LUNA, Terra's Native Token."  Later slides in the deck also touted Chai's success in promoting the investment opportunities of other Terraform crypto asset securities.

131.    In a Tweet posted on October 30, 2020 through @terra_money, Terraform again emphasized Chai's use of the Terraform blockchain and highlighted its growth, stating:

*1/ Eighteen new merchants integrated w/CHAI alongside #1 convenience store CU, meaning CHAI can now be used at nearly 18,000 OFFLINE stores across Korea!*

38

*Furthering accessibility for CHAI's 2 Million+ strong user base generates real-world transaction fees for $LUNA hodlers. [sic]*

That Tweet was accompanied by a graphic titled "Chai: Powered by Terra," which contained a list of vendors purportedly participating in Chai's payment platform.

132.     In a series of Tweets posted on May 24, 2021 through @terra_money, Terraform again emphasized Chai's use of the Terraform blockchain and highlighted its growth, stating:

*17/ As long as we create useful applications that people use on top of Terra, the strong locus of demand will always exist.*

*18/ And the use cases are already there. CHAI has more than 2 million active users in Korea. . .*

133.     And on March 31, 2022, in an interview posted to the public YouTube channel Blockworks Macro, Kwon again touted Chai and its use of the Terraform blockchain:

*So, we've launched apps like Chai in Korea. And so, the idea was that we were close to retail loop with things that people can buy, and transact with using, you know, Terra payments. So, you could take it to most e-commerce merchants of your choice. I could go to movie theaters, convenience stores, and things like that.*

134.     In addition to making and disseminating these materially false and misleading statements, Terraform and Kwon engaged in other deceptive acts, including by entering transactions on the Terraform blockchain using "KRT" (yet another algorithmic stablecoin offered by Terraform that was pegged to Korean currency, Won), which purported to reflect Chai commercial transactions.  Specifically, from June 2019 through at least May 12, 2022, the Terraform blockchain appeared to reflect that Chai transactions were being settled on the blockchain in KRT, when, in fact, Chai payments were processed in Korean Won.

135.     To carry out this deception, Terraform programmed a server, which was referred to internally as the "LP Server," to receive and process data about Chai transactions, and then

39

issue instructions to the Terraform blockchain to replicate those transactions as if they had originally "settled" on the Terraform blockchain.

136.    Analysis of Terraform blockchain data reflects that, in replicating the Chai transactions, Terraform used one wallet address ("Terraform Master Wallet") to fund up to 2.7 million other wallets.  Terraform controlled each of these wallets and used them to execute batched or "multisend" transfers that would replicate multiple Chai transactions together in a single transaction, using data received by the LP Server.  Analysis of Terraform blockchain data further reflects that Terraform used the Terraform Master Wallet to begin each batch of transactions that replicated the real transactions that Chai was processing in Korean Won.

137.    In statements to investors, Kwon has confirmed that the batched blockchain transactions that utilized this Terraform Master Wallet were purportedly connected to Chai (though he did not disclose that they merely replicated Chai transactions, which were not actually settled on the blockchain).  For instance, in a private Discord chat on June 22, 2019, Kwon told a small number of investors that Terraform blockchain transactions that are "multisend [are] pretty much all Chai."

138.    To further his deception, Kwon "challenged" his Twitter followers to identify purported merchant wallet addresses from these replicated blockchain transactions.  Specifically, in a tweet posted on or about February 9, 2020 through @stablekwon, Kwon challenged his followers to identify Chai merchant wallet addresses from the blockchain, posting:

> Fun thought: currently @terra_money payments app Chai is linked with 12 merchants in Korea.  Can anyone guess which wallet address belongs to which merchant?  First person to respond with the correct guess and explain reasoning get 5000 $LUNA.

139.    At least one of Kwon's Twitter followers purportedly accepted the challenge and searched the Terraform blockchain to match the follower's real-world Chai app payments with

40

transactions recorded on the blockchain.  As a result, the follower claimed to have discovered eleven of the twelve purported merchant wallet addresses.

140.    Later that day, Kwon posted a follow-up tweet falsely stating that the follower had correctly identified the Chai merchant wallets.  In fact, a blockchain analysis reveals that each identified transaction began with the Terraform Master Wallet and the purportedly identified merchant wallet addresses were controlled by Terraform.

141.    These Terraform blockchain transactions purporting to represent real Chai transactions were purely sham transactions.  An analysis of the blockchain indicates that virtually all the KRT used to fund the Terraform Master Wallet originated from other Terraform-controlled wallets, including a reserve of Terraform stablecoins, called Terraform SDR (SDT).  Similarly, virtually all the KRT used to replicate these Chai transactions remained in or was returned to Terraform-controlled wallets through at least May 12, 2022.  The analysis further reflects that, from June 2019 until at least May 2022, with very few exceptions, the wallet addresses used in Terraform Master Wallet transactions were used in no other transactions other than those initiated from the Terraform Master Wallet.  In other words, these blockchain transactions do not reflect real-world, arms-length transfers of KRT between consumers and merchants.  Instead, they reflect a closed system in which Terraform transferred KRT between millions of wallets that it controlled in order to replicate millions of transactions processed through Chai to make it appear that they had been processed and settled on the Terraform blockchain.

142.    In reality, Chai did not process or settle transactions on the Terraform blockchain, but instead used traditional payment methods of receiving Korean Won from its customers and paying Korean Won to participating merchants.  Neither Chai consumers nor Chai merchants

41

were transacting in KRT.  The transactions that were executed by the LP Server on the Terraform blockchain merely recorded transactions that had already happened in the real world using Korean Won.

143.    Breaks in the continuity of new blocks created on the Terraform blockchain confirm that no Chai transactions occurred on the blockchain.  The Terraform blockchain typically creates new blocks reflecting new states of the blockchain (including transactions) every six or so seconds.  However, in at least five instances between October 2021 and March 2022, there were one or more days when no transactions whatsoever were confirmed on the Terraform blockchain.  Yet, there is no evidence that the Chai payment application was not functioning during those periods.

144.    Chai itself has denied in emails to its own investors that it used a blockchain to process its payments and claimed that doing so would not have been legally permitted in Korea.

145.    Terraform employees that knew of the deception also knew to maintain its secrecy.  For example, one Terraform employee explained in a chat with another employee on October 9, 2020, "btw we don't want to say stuff about LP server too much . . . it breaks the perception that chai depends on Terra . . . Basically chai doesn't need Terra to work . . . It's what copies chai's transactions from their data base to create tx activity."

146.    As a founder and former director of Chai, Kwon (and through Kwon, Terraform) knew or were reckless in not knowing that Chai did not actually process or settle transactions on the Terraform blockchain.  Kwon personally wrote much of the Terraform blockchain code from its genesis through two version upgrades and was primarily responsible for Terraform's coding and engineering strategy decisions.  At the time of Chai's development and launch, Kwon held the most senior technical position at Terraform.

147.     Kwon knew or was reckless in not knowing that the LP Server was merely replicating Chai transaction data that had not actually occurred on the Terraform blockchain because Kwon directly supervised and instructed the Terraform employees who programmed the LP Server in the first instance.  Kwon also participated in technical discussions that required an understanding of how Chai transactions were reflected on the Terraform blockchain, including that they were batched in "multisend" transactions, and demonstrated knowledge of the location of Chai-related files in Terraform's code repositories.  Kwon further demonstrated his understanding of the Chai transaction replication process by publicly confirming Terraform blockchain wallet addresses that purportedly belonged to Chai merchants.

148.     Defendants' misleading statements and omissions, and their deceptive acts, with respect to the Chai transactions, were material to investors in Terraform's crypto assets securities.

149.     Terraform and Kwon used these material misrepresentations about Chai to encourage and solicit investments by retail and institutional investors in Terraform crypto assets, including LUNA and wLUNA.  For example, in a June 19, 2020 blog post on Terraform's Medium website, Terraform's Head of Ecosystem Development directly tied Chai's purported use of the Terraform blockchain to the returns to Terraform investors, writing:

> In this piece we'd like to go beyond the numbers to reflect on the key role that transaction fees play in determining network value and security. The fundamental driver of transaction fees in the Terra network is the broad adoption of CHAI by consumers and merchants.

150.     Defendants' efforts worked.  U.S.-based retail and institutional investors believed that Chai operated on the Terraform blockchain and found it significant in deciding to invest in Terraform crypto assets, including LUNA.  For example, on December 3, 2020, the CEO of a U.S. based institutional investor posted to Twitter: "Terra's payment app Chai is up to 80k daily

43

EXHIBIT A

active users.  Koreans are fast adopters.  Watch this grow. $LUNA."  On May 18, 2022, that same CEO posted a memo to Twitter purporting to explain the basis for investing in LUNA.  In the memo, the CEO highlighted as one significant factor, Chai's use of the Terra blockchain, describing it as "crypto finding a real-world use case."

151.    Similarly, in or around November 2021, Kwon and another Terraform employee approached another U.S.-based institutional investor to solicit that investor to purchase LUNA tokens.  In pitching the LUNA investment, Terraform and Kwon told the investor that the Terraform blockchain was being used to process Chai transactions.  The investor found this fact to be significant in deciding to invest with Terraform.  This investor specifically highlighted Chai's purported transactions on the Terraform blockchain in the investor's internal investment memorandum in early January 2022.  On or about January 24, 2022, that investor (through a foreign subsidiary) signed an agreement to purchase $57 million in LUNA tokens.

152.    From December 27, 2019, to March 10, 2022, U.S.-based institutional investors (either directly or through offshore affiliates) purchased approximately $656 million of LUNA tokens from Terraform (or a wholly-controlled subsidiary).  These institutional investors included hedge funds and venture capitalists based in California, New York, Massachusetts, Florida, and Washington D.C.  Similarly, from September 2021 through May 2022, retail investors, including investors in the U.S., purchased billions of dollars of LUNA and wLUNA on crypto asset trading platforms.

## B.    Terraform and Kwon Mislead Investors about the May 2021 De-peg

153.    Terraform and Kwon also engaged in a scheme to mislead investors and potential investors about the stability of Terraform's stablecoin "UST" (including as offered and sold with the Anchor Protocol) and the algorithm that purportedly pegged UST's price to the U.S. dollar.

44

Specifically, in May 2021, when the value of UST became "unpegged" from the U.S. dollar, Terraform, through Kwon, secretly discussed plans with a third party, the "U.S. Trading Firm," to buy large amounts of UST to restore its value.

154.    When UST's price went back up as a result of these efforts, Defendants falsely and misleadingly represented to the public that UST's algorithm had successfully re-pegged UST to the dollar, giving the investing public the false and misleading impression that the re-peg had occurred without human intervention and misleadingly omitting the real reason for the re-peg: intervention by the U.S. Trading Firm

155.    Starting on or about November 2019, the U.S. Trading Firm and Terraform or its subsidiaries entered into a series of agreements (negotiated and signed by Kwon on behalf of Terraform and its subsidiaries), whereby the U.S. Trading Firm was to provide Terraform market-making services with respect to LUNA, and eventually UST, in exchange for compensation (generally by receiving LUNA at a significant discount to expected future market prices).  In a loan agreement dated on or about September 8, 2020, the parties agreed that  the U.S. Trading Firm could receive an additional up to 65 million LUNA tokens at a price of $0.40 per token, after achieving certain benchmarks in its trading of UST.

156.    From 2019, when UST was first coded onto the Terraform blockchain, until mid-May 2021, there were no significant market disruptions to UST.

157.    But on May 19, 2021, UST began to de-peg from $1.00.  On May 23, 2021, UST's price declined sharply, dropping to nearly $0.90.  That morning and continuing throughout the day, Kwon communicated repeatedly with U.S.-based representatives of the U.S. Trading Firm.  In these communications, Kwon expressed concern over UST's value and discussed with the U.S. Trading Firm how to restore UST's peg to the dollar.

EXHIBIT A

158.    The U.S. Trading Firm responded by purchasing large quantities of UST throughout the day on May 23 and continuing through May 27 in an effort to restore the peg. Ultimately, the U.S. Trading Firm made net purchases of over 62 million UST across at least two crypto asset trading platforms, including at least one platform located in the U.S.  As depicted in the chart below, UST's market price began to rise shortly after the U.S. Trading Firm's purchases, and eventually was restored to near $1.



159.    Shortly thereafter, Kwon on behalf of Terraform agreed to remove the loan agreement conditions that required the U.S. Trading Firm to achieve the requisite benchmarks in order to receive the loaned LUNA tokens.  Instead, Terraform agreed to deliver on specified dates, without conditions, specific amounts of the remaining 61,458,334 LUNA tokens to the U.S. Trading Firm under the agreements.  Under the modified terms of the agreements, the final LUNA delivery to the U.S. Trading Firm was set to occur by September 1, 2025.

160.    Those modifications were subsequently reduced to writing in a July 21, 2021 agreement signed by Kwon.  Under the terms of the modified agreement, U.S. Trading Firm

46

EXHIBIT A

continued to receive LUNA tokens at $0.40 per token, even during periods when LUNA was trading at more than $90 in the secondary market.  In October 2021, in exchange for the 65 million LUNA tokens from Terraform, U.S. Trading Firm transferred from its U.S. bank account approximately $26 million to Terraform, a transaction that routed through a second U.S. bank.

161.    The U.S. Trading Firm ultimately profited approximately $1 billion by selling LUNA acquired from Terraform under the terms of the 2019 and 2020 loan agreements, as modified.

162.    Almost immediately upon UST's recovery in May 2021, Terraform and Kwon began to make materially misleading statements about how UST's peg to the dollar was restored. Specifically, Terraform and Kwon emphasized the purported effectiveness of the algorithm underlying UST in maintaining UST pegged to the dollar – misleadingly omitting the true cause of UST's re-peg: the deliberate intervention by the U.S. Trading Firm to restore the peg.

163.    For instance, on May 23, 2021, Kwon posted a series of statements accessible to U.S. investors on his Twitter account @d0h0k1, including:

*16/ Is $UST growth manipulated by Terraform Labs?*

*Nobody who's used mirror or anchor could believe this – but just for clarification we currently hold only ~59M $UST.*

*Reminder that there's currently over 2B in UST stablecoins.*

*. . .*

*Building pure, unbiased and decentralized money is the long game. . .*

164.    Similarly, on May 24, 2021, Terraform tweeted the following from @terra_money:

*14/ Plagued by the cumbersome nature of stress-induced decision-making of human agents in time of market volatility, it's why central banks are exploring*

47

EXHIBIT A

*CBDCs.  Algorithmic, calibrated adjustments of economic parameters are more effective than faxes and suits in meetings.*

165.    Kwon continued to make similar material misstatements over the course of the next year.  For instance, during a March 1, 2022 Twitter talk show, which was accessible to U.S. investors, Kwon talked about UST's de-peg in May 2021, stating:

> *... it took a few days for the slippage cost to naturally heal back to spot. So that's another feature of the market module where when the exchange rate has deviated from the peg, the protocol automatically self-heals the exchange rate back to whatever the spot price is being quoted by the oracle.  So that's why it took several days for the peg to recover.*

A transcript of that talk show was also posted to a publicly available website located at terraspaces.org, which was funded by Kwon.

166.    These statements were materially false and misleading.  Despite Defendants' statements to the contrary, UST did not "automatically self-heal[]."  UST's  "[a]lgorithmic, calibrated adjustments of economic parameters" failed.  UST's peg to the dollar was not restored until after Defendants took deliberate steps to discuss with the U.S. Trading Firm a plan to deploy capital to restore UST's price to one dollar.  While Defendants led investors to believe UST's peg was restored by the algorithm, in fact, as Defendants knew, it was the deliberate actions of "human agents," including Terraform, Kwon, and the U.S. Trading Firm, that ultimately led to the restoration of the peg.

167.    And Terraform and Kwon knew or were reckless in not knowing that these statements were materially false and misleading.  Terraform and Kwon knew that the U.S. Trading Firm had intervened to buy up UST because Terraform and Kwon discussed it with U.S.-based representatives of the U.S. Trading Firm at the time.  In fact, the U.S. Trading Firm was rewarded for its role in restoring the peg by having the terms of its loan agreements modified to the U.S. Trading Firm's benefit.

168.    Defendants never disclosed their or U.S. Trading Firm's roles in restoring UST's peg.  Instead, they misled investors who were actively buying and trading UST to believe that the algorithm had "self-heal[ed]" to restore the peg without any human involvement.

169.    Terraform and Kwon's misrepresentations and omissions about the May 2021 de-peg were material to numerous U.S.-based retail and institutional investors who were unaware that any third party had intervened to restore the peg and continued to buy and hold UST (including as offered and sold with Anchor Protocol) on the belief that the algorithm had worked to restore the peg.

### C.    May 2022 Collapse of the Terraform Ecosystem

170.    In May 2022, UST de-pegged from the U.S. dollar again.  This time UST's price did not recover.  Several factors contributed to the crash, including the sale of large amounts of UST by one or more sophisticated trading firms beginning on or about May 7, 2022.  The algorithm failed to maintain the peg for UST, and its price fell to near zero, as did the prices of Terraform's other crypto assets.

171.    By the end of May 2022, UST, LUNA, wLUNA and MIR were essentially worthless, wiping out more than $40 billion in combined market value.

172.    Domestic institutional investors experienced billions of dollars in losses in market valuations.  Countless retail investors lost their life savings and ended up in debt as a result of the collapse.  For example, a pharmacist in California borrowed $400,000 against the value of his home to purchase UST and lost his entire investment.  A painter in Vermont invested $20,000 in UST set aside for his son's college education, but lost it all when the Terraform ecosystem collapsed.

49

173.    Defendants still retain valuable proceeds from the Terraform

ecosystem.  Specifically, Defendants transferred over 10,000 Bitcoin from Terraform and Luna

Foundation Guard crypto asset platform accounts to an un-hosted wallet, or "cold" wallet (*i.e.*, a

self-custody wallet that is not held with any crypto asset platform).  On a periodic basis since

May 2022, Terraform and Kwon have transferred – and continue to transfer – Bitcoin from this

wallet to a financial institution based in Switzerland and have converted the Bitcoin to

cash.  Between June 2022 and the date of this complaint, over $100 million in fiat currency has

been withdrawn from that Swiss bank.

## FIRST CLAIM FOR RELIEF
### Fraud in the Offer of Sale of Securities
### (Violation of Section 17(a) of the Securities Act)

174.    The Commission realleges and incorporates by reference herein the allegations in

paragraphs 1 through 173.

175.    Defendants, in the offer or sale of securities, by the use of means or

instrumentalities of transportation or communication in interstate commerce or by use of the

mails, directly or indirectly:  (1) knowingly or recklessly employed devices, schemes, or artifices

to defraud; (2) knowingly, recklessly, or negligently obtained money or property by means of

untrue statements of material fact or by omitting to state material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not

misleading; and (3) knowingly, recklessly, or negligently engaged in transactions, practices, or

courses of business which operated or would operate as a fraud or deceit upon the purchaser.

176.    By their conduct described above, Defendants violated, and unless restrained and

enjoined will continue to violate, Securities Act Section 17(a), 15 U.S.C. § 77q(a).

50

## SECOND CLAIM FOR RELIEF
### Fraud in Connection with the Purchase or Sale of Securities
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)

177.    The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 173.

178.    By reason of the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers of the securities.

179.    By reason of the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

## THIRD CLAIM FOR RELIEF
### Control Person Liability under Section 20(a) of the Exchange Act for Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

180.    The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 173.

181.    Kwon is, or was, directly or indirectly, a control person of Terraform for purposes of Exchange Act Section 20(a), 15 U.S.C. § 78t(a).

EXHIBIT A

182.    As a control person of Terraform, Kwon is jointly and severally liable with and to the same extent as the controlled entity for its violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## FOURTH CLAIM FOR RELIEF
### Unregistered Offers and Sales of Securities
### Violation of Sections 5(a) and 5(c) of the Securities Act

183.    The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 173.

184.    By virtue of the foregoing, Defendants, directly and indirectly: without a registration statement in effect as to that security, (a) made use of the means and instruments of transportation or communications in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise; (b) carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; and (c) made use of the means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

185.    By their conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c).

## FIFTH CLAIM FOR RELIEF
### Unregistered Offer of Security-Based Swaps with Non-Eligible Contract Participants
### (Violations of Section 5(e) of the Securities Act)

186.    The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 173.

EXHIBIT A

187.     Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce or the mails, to offer to sell, offer to buy or purchase or sell, a security-based swap to persons who are not eligible contract participants as defined in Section 1a(18) of the Commodity Exchange Act, 7 U.S.C. § 1a(18), without an effective registration statement.

188.     By engaging in the foregoing conduct, Defendants have violated, and unless restrained and enjoined will continue to violate, Section 5(e) of the Securities Act, 15 U.S.C. § 77e(e).

## SIXTH CLAIM FOR RELIEF
### Effecting Transactions in Security-Based Swaps with Non-Eligible Contract Participants
### (Violations of Section 6(l) of the Exchange Act)

189.     The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 173.

190.     Defendants effected transactions in security-based swaps with or for a person that is not an eligible contract participant, without such transaction being effected on a national securities exchange registered pursuant to subsection 6(b) of the Exchange Act, 15 U.S.C. § 78f(b).

191.     By engaging in the foregoing conduct, Defendants have violated, and unless restrained and enjoined will continue to violate, Section 6(l) of the Exchange Act, 15 U.S.C. § 78f(1).

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

A.     Finding that Defendants committed the violations alleged in this Complaint;

B.      Permanently restraining and enjoining Defendants from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c); Section 5(e) of the Securities Act, 15 U.S.C. § 77e(e); Section 6(l) of the Exchange Act, 15 U.S.C. § 78f(l); Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and permanently enjoining Kwon from violating Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

C.      Ordering Defendants to disgorge their ill-gotten gains, plus prejudgment interest thereon, pursuant to Sections 21(d)(3), (5) and (7) of the Exchange Act, 15 U.S.C. §§ 78u(d)(3), (5) and (7);

D.      Ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3);

E.      Imposing a conduct-based injunction pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. §§ 78u(d)(5), prohibiting Defendants from (i) participating, directly or indirectly, in the purchase, offer, or sale of any crypto asset security, or (ii) engaging in activities for purposes of inducing or attempting to induce the purchase, offer, or sale of any crypto asset security by others.

F.      Grant such further relief as the Court deems appropriate.

EXHIBIT A

# JURY DEMAND

The SEC demands a trial by jury on all issues so triable.

Dated:  March 31, 2023                    Respectfully submitted,

/s/ James P. Connor
Jorge G. Tenreiro
James P. Connor, admitted *pro hac vice*
Laura E. Meehan
Devon L. Staren, admitted *pro hac vice*
Christopher J. Carney
Ladan F. Stewart
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE
COMMISSION
100 F Street NE
Washington, DC 20549
Tel: (202) 551-8394
Email: connorja@sec.gov

Of counsel:
Elisabeth Goot
Kathleen Hitchins
Roger J. Landsman
Reid A. Muoio
James F. Murtha
100 F Street NE
Washington, DC

EXHIBIT A

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

                             :

                             :

                             :

SECURITIES AND EXCHANGE COMMISSION,   :

               Plaintiff,      :    No. 1:23-cv-1346 (JSR)

                             :

       v.                     :    JURY TRIAL DEMANDED

                             :

TERRAFORM LABS PTE LTD. and        :
DO HYEONG KWON,

                             :

             Defendants.    :

                             X

## ANSWER TO SEC'S AMENDED COMPLAINT

Defendants Terraform Labs PTE Ltd. ("TFL") and Kwon Do Hyeong (together, "Defendants"), by their undersigned attorneys, as and for their Answer to the Amended Complaint ("AC") filed by the Securities and Exchange Commission (the "SEC"), state as follows:

## DEFENDANTS' PRELIMINARY STATEMENT

1. The AC is based on unprecedented and ill-conceived legal theories (having neither statutory support nor congressional authorization) that Defendants' alleged distributions of UST, LUNA, wLUNA, and MIR were "investment contract[s]" and thus "securit[ies]" subject to registration under 15 U.S.C. § 77b(a)(1). That theory ignores, among many other things, that UST, LUNA, wLUNA, and MIR each perform a number of functions that are distinct from the functions of "securities" as the law has understood that term for decades. For example, UST was a medium of exchange, moving value between jurisdictions and facilitating transactions. It was not a security and the SEC has no authority to regulate it as one.

EXHIBIT B

2. The SEC filed this Complaint 5 years after the Terra blockchain and ecosystem were first created and after nearly 2 years of investigation (starting with MIR and mAssets).  During those periods, the SEC took no steps to prevent parties globally from transacting in UST, LUNA, wLUNA, MIR, and mAssets, took no steps to prevent these ecosystems from growing, and took no steps to prevent or inhibit the creation of new use cases by both TFL and third parties.  The SEC's filing, based on a legal theory that has no statutory tether, amounts to picking cryptocurrency winners and losers, given that the SEC has exempted bitcoin and (so far) ether from similar attempts at regulation.  As multiple members of Congress and SEC Commissioners have recognized, the SEC lacks power to act in this space and its behavior threatens to damage U.S. competitiveness and innovation.

3. Defendants did not sell or distribute UST, LUNA, wLUNA, or MIR as investment contracts, and did not sell mAssets as securities-based swaps.  TFL has never offered or sold UST, LUNA, wLUNA, or MIR as investments, and holders of those tokens did not acquire any claim to the assets of TFL, hold any ownership interest in TFL, or have any entitlement to share in TFL's future profits (to the extent there were any).  TFL never performed an initial coin offering, did not offer or contract to sell future tokens as a way to raise money to build an ecosystem, never promised "profits" to any holder of UST, LUNA, wLUNA, MIR, or mAssets, and had no relationship at all with the vast majority of UST, LUNA, wLUNA, MIR, and mAsset holders, nearly all of whom purchased or received those tokens from third parties on the open market or received them programmatically through the use of a protocol.

4. The small number of contracts an affiliate of TFL entered into with sophisticated, institutional counterparties for sales of LUNA and MIR were not investment contracts, but standard purchase and sale agreements with no promise of efforts by TFL or future profits.

EXHIBIT B

Neither TFL nor the subsidiary that sold the LUNA and MIR tokens had any explicit or implicit obligation to any of those counterparties to expend efforts on their behalf; proceeds of LUNA and MIR sales were not pooled in a common enterprise; and holders of LUNA and MIR could not reasonably rely on the efforts of TFL or the selling subsidiary. Indeed, each such contract stated on its cover page that no token should be construed, interpreted, classified, or treated as enabling, or according any opportunity to any purchaser to participate in or receive profits, income, or other payments or returns arising from or in connection with the seller, the project group, the project, the tokens, or the proceeds of the token sale, or to receive sums paid out of such profits, income, or other payments or returns. These agreements also stated that the purchasers were not relying on any representations other than those in the purchase agreements, and the purchase agreements contained no representations regarding the elements of the test set forth in *SEC v. W.J. Howey Co*., 328 U.S. 293 (1946).

5. Although TFL held a large amount of LUNA from its genesis, that does not and cannot render LUNA or wLUNA an investment contract. Many entities own large amounts of commodities and participate heavily in the commodities markets. There is no credible argument that substantial holdings convert those commodities or currencies into securities, nor has any case so held.

6. The theory asserted by the SEC in the AC would read the word "contract" out of "investment contract," and stretch the *Howey* test beyond all sensible recognition. As a matter of economic substance, UST, LUNA, wLUNA, MIR, and mAssets categorically differ from what Congress defined as "securities" and authorized the SEC to regulate.

EXHIBIT B

7.    The AC tries to overcome these legal obstacles by mischaracterizing the record. For example, the AC mischaracterizes all of the transactions involving LUNA and MIR, regardless of their nature, purpose, or manner of execution, as a single "Offering."

8.    The SEC's unbounded zeal to characterize every cryptocurrency company as lawless is exemplified by two aspects of the AC:

    a.    The AC alleges that Chai Corporation worked in a specific way that it alleges was contrary to public disclosures about Chai.  From the beginning of its nearly two-year investigation of Defendants *through now*, the SEC has not examined the source code for the programs that operated Chai's platform:  During a discovery conference, Defendants' counsel asked the SEC's counsel whether they had reviewed any Chai source code, and the SEC's counsel said they had not and did not have copies of it.

    b.    The SEC makes allegations about Defendants' interactions with a Swiss bank that it knew were untrue:  At the time the SEC made the allegations in paragraph 173, it possessed information obtained from the Swiss bank that directly disproved every allegation in that paragraph.  Bank records provided to the SEC and in the SEC's possession when it filed this case showed that Mr. Kwon transferred no cryptocurrency at all to the Swiss Bank after March 2022, that he *never* transferred Bitcoin to the Swiss bank, and that all transfers by TFL were made for the purposes of paying salaries, rent and other ordinary business expenses, legal fees, and into a court registry to moot a Mareva injunction entered in Singapore.

## RESPONSE TO THE SEC'S ALLEGATIONS[1]

### SUMMARY

1.    Defendants deny the allegations in paragraph 1.

2.    Defendants deny the allegations in paragraph 2.

3.    Defendants deny the allegations in paragraph 3.

---

[1] Defendants deny all titles, headings, footnotes, subheadings, and any other material not contained in numbered paragraphs unless otherwise noted.  When a document (or statements, conclusions, or other material referenced therefrom) is referenced in this Answer or the AC, it speaks for itself and Defendants deny any allegations or characterizations based on the document.  Defendants reserve all rights with regard to the existence, authenticity, accuracy, and admissibility of such documents.

EXHIBIT B

4.      Defendants admit that at various times LUNA was one of the ten largest cryptocurrencies by circulating value, that UST was a stablecoin that was algorithmically pegged to the U.S. dollar that in April 2022 had a circulating value of more than $17 billion, and otherwise deny the allegations in paragraph 4.

5.      Defendants deny the allegations in paragraph 5.

6.      Defendants deny the allegations in paragraph 6.

7.      Defendants admit that the price of UST fell below $1 during late May 2021 and then recovered, refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 7.

8.      Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 8, and the allegations are therefore denied.

9.      Defendants admit that there was significant selling pressure on UST and LUNA in May 2022, lack sufficient knowledge to admit or deny the allegations in the penultimate and final sentences in paragraph 9 and those allegations are therefore denied, and otherwise deny the allegations in paragraph 9.

## VIOLATIONS

10.     Defendants deny the allegations in paragraph 10.

11.     Defendants deny the allegations in paragraph 11.

12.     Defendants deny the allegations in paragraph 12.

## NATURE OF PROCEEDINGS AND RELIEF SOUGHT

13.     Paragraph 13 states a legal conclusion to which no response is required.

14.     Defendants admit that the SEC seeks the relief described in paragraph 14 but deny that it is entitled to any of the relief sought.

EXHIBIT B

**DEFENDANTS**

15.    TFL admits that it is a private company registered and headquartered in Singapore and has had employees located in the U.S., states that neither TFL nor cryptocurrencies it developed were required to be registered with the SEC (and notes that the SEC has never provided guidance on how cryptocurrencies could be registered even if a developer had wanted to try to do so), and otherwise denies the allegations in paragraph 15.

16.    Mr. Kwon admits the first, fourth, fifth, and sixth sentences of paragraph 16 and otherwise denies the allegations in paragraph 16.

**JURISDICTION AND VENUE**

17.    Paragraph 17 states legal conclusions as to which no response is required.

18.    Defendants deny the allegations in paragraph 18.

19.    Defendants deny the allegations in paragraph 19.

20.    Defendants deny the allegations in paragraph 20.

**STATUTORY AND LEGAL FRAMEWORK**

21.    Paragraph 21 states legal conclusions as to which no response is required.

22.    Paragraph 22 states legal conclusions as to which no response is required.

23.    Paragraph 23 states legal conclusions as to which no response is required.

24.    Paragraph 24 states legal conclusions as to which no response is required.

25.    Paragraph 25 states legal conclusions as to which no response is required.

**BACKGROUND ON CRYPTO ASSETS**

26.    Defendants admit that paragraph 26 states a definition of what the SEC calls "crypto assets," but deny that it is the sole such definition and note that it is not the term

EXHIBIT B

Defendants used for tokens developed by TFL, and otherwise deny the allegations in paragraph 26.

27.     Defendants admit that some blockchains and distributed ledgers are peer-to-peer databases that operate on networks of computers to record transactions in immutable digital forms and that they generally rely on cryptographic principles and algorithms for multiple aspects of their operations, that blockchains can be used in the operations of smart contracts as that term is generally used in connection with, *inter alia*, cryptocurrencies and decentralized financial applications, and otherwise deny the allegations in paragraph 27.

28.     Defendants admit that many blockchains employ "consensus" mechanisms for various purposes and that cryptocurrencies can be bought and sold on centralized and decentralized markets as well as through peer-to-peer transactions that do not involve any markets, and otherwise deny the allegations in paragraph 28.

29.     Defendants deny the allegations in paragraph 29.

30.     Paragraph 30 states legal conclusions as to which no response is required.

## FACTS

**I.      Defendants Created and Developed the Terraform Ecosystem.**

31.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 31.

32.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 32.

EXHIBIT B

33.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 33.

34.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 34.

35.     Defendants deny the allegations in paragraph 35.

36.     Defendants refer to the publicly available information relating to the circulating supply of UST for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 36.

37.     Defendants admit that TFL created other cryptocurrency-related products, including the Mirror Protocol, which was introduced to the public in December 2020, that the Mirror Protocol enabled users to programmatically create mAssets that tracked any asset in the world with a continuous price feed, refer to the cited or quoted materials for the content and context thereof, note that those materials speak for themselves, and otherwise deny the allegations in paragraph 37.

38.     Defendants admit that the Mirror Protocol programmatically generated MIR tokens, refer to the Mirror Protocol documentation for the context and content thereof, and otherwise deny the allegations in paragraph 38.

**II.     Terraform's Crypto Assets Were Offered and Sold As Securities.**

39.     Defendants deny the allegations in paragraph 39.

EXHIBIT B

40.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 40.

41.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 41.

42.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 42.

43.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 43.

A.     LUNA

1.     *Investment of Money.*

44.     Defendants deny the allegations in paragraph 44.

2.     *Common Enterprise.*

45.     Defendants deny the allegations in paragraph 45.

46.     Defendants deny the allegations in paragraph 46.

47.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 47.

48.     Defendants admit the second and third sentences and otherwise deny the allegations of paragraph 48.

EXHIBIT B

### 3.  Reasonable Expectation of Profits From Defendants' Managerial Efforts.

49.    Defendants deny the allegations in paragraph 49.

50.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 50.

51.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 51.

52.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 52.

53.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 53.

54.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 54.

55.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 55.

56.    Defendants state that the public prices of LUNA during the referenced periods speak for themselves and otherwise deny the allegations in paragraph 56.

EXHIBIT B

57.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 57.

58.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 58.

**B.     "Wrapped" LUNA**

59.     Defendants admit that UST, LUNA, and MIR were minted and transferred on the TFL blockchain, that different blockchains are not always interoperable, that cryptocurrencies on one blockchain are not always transferable to another blockchain, and deny the other allegations in paragraph 60.

60.     Defendants admit that cross-chain and bridge protocols generally permit holders of cryptocurrencies to move those cryptocurrencies from one blockchain to another blockchain, that wLUNA functions through a bridge from the Terra blockchain to the Ethereum blockchain, and otherwise deny the allegations in paragraph 60.

61.     Defendants admit that there was a mechanism for moving wLUNA from the Ethereum blockchain to the Terra blockchain and refer to that mechanism for the context and content thereof, and otherwise deny the allegations in paragraph 61.

**1.     Investment of Money.**

62.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 62, and the allegations are therefore denied.

**2.     Common Enterprise.**

63.     Defendants deny the allegations in paragraph 63.

64.     Defendants deny the allegations in paragraph 64.

**EXHIBIT B**

### 3. Reasonable Expectation of Profits from Defendants' Managerial Efforts.

65.     Defendants deny the allegations in paragraph 65.

66.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 66.

67.     Defendants deny the allegations in paragraph 67.

### 4. wLuna Is a Receipt for a Security.

68.     The first sentence of paragraph 68 states a legal conclusion to which no response is required, and Defendants deny the allegations in the remainder of paragraph 68.

## C.     UST

### 1. Investment of Money.

69.     Defendants deny the allegations in paragraph 69.

### 2. Common Enterprise.

70.     Defendants deny the allegations in paragraph 70.

71.     Defendants deny the allegations in paragraph 71.

72.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 72.

73.     Defendants deny the allegations in paragraph 73.

### 3. Reasonable Expectation of Profits Based on the Managerial Efforts of Defendants.

74.     Defendants deny the allegations in paragraph 74.

75.     Defendants deny the allegations in paragraph 75.

EXHIBIT B

76.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 76.

77.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 77.

78.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 78.

79.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 79.

80.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 80.

81.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 81, and the allegations are therefore denied.

82.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 82, and the allegations are therefore denied.

83.     Defendants deny the allegations in paragraph 83.

### 4.     *UST Is a Security Because It Could Be Exchanged for LUNA*

84.     Defendants deny the allegations in paragraph 84.

### D.     MIR Tokens

### 1.     *Investment of Money.*

EXHIBIT B

85.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 85, and the allegations are therefore denied with the exception of those entities who purchased farmed MIR from TFL through Simple Agreements for Farmed Tokens, and Defendants refer to those purchase agreements for the content and context thereof and otherwise deny the allegations relating to such agreements.

### 2.     *Common Enterprise.*

86.     Defendants deny the allegations in paragraph 86.

87.     Defendants deny the allegations in paragraph 87.

88.     Defendants deny the allegations in paragraph 88.

89.     Defendants admit that TFL farmed some MIR tokens as a service to certain entities that desired to purchase MIR tokens without farming them themselves (and refer to those agreements for the content and context thereof) and otherwise deny the allegations in paragraph 89.

### 3.     *Reasonable Expectation of Profits Based on Defendants' Managerial Efforts.*

90.     Defendants deny the allegations in paragraph 90.

91.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 91.

92.     Defendants deny the allegations in paragraph 92.

93.     Defendants admit that the Mirror Protocol was developed to provide benefits to its users and as an example of a use case for the Terra blockchain, and otherwise deny the allegations in paragraph 93.

EXHIBIT B

94.     Defendants admit that the Mirror Protocol was developed and maintained to provide benefits to its users and as an example of a use case for the Terra blockchain, and otherwise deny the allegations in paragraph 94.

95.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 95.

96.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 96.

97.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 97.

**E.      mAsset Transactions Were Security-Based Swaps**

98.     Defendants deny the allegations in paragraph 98.

99.     Defendants deny the allegations in paragraph 99.

100.     Defendants deny the allegations in paragraph 100.

101.     Defendants deny the allegations in paragraph 101.

102.     The first sentence of paragraph 102 states legal conclusions to which no response is denied.  Defendants deny the allegations in the remainder of paragraph 102.

103.     Paragraph 103 states legal conclusions as to which no response is required.

104.     Paragraph 104 states legal conclusions as to which no response is required.

**III.     Defendants Offered and Sold Crypto Asset Securities in Unregistered Transactions**

105.     Defendants deny the allegations in paragraph 105.

EXHIBIT B

106.     Defendants deny the allegations in paragraph 106.

107.     Defendants deny the allegations in paragraph 107.

108.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 108.

109.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 109.

110.     Defendants deny the allegations in paragraph 110.

111.     TFL states that it engaged in open market transactions involving LUNA, none of which were on U.S.-based platforms, lacks sufficient knowledge or information relating to which "crypto asset trading platforms" were "available to U.S. investors" and therefore denies those allegations, and otherwise denies the allegations in paragraph 111.

112.     Defendants admit that TFL entered into contracts to farm MIR tokens for certain entities, refer to those contracts for the content and context thereof, note that those contracts speak for themselves, and otherwise deny the allegations in paragraph 112.

113.     Defendants deny the allegations in paragraph 113.

114.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 114.

115.     Defendants admit that the website referenced in the last sentence of paragraph 115 enabled Mirror Protocol users to interact with the Mirror Protocol and otherwise deny the allegations in paragraph 115.

EXHIBIT B

116.     Defendants deny the allegations in paragraph 116.

117.     Defendants deny the allegations in paragraph 117.

IV.     **Terraform and Kwon Misled, Deceived, and Defrauded Investors**

118.     Defendants deny the allegations in paragraph 118.

119.     Defendants deny the allegations in paragraph 119.

120.     Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 120.

A.     **Terraform and Kwon Deceived Investors About Chai**

121.     Defendants deny the allegations in paragraph 121.

122.     Defendants deny the allegations in paragraph 122.

123.     Defendants admit that Chai was a mobile payment service provider in Korea created by Mr. Kwon and Daniel Shin and otherwise deny the allegations in paragraph 123.

124.     Defendants admit that at various times Chai and TFL shared office space and personnel and that Mr. Kwon was for a time on Chai's board, and otherwise deny the allegations in paragraph 124.

125.     Defendants admit that Messrs. Kwon and Shin separated TFL from Chai, that Mr. Kwon continued as TFL's CEO and moved TFL's offices in Korea, that many TFL employees worked solely for TFL thereafter, and that Mr. Kwon continued as a director of Chai for some period of time.  Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 125.

126.     Defendants deny the allegations in paragraph 126.

EXHIBIT B

127.    Defendants deny the allegations in paragraph 127.

128.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 128.

129.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 129.

130.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 130.

131.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 131.

132.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 132.

133.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 133.

134.    Defendants deny the allegations in paragraph 134.

135.    Defendants deny the allegations in paragraph 135.

136.    Defendants deny the allegations in paragraph 136.

EXHIBIT B

137.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 137.

138.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 138.

139.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 139.

140.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 140.

141.    Defendants deny the allegations in paragraph 141.

142.    Defendants deny the allegations in paragraph 142.

143.    Defendants deny the allegations in paragraph 143.

144.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 144.

145.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 145.

146.    Defendants deny the allegations in paragraph 146.

147.    Defendants deny the allegations in paragraph 147.

EXHIBIT B

148.     Defendants deny the allegations in paragraph 148.

149.     Defendants refer to the cited or quoted materials for the content and context
thereof and note that those materials speak for themselves, and otherwise deny the allegations in
paragraph 149.

150.     Defendants refer to the cited or quoted materials for the content and context
thereof and note that those materials speak for themselves, lack sufficient knowledge regarding
what supposed "U.S.-based retail and institutional investors believed" or "found" "significant"
and therefore deny such allegations, and otherwise deny the allegations in paragraph 150.

151.     Defendants refer to the cited or quoted materials for the content and context
thereof and note that those materials speak for themselves, lack sufficient knowledge regarding
what a supposed "U.S.-based institutional investors believed" or "found" "significant" and
therefore deny such allegations, and otherwise deny the allegations in paragraph 151.

152.     Defendants refer to the cited or quoted materials for the content and context
thereof and note that those materials speak for themselves, and otherwise deny the allegations in
paragraph 152.

**B.     Terraform and Kwon Mislead Investors about the May 2021 De-peg**

153.     Defendants deny the allegations in paragraph 153.

154.     Defendants deny the allegations in paragraph 154.

155.     Defendants refer to the cited or quoted materials for the content and context
thereof and note that those materials speak for themselves, and otherwise deny the allegations in
paragraph 155.

156.     Defendants admit that UST maintained its peg from 2019 through May 2021 and
otherwise deny the allegations in paragraph 156.

157.    Defendants admit that the price of UST declined during certain parts of May 2021, that Mr. Kwon was called by an executive of the U.S. Trading Firm on the morning of May 23, 2021 (U.S. Central time) and called that executive during the afternoon of May 23, 2021 (U.S. Central time), and otherwise deny the allegations in paragraph 157.

158.    Defendants deny the allegations in paragraph 158.

159.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 159.

160.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 160.

161.    Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 161, and the allegations are therefore denied.

162.    Defendants deny the allegations in paragraph 162.

163.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 163.

164.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 164.

165.    Defendants refer to the cited or quoted materials for the content and context thereof and note that those materials speak for themselves, and otherwise deny the allegations in paragraph 165.

EXHIBIT B

166.    Defendants deny the allegations in paragraph 166.

167.    Defendants deny the allegations in paragraph 167.

168.    Defendants deny the allegations in paragraph 168.

169.    Defendants deny the allegations in paragraph 169.

**C.      May 2022 Collapse of the Terraform Ecosystem**

170.    Defendants admit that UST lost its peg in May 2022 and did not recover despite the publicly discussed efforts of TFL and LFG to retore the peg; state that the cause of the depeg appears to have been concerted action by certain market participants to depress the price of UST; refer to the publicly available price information for UST, LUNA, and MIR for the content and context thereof; and otherwise deny the allegations in paragraph 170.

171.    Defendants admit that UST, LUNA, wLUNA, and MIR lost most of their value in May 2022 due to market events and otherwise deny the allegations in paragraph 171.

172.    Defendants state that no Defendant ever advised anyone to make purchases such as those alleged in paragraph 172.  Defendants lack sufficient knowledge regarding the allegations in paragraph 172, and the allegations are therefore denied.

173.    Defendants deny the allegations in paragraph 173.

**FIRST CLAIM FOR RELIEF**
**Fraud in the Offer of Sale of Securities**
**(Violation of Section 17(a) of the Securities Act)**

174.    Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 173.

175.    Defendants deny the allegations in paragraph 175.

176.    Defendants deny the allegations in paragraph 176.

**SECOND CLAIM FOR RELIEF**
**Fraud in Connection with the Purchase or Sale of Securities**
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**

EXHIBIT B

177.    Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 173.

178.    Defendants deny the allegations in paragraph 178.

179.    Defendants deny the allegations in paragraph 179.

### THIRD CLAIM FOR RELIEF
**Control Person Liability under Section 20(a) of the Exchange Act for Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

180.    Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 173.

181.    Mr. Kwon denies the allegations in paragraph 181.

182.    Mr. Kwon denies the allegations in paragraph 182.

### FOURTH CLAIM FOR RELIEF
**Unregistered Offers and Sales of Securities
Violation of Sections 5(a) and 5(c) of the Securities Act**

183.    Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 173.

184.    Defendants deny the allegations in paragraph 184.

185.    Defendants deny the allegations in paragraph 185.

### FIFTH CLAIM FOR RELIEF
**Unregistered Offer of Security-Based Swaps with Non-Eligible Contract Participants
(Violations of Section 5(e) of the Securities Act)**

186.    Defendants repeat and reallege their responses to the allegations in paragraphs 1 through 173.

187.    Defendants deny the allegations in paragraph 187.

188.    Defendants deny the allegations in paragraph 188.

## SIXTH CLAIM FOR RELIEF
### Effecting Transactions in Security-Based Swaps with Non-Eligible Contract Participants
### (Violations of Section 6(l) of the Exchange Act)

189.    Defendants repeat and reallege their responses to the allegations in paragraphs 1

through 173.

190.    Defendants deny the allegations in paragraph 190.

191.    Defendants deny the allegations in paragraph 191.

## AFFIRMATIVE DEFENSES

Defendants allege, assert, and state the following defenses as separate and distinct

defenses to the AC.  By virtue of asserting these affirmative defenses, Defendants do not assume

any burden of proof, persuasion, or production not legally assigned to them.

### FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM

The AC fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE: UST, LUNA, WLUNA, MIR, AND MASSETS ARE NOT SECURITIES

Defendants did not violate any provisions of the Securities Act or Securities Exchange

Act because (a) UST, LUNA, wLUNA, and MIR are not securities or "investment contracts" and

no distributions or sales of UST, LUNA, wLUNA, or MIR were "investment contracts"; (b)

mAssets are not security-based swaps and no sales of mAssets were security-based swaps; and

(c) neither Defendant could be deemed the "issuer" or a statutory seller of UST, LUNA,

wLUNA, MIR, or mAssets.  No registration was required in connection with any distribution or

sale of UST, LUNA, wLUNA, MIR, or mAssets.

### THIRD AFFIRMATIVE DEFENSE: NO LIKELIHOOD OF FUTURE VIOLATIONS

The relief requested in the AC is inappropriate, in whole or in part, because the AC fails

to allege a reasonable likelihood of future violations by either Defendant.

EXHIBIT B

**FOURTH AFFIRMATIVE DEFENSE: LACK OF DUE PROCESS AND FAIR NOTICE AND VIOLATION OF THE SEPARATION OF POWERS**

Defendants did not have, and the SEC failed to provide, fair notice that Defendants' alleged conduct was in violation of law, in contravention of Defendants' due process rights. Due process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and how to comply with the law. Here, due to the lack of clarity and fair notice regarding Defendants' obligations under the law, in addition to the lack of clarity and fair notice regarding the SEC's interpretation of the law, Defendants lacked fair notice that their alleged conduct was prohibited.

That lack of fair notice was further exacerbated when, in June 2018, the SEC's then-Director of Corporation Finance told cryptocurrency purchasers that the SEC did not consider bitcoin or ether to be securities and would "put[] aside the fundraising that accompanied the creation of [e]ther" and look instead at the "present state of [e]ther."[2] Defendants and other reasonable observers further reasonably understood those remarks to indicate that the SEC would permit present-day sales of cryptocurrencies given the market conditions for UST, LUNA, wLUNA, MIR, and mAssets during the alleged "Relevant Period." Indeed, members of the SEC's Office of General Counsel who participated in drafting the Hinman speech commented, in editing that speech, that there was a "regulatory gap" in the SEC's authority.

The SEC's claims also violate the separation of powers guaranteed by the U.S. Constitution and the "major questions doctrine" articulated by the Supreme Court. Congress did not give the SEC authority to regulate cryptocurrencies in the Securities or Securities Exchange

---

[2] Director William Hinman, Division of Corporation Finance, Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic), (June 14, 2018), https://www.sec.gov/news/ speech/speech-hinman-061418.

EXHIBIT B

Acts because no one could have conceived of cryptocurrencies then.  This is confirmed by the fact that Congress is presently considering multiple bills that would create, for the first time, a statutory structure for regulating cryptocurrencies; some of those bills would assign some or all of that function to the SEC, but some would leave the SEC mostly out of that structure.

### FIFTH AFFIRMATIVE DEFENSE: EXEMPTION FROM REGISTRATION

Even if the Court were to find that UST, LUNA, wLUNA, or MIR constituted securities or investment contracts within the meaning of the Securities Act or Securities Exchange Act, or that mAssets constituted securities-based swaps, the SEC's claims against Defendants are barred because any distributions or sales of UST, LUNA, wLUNA, MIR, or mAssets were exempt from the registration requirements of the Securities Act and Securities Exchange Act and the regulations promulgated thereunder.

### SIXTH AFFIRMATIVE DEFENSE: LACK OF EXTRATERRITORIAL AUTHORITY

The SEC's attempt to exert authority over most or all of the transactions alleged in the AC is impermissible because those transactions took place outside the U.S. and/or were made on foreign exchanges.

### SEVENTH AFFIRMATIVE DEFENSE: STATUTE OF LIMITATIONS

The SEC's claims and request for civil monetary penalties are barred in whole or in part by an applicable statute of limitations.

### RESERVATION OF RIGHTS

Defendants presently have insufficient knowledge or information upon which to form a belief as to whether there may be other, as yet unstated, defenses available to them, and therefore expressly reserve, in accordance with applicable law, the right to amend or supplement their Answer, defenses and all other pleadings, and the right to assert any and all other additional and

EXHIBIT B

further defenses as appropriate, including defenses that may be revealed by discovery or

otherwise.

## PRAYER FOR RELIEF

WHEREFORE, the Defendants respectfully request that this Court enter a Final

Judgment:

      A.     Dismissing all claims in the Amended Complaint with prejudice and

      B.     Granting such further relief as the Court deems appropriate.

Dated: New York, New York
       August 14, 2023             Respectfully submitted,

                              */s/ Douglas W. Henkin*
                              **DENTONS US LLP**
                              Douglas W. Henkin
                              David L. Kornblau
                              1221 Avenue of the Americas
                              New York, New York 10020
                              Tel: (212) 768-6700
                              douglas.henkin@dentons.com
                              david.kornblau@dentons.com

                              Mark G. Califano
                              1900 K Street, NW
                              Washington, DC 20006-1102
                              Tel: (202) 496-7500
                              mark.califano@dentons.com

                              Stephen J. Senderowitz (admitted *pro hac vice*)
                              233 S. Wacker Drive
                              Chicago, Illinois 60606
                              Tel: (312) 876-8141
                              stephen.senderowitz@dentons.com

EXHIBIT B

# EXHIBIT C

**Query    Reports    Utilities    Help    Log Out**

ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:23-cv-01346-JSR

| | |
|---|---|
| Securities and Exchange Commission v. Terraform Labs Pte Ltd. et al | Date Filed: 02/16/2023 |
| Assigned to: Judge Jed S. Rakoff | Jury Demand: Both |
| Cause: 12:22 Securities Fraud | Nature of Suit: 850 Securities/Commodities |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Securities and Exchange Commission**      represented by   **Carina Cuellar**
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
202-551-6414
Email: cuellarc@sec.gov
*ATTORNEY TO BE NOTICED*

**Christopher James Carney**
U.S. Securities and Exchange Commission
100 F St NE
Washington, DC 20549
202-551-2379
Email: carneyc@sec.gov
*ATTORNEY TO BE NOTICED*

**Devon Staren**
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
202-551-5346
Email: starend@sec.gov
*ATTORNEY TO BE NOTICED*

**Laura E. Meehan**
Securities and Exchange Commission
100 Pearl Street
New York, NY 10004
212-336-0079
Email: meehanla@sec.gov
*ATTORNEY TO BE NOTICED*

**Michael Edward Welsh**
Securities and Exchange Commission
351 S W Temple Street
Ste 6.100
Salt Lake City, UT 84101
801-524-3422
Email: welshmi@sec.gov
*ATTORNEY TO BE NOTICED*

**James Patrick Connor**
U.S. Securities and Exchange Commission (DC)
100 F Street, NE
Washington, DC 20549
202-551-8394
Email: connorja@sec.gov
*ATTORNEY TO BE NOTICED*

**EXHIBIT C**

V.

**Defendant**

**Do Hyeong Kwon**                              represented by  **Douglas W Henkin**
                                                               Dentons US LLP
                                                               1221 Avenue of the Americas
                                                               New York, NY 10020
                                                               212-768-6832
                                                               Email: douglas.henkin@dentons.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Mark Califano**
                                                               Dentons US LLP
                                                               1900 K Street, NW
                                                               Washington, DC 20006
                                                               202-496-7327
                                                               Fax: 202-496-7756
                                                               Email: mark.califano@dentons.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Matthew A. Lafferman**
                                                               Dentons US LLP
                                                               1900 K Street, NW
                                                               Washington, DC 20006
                                                               202-496-7303
                                                               Email: matthew.lafferman@dentons.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Melissa Gomez Nelson**
                                                               Dentons US LLP
                                                               1900 K Street, NW
                                                               Washington, DC 20006
                                                               202-496-7173
                                                               Email: melissa.gomeznelson@dentons.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Nicholas W. Petts**
                                                               Dentons US LLP
                                                               1900 K Street, NW
                                                               Washington, DC 20006
                                                               202-496-7356
                                                               Email: nick.petts@dentons.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Stephen J. Senderowitz**
                                                               Dentons US LLP
                                                               233 South Wacker Drive
                                                               Ste 5900
                                                               Chicago, IL 60606
                                                               312-876-8141
                                                               Fax: 312-876-7934
                                                               Email: stephen.senderowitz@dentons.com
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Terraform Labs Pte Ltd.**                     represented by  **David Leon Kornblau**
                                                               Dentons US LLP
                                                               1221 Avenue of the Americas
                                                               New York, NY 10020
                                                               212-768-6890
                                                               Email: david.kornblau@dentons.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Douglas W Henkin**
                                                               (See above for address)

**EXHIBIT C**

ATTORNEY TO BE NOTICED

**Mark Califano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew A. Lafferman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Melissa Gomez Nelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas W. Petts**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen J. Senderowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Paradigm Operations LP**                    represented by **Meghan K. Spillane**
Goodwin Procter LLP
The New York Times Building, 620 Eighth Avenue
New York, NY 10018
(212) 813-8800
Fax: (212) 355-3333
Email: mspillane@goodwinlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/16/2023 | 1 | COMPLAINT against Do Hyeong Kwon, Terraform Labs Pte Ltd.. Document filed by Securities and Exchange Commission..(Connor, James) (Entered: 02/16/2023) |
| 02/16/2023 | 2 | **FILING ERROR - PDF ERROR -** CIVIL COVER SHEET filed..(Connor, James) Modified on 2/17/2023 (pc). (Entered: 02/16/2023) |
| 02/16/2023 | 3 | MOTION for James P. Connor to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Securities and Exchange Commission. (Attachments: # 1 Affidavit Affidavit, # 2 Text of Proposed Order Proposed Order, # 3 Exhibit DC Certificate of Good Standing, # 4 Exhibit Virginia Certificate of Good Standing).(Connor, James) (Entered: 02/16/2023) |
| 02/17/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 3 MOTION for James P. Connor to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 02/17/2023) |
| 02/17/2023 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Jed S. Rakoff. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 02/17/2023) |
| 02/17/2023 | | Magistrate Judge James L. Cott is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 02/17/2023) |
| 02/17/2023 | | Case Designated ECF. (pc) (Entered: 02/17/2023) |
| 02/17/2023 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT CIVIL COVER SHEET. Notice to attorney James Patrick Connor to RE-FILE Document No. 2 Civil Cover Sheet. The filing is deficient for the following reason(s): second page is missing;. Re-file the document using the event type Civil Cover Sheet found under the event list Other Documents and attach the correct PDF. Use civil cover sheet issued by** |

EXHIBIT C

| | | |
|---|---|---|
| | | **S.D.N.Y. dated October 1, 2020. The S.D.N.Y. Civil Cover Sheet dated October 1, 2020 is located at** <br> **http://nysd.uscourts.gov/file/forms/civil-cover-sheet..** (pc) (Entered: 02/17/2023) |
| 02/21/2023 | [4] | REQUEST FOR ISSUANCE OF SUMMONS as to Terraform Labs PTE Ltd., re: 1 Complaint. Document filed by Securities and Exchange Commission..(Connor, James) (Entered: 02/21/2023) |
| 02/21/2023 | [5] | REQUEST FOR ISSUANCE OF SUMMONS as to Do Hyeong Kwon, re: 1 Complaint. Document filed by Securities and Exchange Commission..(Connor, James) (Entered: 02/21/2023) |
| 02/21/2023 | [6] | NOTICE OF APPEARANCE by Laura E. Meehan on behalf of Securities and Exchange Commission..(Meehan, Laura) (Entered: 02/21/2023) |
| 02/22/2023 | [7] | MOTION for Devon Leppink Staren to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Securities and Exchange Commission. (Attachments: # 1 Affidavit Staren Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order).(Staren, Devon) (Entered: 02/22/2023) |
| 02/22/2023 | [8] | ELECTRONIC SUMMONS ISSUED as to Do Hyeong Kwon..(pc) (Entered: 02/22/2023) |
| 02/22/2023 | [9] | ELECTRONIC SUMMONS ISSUED as to Terraform Labs Pte Ltd...(pc) (Entered: 02/22/2023) |
| 02/23/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 7 MOTION for Devon Leppink Staren to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 02/23/2023) |
| 02/23/2023 | [10] | ORDER FOR ADMISSION PRO HAC VICE granting 3 Motion for James P. Connor to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice pro hac vice in the above-captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys.. (Signed by Judge Jed S. Rakoff on 2/23/2023) (kv) (Entered: 02/23/2023) |
| 02/23/2023 | [11] | ORDER FOR ADMISSION PRO HAC VICE granting 7 Motion for Devon Leppink Staren to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice pro hac vice in the above captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys.. (Signed by Judge Jed S. Rakoff on 2/23/2023) (kv) (Entered: 02/23/2023) |
| 02/23/2023 | [12] | NOTICE OF COURT CONFERENCE: DATE AND PLACE OF CONFERENCE: 3/7/2023, ON A TELECONFERENCE LINE AT 11:15am. The dial-in information for the call will be as follows: USA Toll-Free (888) 363-4735; USA Caller Paid/International Toll: (215) 446-3657; Access Code: 1086415. Initial Conference set for 3/7/2023 at 11:15 AM before Judge Jed S. Rakoff. (Signed by Judge Jed S. Rakoff on 2/23/2023) (kv) (Entered: 02/23/2023) |
| 03/01/2023 | [13] | WAIVER OF SERVICE RETURNED EXECUTED. All Defendants. Document filed by Securities and Exchange Commission..(Meehan, Laura) (Entered: 03/01/2023) |
| 03/03/2023 | [14] | NOTICE OF APPEARANCE by Douglas W Henkin on behalf of Terraform Labs Pte Ltd...(Henkin, Douglas) (Entered: 03/03/2023) |
| 03/03/2023 | [15] | NOTICE OF APPEARANCE by David Leon Kornblau on behalf of Terraform Labs Pte Ltd...(Kornblau, David) (Entered: 03/03/2023) |
| 03/03/2023 | [16] | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Terraform Labs Pte Ltd...(Henkin, Douglas) (Entered: 03/03/2023) |
| 03/03/2023 | [17] | PROPOSED CASE MANAGEMENT PLAN. Document filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Staren, Devon) (Entered: 03/03/2023) |
| 03/03/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff:. Initial Conference set for 3/7/2023 at 11:15 AM before Judge Jed S. Rakoff will be in courtroom 14B of 500 Pearl Street. (Kotowski, Linda) (Entered: 03/03/2023) |
| 03/06/2023 | [18] | MOTION for Stephen J. Senderowitz to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-27425824. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Senderowitz, Stephen) (Entered: 03/06/2023) |
| 03/07/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 18 MOTION for Stephen J. Senderowitz to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-27425824. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (aea)** (Entered: 03/07/2023) |
| 03/07/2023 | [19] | ORDER FOR ADMISSION PRO HAC VICE OF STEPHEN J. SENDEROWITZ granting 18 Motion for Stephen J. Senderowitz to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice pro hac Vice in the above-captioned case in the United States District Court for the Southern District of New York. All |

EXHIBIT C

| | | |
|---|---|---|
| | | attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys.. (Signed by Judge Jed S. Rakoff on 3/7/2023) (kv) (Entered: 03/07/2023) |
| 03/07/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Initial Pretrial Conference held on 3/7/2023, ( Final Pretrial Conference set for 10/24/2023 at 04:00 PM before Judge Jed S. Rakoff., Oral Argument set for 5/25/2023 at 04:00 PM before Judge Jed S. Rakoff. All matters in person only in courtroom 14B of 500 Pearl Street.) (Kotowski, Linda) (Entered: 03/08/2023) |
| 03/08/2023 | 20 | CIVIL CASE MANAGEMENT PLAN: The case is to be tried to a jury. Motion to Dismiss: Moving -4/21, Answering -5/12, Reply -5/19. Amended Pleadings due by 3/31/2023. Motions due by 9/26/2023. Responses due by 10/10/2023 Replies due by 10/17/2023. Deposition due by 8/31/2023. Discovery due by 9/12/2023. Oral Argument set for 5/25/2023 at 04:00 PM before Judge Jed S. Rakoff. Final Pretrial Conference set for 10/24/2023 at 04:00 PM before Judge Jed S. Rakoff. Ready for Trial by 10/17/2023. (Signed by Judge Jed S. Rakoff on 3/7/2023) (kv) (Entered: 03/08/2023) |
| 03/14/2023 | 21 | TRANSCRIPT of Proceedings re: CONFERENCE held on 3/7/2023 before Judge Jed S. Rakoff. Court Reporter/Transcriber: Sonya Ketter Moore, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/4/2023. Redacted Transcript Deadline set for 4/14/2023. Release of Transcript Restriction set for 6/12/2023..(McGuirk, Kelly) (Entered: 03/14/2023) |
| 03/14/2023 | 22 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 3/7/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 03/14/2023) |
| 03/27/2023 | 23 | NOTICE OF APPEARANCE by Christopher James Carney on behalf of Securities and Exchange Commission.. (Carney, Christopher) (Entered: 03/27/2023) |
| 03/31/2023 | 24 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR -** AMENDED COMPLAINT amending 1 Complaint against All Defendants with JURY DEMAND.Document filed by Securities and Exchange Commission. Related document: 1 Complaint..(Connor, James) Modified on 4/3/2023 (vf). (Entered: 03/31/2023) |
| 04/03/2023 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney James Patrick Connor to RE-FILE Document No. 24 Amended Complaint. The filing is deficient for the following reason(s): the All Defendant radio button was selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (vf)** (Entered: 04/03/2023) |
| 04/03/2023 | 25 | AMENDED COMPLAINT amending 1 Complaint against Do Hyeong Kwon, Terraform Labs Pte Ltd. with JURY DEMAND.Document filed by Securities and Exchange Commission. Related document: 1 Complaint..(Connor, James) (Entered: 04/03/2023) |
| 04/14/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 4/14/2023, without transcription or recording. Counsel for the SEC and for defendants Do Hyeong Kwon and Terraform Labs were present. Defendants application for an order compelling the SEC to withdraw requests previously made to Singapores monetary authority for documents from defendants and third party Luna Foundation Guard is denied.. (Kotowski, Linda) (Entered: 04/17/2023) |
| 04/20/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 4/19/2023, without recording or transcription, at which all parties counsel were present, the Court rules on the parties applications as follows. First, the Court grants leave to the defendants to file a single, joint brief of up to forty pages. Second, the plaintiff is granted leave to file a brief of up to the same amount of pages. Third, defendants may submit a reply brief of up to twenty pages. Fourth, the SECs application for an extension of time to answer defendants motion to dismiss is denied. Finally, non-party Paradigm Operations LP is granted leave to file an amicus brief. --. (Kotowski, Linda) (Entered: 04/21/2023) |
| 04/21/2023 | 26 | Amicus Curiae APPEARANCE entered by Meghan K. Spillane on behalf of Paradigm Operations LP..(Spillane, Meghan) (Entered: 04/21/2023) |
| 04/21/2023 | 27 | BRIEF *of Paradigm Operations LP as Amicus Curiae in Support of Neither Party*. Document filed by Paradigm Operations LP..(Spillane, Meghan) (Entered: 04/21/2023) |
| 04/21/2023 | 28 | MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd.. Responses due by 5/12/2023.(Henkin, Douglas) (Entered: 04/21/2023) |

**EXHIBIT C**

| 04/21/2023 | [29] | MEMORANDUM OF LAW in Support re: [28] MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6).* . Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Henkin, Douglas) (Entered: 04/21/2023) |
|---|---|---|
| 04/21/2023 | [30] | DECLARATION of Douglas W. Henkin in Support re: [28] MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)..* Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd.. (Attachments: # [1] Exhibit -A to Declaration of Douglas W. Henkin, # [2] Exhibit -B to Declaration of Douglas W. Henkin, # [3] Exhibit -C to Declaration of Douglas W. Henkin, # [4] Exhibit -D to Declaration of Douglas W. Henkin, # [5] Exhibit -E to Declaration of Douglas W. Henkin, # [6] Exhibit -F to Declaration of Douglas W. Henkin, # [7] Exhibit -G to Declaration of Douglas W. Henkin, # [8] Exhibit -H to Declaration of Douglas W. Henkin, # [9] Exhibit -I to Declaration of Douglas W. Henkin, # [10] Exhibit -J to Declaration of Douglas W. Henkin, # [11] Exhibit -K to Declaration of Douglas W. Henkin, # [12] Exhibit -L to Declaration of Douglas W. Henkin, # [13] Exhibit -M to Declaration of Douglas W. Henkin, # [14] Exhibit N- to Declaration of Douglas W. Henkin, # [15] Exhibit -O to Declaration of Douglas W. Henkin, # [16] Exhibit -P to Declaration of Douglas W. Henkin, # [17] Exhibit -Q to Declaration of Douglas W. Henkin, # [18] Exhibit -R to Declaration of Douglas W. Henkin, # [19] Exhibit -S to Declaration of Douglas W. Henkin, # [20] Exhibit -T to Declaration of Douglas W. Henkin, # [21] Exhibit -U to Declaration of Douglas W. Henkin, # [22] Exhibit -V to Declaration of Douglas W. Henkin, # [23] Exhibit -W to Declaration of Douglas W. Henkin, # [24] Exhibit -X to Declaration of Douglas W. Henkin, # [25] Exhibit -Y to Declaration of Douglas W. Henkin, # [26] Exhibit -Z to Declaration of Douglas W. Henkin, # [27] Exhibit -AA.1 to Declaration of Douglas W. Henkin, # [28] Exhibit -BB to Declaration of Douglas W. Henkin, # [29] Exhibit -CC to Declaration of Douglas W. Henkin, # [30] Exhibit -DD to Declaration of Douglas W. Henkin, # [31] Exhibit -EE to Declaration of Douglas W. Henkin, # [32] Exhibit -FF to Declaration of Douglas W. Henkin, # [33] Exhibit -GG to Declaration of Douglas W. Henkin, # [34] Exhibit -HH to Declaration of Douglas W. Henkin, # [35] Exhibit -II to Declaration of Douglas W. Henkin, # [36] Exhibit -JJ to Declaration of Douglas W. Henkin, # [37] Exhibit -KK to Declaration of Douglas W. Henkin, # [38] Exhibit -LL to Declaration of Douglas W. Henkin, # [39] Exhibit -MM to Declaration of Douglas W. Henkin, # [40] Exhibit -NN to Declaration of Douglas W. Henkin, # [41] Exhibit -OO to Declaration of Douglas W. Henkin).(Henkin, Douglas) (Entered: 04/21/2023) |
| 05/08/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 5/8/2023, without transcription or recording in which counsel for both parties was present, the Court orders the parties to provide letter briefing of no more than five single-spaced pages on the confidentiality issue discussed during the conference by Wednesday, May 17, 2023. In addition to filing their respective motions on this docket, the parties should email a copy of their letters to the Chambers inbox. (Kotowski, Linda) (Entered: 05/08/2023) |
| 05/10/2023 | [31] | NOTICE OF APPEARANCE by Mark Califano on behalf of Do Hyeong Kwon, Terraform Labs Pte Ltd... (Califano, Mark) (Entered: 05/10/2023) |
| 05/12/2023 | [32] | MEMORANDUM OF LAW in Opposition re: [28] MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6).* . Document filed by Securities and Exchange Commission..(Connor, James) (Entered: 05/12/2023) |
| 05/12/2023 | [33] | DECLARATION of James P. Connor in Opposition re: [28] MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)..* Document filed by Securities and Exchange Commission. (Attachments: # [1] Exhibit PP to Declaration of James P. Connor, # [2] Exhibit QQ to Declaration of James P. Connor, # [3] Exhibit RR to Declaration of James P. Connor, # [4] Exhibit SS to Declaration of James P. Connor, # [5] Exhibit TT to Declaration of James P. Connor, # [6] Exhibit UU to Declaration of James P. Connor, # [7] Exhibit VV to Declaration of James P. Connor, # [8] Exhibit WW to Declaration of James P. Connor, # [9] Exhibit XX to Declaration of James P. Connor, # [10] Exhibit YY to Declaration of James P. Connor, # [11] Exhibit ZZ to Declaration of James P. Connor, # [12] Exhibit AAA to Declaration of James P. Connor, # [13] Exhibit BBB to Declaration of James P. Connor, # [14] Exhibit CCC to Declaration of James P. Connor, # [15] Exhibit DDD to Declaration of James P. Connor, # [16] Exhibit EEE to Declaration of James P. Connor, # [17] Exhibit FFF to Declaration of James P. Connor, # [18] Exhibit GGG to Declaration of James P. Connor).(Connor, James) (Entered: 05/12/2023) |
| 05/15/2023 | [34] | PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... SO ORDERED. (Signed by Judge Jed S. Rakoff on 5/15/2023) (kv) (Entered: 05/15/2023) |
| 05/18/2023 | [35] | NOTICE OF APPEARANCE by Nicholas W. Petts on behalf of Do Hyeong Kwon, Terraform Labs Pte Ltd...(Petts, Nicholas) (Entered: 05/18/2023) |
| 05/19/2023 | [36] | DECLARATION of Douglas W. Henkin in Support re: [28] MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)..* Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd.. (Attachments: # [1] Exhibit -HHH to Douglas W. Henkin Declaration in Further Support of Defendants' Motion to Dismiss, # [2] Exhibit -III to Douglas W. Henkin Declaration in Further Support of Defendants' Motion to Dismiss, # [3] Exhibit -JJJ to Douglas W. Henkin Declaration in Further Support of Defendants' Motion to Dismiss, # [4] Exhibit -LLL to Douglas W. Henkin Declaration in Further Support of Defendants' Motion to Dismiss, # [5] Exhibit -KKK to Douglas W. Henkin Declaration in Further Support of Defendants' Motion to Dismiss).(Henkin, Douglas) (Entered: 05/19/2023) |

EXHIBIT C

| 05/19/2023 | [37](#) | REPLY MEMORANDUM OF LAW in Support re: [28](#) MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. . Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Henkin, Douglas) (Entered: 05/19/2023) |
|---|---|---|
| 05/20/2023 | [38](#) | AMENDED REPLY MEMORANDUM OF LAW in Support re: [28](#) MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. *(Corrected as to Dkt. #37)*. Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Henkin, Douglas) (Entered: 05/20/2023) |
| 05/23/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: ( Oral Argument set for 6/6/2023 at 04:30 PM before Judge Jed S. Rakoff.). (Kotowski, Linda) (Entered: 05/23/2023) |
| 06/01/2023 | [39](#) | MOTION for Matthew A. Lafferman to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-27818719. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Lafferman, Matthew) (Entered: 06/01/2023) |
| 06/01/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [39](#) MOTION for Matthew A. Lafferman to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-27818719. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 06/01/2023) |
| 06/05/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: ( Oral Argument set for 6/8/2023 at 04:00 PM before Judge Jed S. Rakoff.). (Kotowski, Linda) (Entered: 06/05/2023) |
| 06/07/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Further to conversations with both parties counsel on June 6, 2023, oral argument on the defendants motion to dismiss is adjourned to June 15, 2023 at 2:00pm in Courtroom 14B at 500 Pearl Street, New York, NY. (Kotowski, Linda) (Entered: 06/08/2023) |
| 06/15/2023 | [40](#) | SUPPLEMENTAL MEMORANDUM OF LAW in Support re: [28](#) MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. . Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd.. (Attachments: # [1](#) Exhibit 1 - Transcript of June 13, 2023 Hearing, # [2](#) Exhibit 2 - Third Circuit Sua Sponte Order, # [3](#) Exhibit 3 - SEC Response to Sua Sponte Order, # [4](#) Exhibit 4 - Internal SEC E-Mails from SEC v. Ripple, # [5](#) Exhibit 5 - Internal SEC E-Mails from SEC v. Ripple, # [6](#) Exhibit 6 - Internal SEC E-Mails from SEC v. Ripple, # [7](#) Exhibit 7 - Internal SEC E-Mails from SEC v. Ripple, # [8](#) Exhibit 8 - Internal SEC E-Mails from SEC v. Ripple, # [9](#) Exhibit 9 - Internal SEC E-Mails from SEC v. Ripple).(Henkin, Douglas) (Entered: 06/15/2023) |
| 06/15/2023 | [41](#) | RESPONSE in Opposition to Motion re: [28](#) MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. *Response to Supplemental Memorandum*. Document filed by Securities and Exchange Commission..(Connor, James) (Entered: 06/15/2023) |
| 06/26/2023 | [42](#) | TRANSCRIPT of Proceedings re: ORAL ARGUMENT held on 6/15/2023 before Judge Jed S. Rakoff. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/17/2023. Redacted Transcript Deadline set for 7/27/2023. Release of Transcript Restriction set for 9/25/2023..(McGuirk, Kelly) (Entered: 06/26/2023) |
| 06/26/2023 | [43](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a ORAL ARGUMENT proceeding held on 6/15/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 06/26/2023) |
| 06/28/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: ( Final Pretrial Conference set for 11/30/2023 at 04:00 PM before Judge Jed S. Rakoff in courtroom 14B of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York City, New York..). (Kotowski, Linda) (Entered: 06/28/2023) |
| 06/28/2023 | [44](#) | CIVIL CASE MANAGEMENT PLAN: The case is not to be tried to a jury. Motions due by 10/27/2023. Responses due by 11/10/2023 Replies due by 11/17/2023. Deposition due by 10/13/2023. Discovery due by 10/13/2023. Final Pretrial Conference set for 11/30/2023 at 04:00 PM before Judge Jed S. Rakoff. Ready for Trial by 11/17/2023. (Signed by Judge Jed S. Rakoff on 6/28/2023) (kv) (Entered: 06/28/2023) |
| 07/07/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Court's decision on 7/7/2023 : The defendants application to compel documents and other materials related to the speeches made by former Director William Hinman and Chairman Gary Gensler is denied based on the deliberative process privilege. (Kotowski, Linda) (Entered: 07/13/2023) |
| 07/10/2023 | [45](#) | MOTION for Issuance of Letters Rogatory as to Chai Corporation and Mr. Hyun-Seong Daniel Shin in Korea *(Unopposed)*. Document filed by Securities and Exchange Commission..(Connor, James) (Entered: 07/10/2023) |
| 07/10/2023 | [46](#) | MEMORANDUM OF LAW in Support re: [45](#) MOTION for Issuance of Letters Rogatory as to Chai Corporation and Mr. Hyun-Seong Daniel Shin in Korea *(Unopposed)*. . Document filed by Securities and Exchange |

**EXHIBIT C**

| | | Commission. (Attachments: # 1 Exhibit Letter of Request as to Chai Corporation, # 2 Exhibit Letter of Request as to Hyun-Seong Daniel Shin).(Connor, James) (Entered: 07/10/2023) |
|---|---|---|
| 07/18/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 7/17/2023,without recording or transcription. The defendants are granted leave to file a notice of supplemental authority, not to exceed 5 pages, by the close of business on July 18, 2023. The plaintiff may file a response to any such submission by no later than the close of business on July 21, 2023, also not to exceed 5 pages.. (Kotowski, Linda) Modified on 7/18/2023 (Kotowski, Linda). (Entered: 07/18/2023) |
| 07/18/2023 | 47 | MEMORANDUM OF LAW in Support re: 28 MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. *Memorandum Regarding Supplemental Authority In Support of Defendants' Motion to Dismiss*. Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Henkin, Douglas) (Entered: 07/18/2023) |
| 07/21/2023 | 48 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Carina A. Cuellar to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Securities and Exchange Commission. (Attachments: # 1 Affidavit Declaration, # 2 Text of Proposed Order Proposed Order, # 3 Exhibit CA Certificate of Good Standing, # 4 Exhibit DC Certificate of Good Standing).(Cuellar, Carina) Modified on 7/21/2023 (sgz). (Entered: 07/21/2023) |
| 07/21/2023 | 49 | RESPONSE in Opposition to Motion re: 28 MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. *Response to Supplemental Authority in Support of Defendants' Motion to Dismiss*. Document filed by Securities and Exchange Commission..(Carney, Christopher) (Entered: 07/21/2023) |
| 07/21/2023 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 48 MOTION for Carina A. Cuellar to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from Supreme Court of California;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (sgz)** (Entered: 07/21/2023) |
| 07/21/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 7/21/2023, without transcription or recording, during which counsel for all parties was present. The Court granted the SECs request to increase the total number of depositions it is permitted to take from 10 to 15.. (Kotowski, Linda) (Entered: 07/24/2023) |
| 07/25/2023 | 50 | ORDER FOR ADMISSION PRO HAC VICE: IT IS HEREBY ORDERED that Applicant is admitted to practice pro hac vice in the above captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. (Signed by Judge Jed S. Rakoff on 7/25/2023) (mml) (Entered: 07/25/2023) |
| 07/31/2023 | 51 | OPINION AND ORDER re: 28 MOTION to Dismiss *Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & 12(b)(6)*. filed by Terraform Labs Pte Ltd., Do Hyeong Kwon. For the foregoing reasons, the Court denies the defendants' motion to dismiss in its entirety. SO ORDERED. (Signed by Judge Jed S. Rakoff on 7/31/2023) (kv) (Entered: 07/31/2023) |
| 08/04/2023 | 52 | MOTION for Melissa Gomez Nelson to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28106074. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Nelson, Melissa) (Entered: 08/04/2023) |
| 08/04/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 52 MOTION for Melissa Gomez Nelson to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28106074. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 08/04/2023) |
| 08/14/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 8/14/2023, without transcription or recording. Counsel for all parties was present. The parties joint application to submit, by email to the Court, proposed letters of request to international authorities is granted.. (Kotowski, Linda) (Entered: 08/14/2023) |
| 08/14/2023 | 53 | ANSWER to 25 Amended Complaint with JURY DEMAND. Document filed by Do Hyeong Kwon, Terraform Labs Pte Ltd...(Henkin, Douglas) (Entered: 08/14/2023) |
| 08/15/2023 | 54 | ORDER FOR ADMISSION PRO HAC VICE OF MELISSA GOMEZ NELSON granting 52 Motion for Melissa Gomez Nelson to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice Pro Hac Vice in the above-captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. (Signed by Judge Jed S. Rakoff on 8/15/2023) (mml) (Entered: 08/15/2023) |
| 08/15/2023 | 55 | ORDER FOR ADMISSION PRO HAC VICE OF MATTHEW A. LAFFERMAN granting 39 Motion for Matthew A. Lafferman to Appear Pro Hac Vice. (Signed by Judge Jed S. Rakoff on 8/15/2023) (vfr) (Entered: 08/15/2023) |

EXHIBIT C

| | | |
|---|---|---|
| 08/16/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: The SECs unopposed motion for issuance of letters of request for international judicial assistance as to Chai Corporation and Mr. Hyun-Seong Daniel Shin in Korea, ECF No. 45, is granted. The Court has provided the signed letters to counsel. (Kotowski, Linda) (Entered: 08/17/2023) |
| 09/01/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 9/1/2023, without transcription or recording. Counsel for a third party was present. Defendant Do Hyeong Kwons request to subpoena the third party, in its current form, is denied without prejudice as overly broad. Defense counsel may propose a more narrow, tailored subpoena by no later than 8pm this evening, by email to the Court. The SEC and counsel for the third party may each send responses with any objections by noon on Tuesday, September 5, in the form of letter briefs not to exceed 2 single-spaced pages, by email to the Court. Defense counsel may then submit a reply by 8pm on Tuesday, September 5, in the form of a letter brief not to exceed 4 single-spaced pages, by email to the Court. The parties and counsel for the third party are directed to jointly call chambers at noon on Wednesday, September 6, for the Courts ruling.. (Kotowski, Linda) (Entered: 09/01/2023) |
| 09/19/2023 | 56 | MOTION for Michael E. Welsh to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Securities and Exchange Commission. (Attachments: # 1 Affidavit Welsh Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order Proposed Order).(Welsh, Michael) (Entered: 09/19/2023) |
| 09/19/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 56 MOTION for Michael E. Welsh to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 09/19/2023) |
| 09/19/2023 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 9/19/2023, without transcription for recording. Counsel for all parties was present. The SEC may file a motion requesting leave to depose defendant Kwon. The SEC must file its motion by Friday, September 22, at noon. Defense counsel may submit an opposition by Tuesday, September 26, at noon. No reply or oral argument will be necessary. (Kotowski, Linda) (Entered: 09/26/2023) |
| 09/22/2023 | 57 | NOTICE of Motion. Document filed by Securities and Exchange Commission..(Cuellar, Carina) (Entered: 09/22/2023) |
| 09/22/2023 | 58 | MOTION for Leave to File Notice of Deposition . Document filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C).(Cuellar, Carina) (Entered: 09/22/2023) |
| 09/27/2023 | 59 | MEMORANDUM OF LAW in Opposition re: 58 MOTION for Leave to File Notice of Deposition . . Document filed by Do Hyeong Kwon..(Henkin, Douglas) (Entered: 09/27/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/23/2023 20:37:26 | | | |
| **PACER Login:** | dentonsus1 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-01346-JSR |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

**EXHIBIT C**

# EXHIBIT D

Revised Form D—For cases assigned to Judge Rakoff                    Effective September 10, 2010
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- ------------------------------------------------------------------ x

SEC
                              Plaintiff(s),                          CIVIL CASE MANAGEMENT PLAN
                                                                            (JUDGE RAKOFF)
            -v-
                                                                         23-1346 (JSR)
**Terraform Labs PTE Ltd. and Do Hyeong Kwon**
                              Defendant(s).
- ------------------------------------------------------------------ x

### This Court requires that this case shall be <u>ready for trial</u> on <u>11/17/2023</u>.

        After consultation with counsel for the parties, the following Case Management Plan is adopted.
This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure.

A.      The case (is)  (is not) to be tried to a jury.  [Circle as appropriate]

B.      Joinder of additional parties must be accomplished by ____N/A_____.

C.      Amended pleadings may be filed without leave of Court until __3/31/2023_____.

D.      Discovery (in addition to the disclosures required by Fed. R. Civ. P. 26(a)):

        1.  <u>Documents</u>.  First request for production of documents, if any, must be served by
        __4/24/2023_____.  Further document requests may be served as required, but no document
        request may be served later than 30 days prior to the date of the close of discovery as set forth in
        item 6 below.

        2.  <u>Interrogatories</u>.  Interrogatories pursuant to Rule 33.3(a) of the Local Civil Rules of the
        Southern District of New York must be served by __4/24/2023_____.  No other interrogatories are
        permitted except upon prior express permission of Judge Rakoff.  No Rule 33.3(a) interrogatories
        need be served with respect to disclosures automatically required by Fed. R. Civ. P. 26(a).

        3.  <u>Experts</u>.  Every party-proponent of a claim (including any counterclaim, cross-claim, or third-
        party claim) that intends to offer expert testimony in respect of such claim must make the
        disclosures required by Fed. R. Civ. P. 26(a)(2) by ____9/7/2023_____.  Every party-opponent
        of such claim that intends to offer expert testimony in opposition to such claim must make the
        disclosures required by Fed. R. Civ. P. 26(a)(2) by ____9/28/2023_____.  No expert testimony
        (whether designated as "rebuttal" or otherwise) will be permitted by other experts or beyond the
        scope of the opinions covered by the aforesaid disclosures except upon prior express permission of
        the Court, application for which must be made no later than 10 days after the date specified in the
        immediately preceding sentence.  All experts may be deposed, but <u>such depositions must occur
        within the time limit for all depositions set forth below</u>.

EXHIBIT D

4.  _Depositions_.  All depositions (including any expert depositions, see item 3 above) must be completed by _____10/13/2023_____.  Unless counsel agree otherwise or the Court so orders, depositions shall not commence until all parties have completed the initial disclosures required by Fed. R. Civ. P. 26(a)(1) or until four weeks from the date of this Order, whichever is earlier. Depositions shall proceed concurrently, with no party having priority, and no deposition shall extend beyond one business day without prior leave of the Court.

5.  _Requests to Admit._  Requests to Admit, if any, must be served by _____9/11/2023_____ [insert date that is no later than 30 days prior to date of close of discovery as set forth in item 6 below].

6.  All discovery is to be completed by _____10/13/2023_____.  Interim deadlines for items 1–5 above may be extended by the parties on consent without application to the Court, provided the parties are certain they can still meet the discovery completion date set forth in this paragraph.  The discovery completion date may be adjourned only upon a showing to the Court of extraordinary circumstances, and may not be extended on consent.

E.  Post-discovery summary judgment motions in the form prescribed by the Court's Individual Rules of Practice may be brought on without further consultation with the Court provided that a Notice of any such motion, in the form specified in the Court's Individual Rules of Practice, is filed no later than one week following the close-of-discovery date (item D-6 above) and provided that the moving papers are served by _____10/27/2023_____, answering papers by _____11/10/2023_____, and reply papers by _____11/17/2023_____ [the last of these days being no later than six weeks following the close of discovery].  Each party must file its respective papers with the Clerk of the Court on the same date that such papers are served.  Additionally, on the same date that any papers are served and filed, counsel filing and serving the papers must arrange to deliver courtesy non-electronic hard copies to the Courthouse for delivery to Chambers.

F.  A final pre-trial conference, as well as oral argument on any post-discovery summary judgment motions, shall be held on ___11/30/2023 at 4:00pm_____[date to be inserted by the Court], at which time the Court shall set a firm trial date.  The timing and other requirements for the Joint Pretrial Order and/or other pre-trial submissions shall be governed by the Court's Individual Rules of Practice.

G.  All motions and applications shall be governed by Judge Rakoff's Individual Rules of Practice. Counsel shall promptly familiarize themselves with all of the Court's Individual Rules, as well as with the Local Rules for the United States District Court for the Southern District of New York.

    SO ORDERED.

    _____
    JED S. RAKOFF, U.S.D.J.


DATED:  New York, New York
    ____6/28/2023_____.

# EXHIBIT E

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _Plaintiff_ | ) |
| v. | ) |
| TERRAFORM LABS, PTE LTD, AND DO HYEONG KWON | ) |
| _Defendant_ | ) |

Civil Action No.   No. 1:23-cv-01346-JSR

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Payward, Inc., d/b/a "Kraken"
       c/o California Corporate Agents, Inc.,
       2108 N ST, Ste C, Sacramento, CA 95816

*(Name of person to whom this subpoena is directed)*

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Attached Schedule A

| Place:  Mark Califano, Dentons US LLP<br>         1999 Harrison Street, Suite 1300<br>         Oakland, CA 94612 | Date and Time:<br><br>07/28/2023 at 10:00 am EST |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/28/2023

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | /s/ Mark Califano |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendants, Terraform Labs, PTE LTD, and Do Hyeong Kwon                              , who issues or requests this subpoena, are:

Mark G. Califano, Dentons US LLP, mark.califano@dentons.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

EXHIBIT E

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   No. 1:23-cv-01346-JSR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**EXHIBIT E**

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT E**

**SCHEDULE A**

**DEFINITIONS**

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses thereof.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

5.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

6.      The "Action" refers to *Securities and Exchange Commission v. Terraform Labs Pte Ltd. et al*, 1:23-cv-01346-JSR (S.D.N.Y).

7.      "Agreement" means formal or informal, written or oral, promise between Persons.

8.      "All," "any," and "each" mean any and all.

9.      "And" and "or" are construed both conjunctively and disjunctively.

10.      "CFTC" means the United States Commodity Futures Trading Commission.

11.      "Communication" means every manner of the transmission of information in the form of facts, ideas, inquiries, or otherwise, whether person-to-person, in a group, orally, in

writing, by telephone, by electronic transmission, or otherwise, including SMS text, iMessage, Slack, Signal, Microsoft Teams Chat, email format, or any other electronic messaging platform or application. If used as a verb, the term "Communicate" means to contact, including without limitation by the same means identified above.

12.     "Device Fingerprint Data" means, without limitation, any data, information, or records You obtain or create that may be used to identify or reflect the "fingerprint" of any device(s) accessing or using Your Platform, including Media Access Control ("MAC") Address(es), International Mobile Equipment Identity ("IMEI") Address(es), International Mobile Subscriber Identity ("IMSI") number(s), browser characteristics, device hardware characteristics, device operating system characteristics, click-stream data,  Google Advertising ID, platform version and time zone settings, cookies, and any behavior or analytics data.

13.     "Diligence Information" means, without limitation, any information or data You have collected for any Person using Your Platform for purposes of conducting Know Your Customer ("KYC") compliance obligations, Your Customer Identification Program, Your Customer Due Diligence, or any similar types of information collected for the purposes of verifying the Person's identity, as well as any information collected in connection with ongoing monitoring or identity-verification activities You conduct.

14.     "DOJ" means the United States Department of Justice.

15.     "Document" means "document" and "electronically stored information" as defined in Federal Rule of Civil Procedure 34(a)(1)(A). The terms "Document" and "Documents" also include any attachments or exhibits to the requested documents, or any other documents referred to or incorporated by reference in the requested documents.  The term includes any attachments or exhibits to the requested documents, or any other documents referred to or incorporated by

EXHIBIT E

reference in the requested documents.  A draft or non-identical copy is a separate document within the meaning of this term.

16.    "Hot    Wallets"    means,    collectively,    Wallet    Address 0x2910543Af39abA0Cd09dBb2D50200b3E800A63D2 (the "A63D2 Wallet"), Wallet Address 0x0A869d79a7052C7f1b55a8EbAbbEa3420F0D1E13 (the "D1E13 Wallet"), Wallet Address 0xE853c56864A2ebe4576a807D26Fdc4A0adA51919 (the "51919 Wallet"), Wallet Address 0x267be1C1D684F78cb4F6a176C4911b741E4Ffdc0 (the "Ffdc0 Wallet"), Wallet Address 0xFa52274DD61E1643d2205169732f29114BC240b3 (the "240b3 Wallet"), Wallet Address 0x53d284357ec70cE289D6D64134DfAc8E511c8a3D (the "c8a3D Wallet"), Wallet Address 0x89e51fA8CA5D66cd220bAed62ED01e8951aa7c40 (the "a7c40 Wallet"), Wallet Address 0xc6bed363b30DF7F35b601a5547fE56cd31Ec63DA (the "c63DA Wallet"), Wallet Address 0x29728D0efd284D85187362fAA2d4d76C2CfC2612 (the "C2612 Wallet"), Wallet Address 0xAe2D4617c862309A3d75A0fFB358c7a5009c673F (the "c673F Wallet"), Wallet Address 0x43984D578803891dfa9706bDEee6078D80cFC79E (the "FC79E Wallet"), Wallet Address 0x66c57bF505A85A74609D2C83E94Aabb26d691E1F (the "91E1F Wallet"), Wallet Address 0xDA9dfA130Df4dE4673b89022EE50ff26f6EA73Cf (the "A73Cf Wallet"), Wallet Address 0xA83B11093c858c86321FBc4c20FE82cdbd58E09E (the "8E09E Wallet"), and Wallet Address terra1nm0rrq86ucezaf8uj35pq9fpwr5r82clp5z7r5 (the "5z7r5 Wallet"), or any other Kraken affiliated Ethereum and Terra wallet addresses that received UST, LUNA, "Wrapped UST (Shuttle)," or "Wormhole UST" from wallet addresses on the Terra or Ethereum blockchain.

17.    "Including" means including but not limited to.

18.     "LUNA" means the native crypto token, Luna, developed by TFL native to the Terra Network having the symbol LUNA, now known as the "LUNA Classic" token, having the symbol LUNC.

19.     "Person" means any natural person or entity, present or former, including any business or governmental entity, domestic or foreign.  For an entity, this includes its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, investors, any partnership or joint venture to which it may be a party, and each of its employees, agents, officers, directors, representatives, members, consultants, accountants, or anyone else acting on its behalf, including both individuals currently acting in such capacity and those who have done so in the past.

20.     "Platform" means the application, infrastructure, interface, and supporting services that are directly or indirectly owned, controlled, or operated by Kraken for the purposes of allowing Persons to deposit, custody, trade, withdraw, or otherwise engage in cryptocurrency transactions.

21.     "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, reflecting, referring to, regarding, relating to, reporting on, reviewing, setting forth, supporting, suggesting, summarizing, stating, showing, touching upon, a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

22.     "SEC" means the United States Securities and Exchange Commission.

23.     "Target     Wallets"     means,     collectively,     Wallet     Address 0x447218712fb6472ea43e1d7d280a3aa4c43f754e (the "f754e Wallet"), and Wallet Address

0x41339d9825963515e5705df8d3b0ea98105ebb1c (the "ebb1c Wallet") (individually, each a "Target Wallet").

24.     "Terra Network" refers to the ecosystem of protocols, smart contracts, tokens, coins, validators, or other applications developed on or integrated with the layer-1 blockchain protocol created by Terra.

25.     "Terra-Native Tokens" means, without limitation, UST, LUNA, or any other coin or token that is recorded, transacted, or used to perform operations on the Terra Network.

26.     "TFL" means Terraform Labs Pte Ltd., as well as its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, representatives, advisors, and any other person acting on its behalf, and its subsidiaries (and any predecessors thereof).

27.     "Third Party Tokens" means, without limitation, any other coin or token— wherever or however existing—that is recorded, transacted, or used to perform operations on a cryptographically-secured blockchain.

28.     "UST" means Terra USD, the algorithmic stablecoin developed by TFL and pegged to the United States Dollar ($), now known as "UST Classic," having the symbol USTC.

29.     "You", "your", "yours" or "Kraken" refers to Payward, Inc. d/b/a "Kraken" and all its subsidiaries, agents, employees, directors, members, affiliates, as well as all Persons acting or purporting to act on its behalf.

30.     "Wallet" means an application or mechanism for signing or participating in transactions on a blockchain network, including sending, storing, or receiving cryptocurrency or tokens, controlling other wallet functions, interacting with or controlling the functionalities of a smart contract or protocol, or voting on blockchain-based processes.

31.     "Wallet Address" means the unique, public-facing representation of a Wallet's public key, or some similar representation used to identify the Wallet's transactions made in connection with a blockchain or cryptocurrency transaction.

32.     "Wrapped UST (Shuttle)" and "Wormhole UST" mean the ERC-20 tokens that are compatible with and trade on the Ethereum blockchain.

## INSTRUCTIONS

1.     These Requests seek production of Documents, Communications, or other material in Your possession, custody, or control. If any of Your Documents, Communications, or other material are presently in the possession of a U.S. government agency, including the CFTC, the DOJ, or the SEC, for each set of materials identify the agency and the contact person.

2.     These Requests seek production of nonprivileged Documents, Communications, or other material.

3.     Pursuant to Rule 34 of the Federal Rules of Civil Procedure, You should label all Documents, Communications, or other material to correspond to the request to which the material is responsive. Alternatively, in response to each request set forth below, You should provide the Bates numbers of the Documents, Communications, or other material that are responsive to the specific request.

4.     For each Request, either state that You will produce the requested material or state with specificity the grounds and reasons for objecting to the Request.

5.     If You object to all or part of a Request, state whether You are withholding any responsive material based on that objection.

6.     If You object to part of a Request, specify the part and state that You will produce Documents responsive to the rest.

6

7.      If You withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable assessment of the claim, in a privilege log that complies with Federal Rule of Civil Procedure 45(e)(2). For each Document or Communication You withhold as privileged, identify the Document or Communication, state the specific basis for the claim of privilege, and provide the following information: (1) the date appearing on the Document or Communication; (2) a description of the general nature of the Document or Communication (*e.g.*, whether it is a letter, memorandum, e-mail, etc.); (3) the author of the Document or Communication; and (4) the identity of each person to whom the Document or Communication was addressed and the identity of each person to whom a copy was sent.

8.      Produce Documents and Communications as they are kept in the usual course of business. For each Document and Communication, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

9.      Produce each Document and Communication in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

10.      Produce all versions of each Document and Communication that are not identical to the original Document and Communication (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

11.      If any document was, but is no longer, in the possession of Kraken, state whether the document: (i) is missing or lost, (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others; or (iv) is otherwise disposed of, and in each instance explain the circumstances of such disposition, and state the approximate date thereof.

12.      Each Request shall be read and construed independently, and no other Request shall limit the scope of any other Request.  Documents responsive to multiple Requests, however, need only be produced once.

13.      As a third party receiving a subpoena in this Action, You are entitled to the protections of the Protective Order entered in this Action, which is attached as Exhibit 1. If any of the documents or things produced in response to this subpoena is considered "Confidential - Subject to Protective Order" or "Restricted – Attorneys' Eyes Only" as those terms are defined in the Protective Order governing the disclosure of confidential information in this case, designate such documents or things in accordance with the Protective Order. Such documents or things shall be treated according to the terms and provisions of the Protective Order.

## RELEVANT TIME PERIOD

Unless otherwise specified, these requests cover the time period from and including January 1, 2018 to and including the present.

## REQUESTS FOR PRODUCTION

1.      All Communications and Documents regarding a Target Wallet, including records identifying the Person(s) responsible for trades to or from the Target Wallet.

2.      All Communications between You and any Person associated with a Target Wallet or Related Addresses.

3.      Documents sufficient to show the trading history for all Kraken affiliated accounts and all Kraken user accounts where one or more of the Target Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token,  "Wrapped UST (Shuttle)" and "Wormhole UST," and/or Third Party Token between May 1, 2022 and May 30, 2022 (the "Target Transactions"). Such records include the following information for each transaction:

a. The exact date and timestamp, to the second, at which a transaction was made;

b. Any and all Wallet Addresses relating to the transaction, irrespective of whether the Wallet Address represents an initiator, intermediary, signatory, or ultimate beneficiary of the transaction, and irrespective of whether the underlying tokens were converted or exchanged for other tokens of the same or different type (the "Related Addresses");

c. The type, amount, and price of each token involved in the transaction;

d. Any Internet protocol ("IP") address(es) recorded in connection with each transaction;

e. Any information indicating the geographic location of the Person(s) involved in each transaction;

f. Records of all Device Fingerprint Data relating to any account or Person associated with any Target Transaction;

g. Any internal records or logs relating to the processing or facilitation of a transaction between or involving any Target Wallet and any Related Address; and

h. Any related transaction hashes recorded on a blockchain.

4.  Documents sufficient to show the trading history for all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, "Wrapped UST (Shuttle)" and "Wormhole UST," and/or Third Party Token between May 1, 2022 and May 30, 2022 (the "Relevant Transactions"). Such records include the following information for each transaction:

a. The exact date and timestamp, to the second, at which a transaction was made;

b.  Any and all Wallet Addresses relating to the transaction, irrespective of whether the Wallet Address represents an initiator, intermediary, signatory, or ultimate beneficiary of the transaction, and irrespective of whether the underlying tokens were converted or exchanged for other tokens of the same or different type (the "Relevant Related Addresses");

c.  The type, amount, and price of each token involved in the transaction;

d.  Any IP address(es) recorded in connection with each transaction;

e.  Any information indicating the geographic location of the Person(s) involved in each transaction;

f.  Records of all Device Fingerprint Data relating to any account or Person associated with any Relevant Transaction;

g.  Any internal records or logs relating to the processing or facilitation of a transaction between or involving any Hot Wallet and any Relevant Related Address; and

h.  Any related transaction hashes recorded on a blockchain.

5.  Documents sufficient to show the following information for all Persons who directly or indirectly controlled the account(s) associated with any of the Target Wallets or Related Addresses, including that Person(s)':

a.  Kraken User ID or Account Number;

b.  Diligence Information;

c.  Other Wallet Address(es) used in connection with the Platform;

d.  Other Kraken accounts that share that Person(s)' Device Fingerprint Data or Diligence Information;

e.  Information identifying each time that Person(s) logged in to utilize the Platform between April 1, 2022 and May 30, 2022, as well as the last-recorded date and time that Person(s) logged in to utilize the Platform;

f.  Name, employer, owner, and place of residence or domicile; and

g.  IP Address(es).

6.  Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions.

7.  All Documents regarding any of the Target Wallets that You have disclosed or produced to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction.

8.  All Documents regarding trading orders or transactions requests that were placed in connection with any Target Wallet or Kraken user account associated with any Target Transaction.

9.  All Documents regarding any internal trades, "Over the Counter" transactions, balance transfers or exchanges of Terra Native Tokens, Third Party Tokens, fiat currencies, or other instruments evidencing indebtedness or the right to receive assets for all accounts related to any Target Wallet or Related Addresses, including transactions between accounts controlled or related to the same Person(s) or Kraken.

10.  All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses.

11

# EXHIBIT 1

EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

        v.

TERRAFORM LABS PTE LTD. and
DO HYEONG KWON,

    Defendants.

---

1:23-CV-1346 (JSR)

<u>**PROTECTIVE ORDER**</u>

JED S. RAKOFF, U.S.D.J.

    The parties having agreed to the following terms of
confidentiality, and the Court having found that good cause exists
for issuance of an appropriately tailored confidentiality order
governing the pre-trial phase of this action, it is therefore hereby

    ORDERED that any person subject to this Order -- including
without limitation the parties to this action, their representatives,
agents, experts and consultants, all third parties providing
discovery in this action, and all other interested persons with
actual or constructive notice of this Order-- shall adhere to the
following terms, upon pain of contempt:

    1.    Any person subject to this Order who receives from any
other person any "Discovery Material" (i.e., information of any kind
provided in the course of discovery in this action) that is
designated as "Confidential" pursuant to the terms of this Order
shall not disclose such Confidential Discovery Material to anyone
else except as expressly permitted hereunder.

EXHIBIT E

2.    The person producing any given Discovery Material may designate as Confidential only such portion of such material as consists of:

(a)        previously nondisclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports and sale margins);

(b)        previously nondisclosed material relating to ownership or control of any non-public company;

(c)        previously nondisclosed business plans, product development information, or marketing plans;

(d)        any information of a personal or intimate nature regarding any individual, including any such individual's status as a whistleblower; or

(e)        any other category of information hereinafter given confidential status by the Court.

3.    With respect to the Confidential portion of any Discovery Material other than deposition transcripts and exhibits, the producing person or that person's counsel may designate such portion as "Confidential" by stamping or otherwise clearly marking as "Confidential" the protected portion in a manner that will not interfere with legibility or audibility, and by also producing for future public use another copy of said Discovery Material with the confidential information redacted. With respect to deposition

2

EXHIBIT E

transcripts and exhibits, a producing person or that person's counsel may indicate on the record that a question calls for Confidential information, in which case the transcript of the designated testimony shall be bound in a separate volume and marked "Confidential Information Governed by Protective Order" by the reporter.

4.  If at any time prior to the trial of this action, a producing person realizes that some portion[s] of Discovery Material that that person previously produced without limitation should be designated as Confidential, he may so designate by so apprising all parties in writing, and such designated portion[s] of the Discovery Material will thereafter be treated as Confidential under the terms of this Order.

5.  Subject to the provisions of paragraphs 16 and 17 of this Order, no person subject to this Order other than the producing person shall disclose any of the Discovery Material designated by the producing person as Confidential to any other person whomsoever, except to:

(a)  the parties to this action;

(b)  counsel retained specifically for this action, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

(c)  as to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy;

3

(d)   any witness who counsel for a party in good faith believes may be called to testify at trial or deposition in this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(e)   any person retained by a party to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(f)   stenographers engaged to transcribe depositions conducted in this action; and

(g)   the Court and its support personnel.

6.     Prior to any disclosure of any Confidential Discovery Material to any person referred to in subparagraphs 5(d) or 5(e) above, such person shall be provided by counsel with a copy of this Protective Order and shall sign a Non-Disclosure Agreement in the form annexed as an Exhibit hereto stating that that person has read this Order and agrees to be bound by its terms. Said counsel shall retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to opposing counsel either prior to such person being permitted to testify (at deposition or trial) or at the conclusion of the case, whichever comes first.

7.   All Confidential Discovery Material filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose such Confidential Discovery Material, shall be filed

4

EXHIBIT E

under seal with the Clerk of the Court and kept under seal until further order of the Court. The parties will use their best efforts to minimize such sealing. In any event, any party filing a motion or any other papers with the Court under seal shall also publicly file a redacted copy of the same, via the Court's Electronic Case Filing system, that redacts only the Confidential Discovery Material itself, and not text that in no material way reveals the Confidential Discovery Material. Pursuant to Rule 14 of the Individual Rules of Practice of the Honorable Jed S. Rakoff, any documents required to be filed under seal pursuant to this paragraph may be filed under seal without obtaining prior approval of the Court.

8.     Any party who either objects to any designation of confidentiality, or who, by contrast, requests still further limits on disclosure (such as "attorneys' eyes only" in extraordinary circumstances), may at any time prior to the trial of this action serve upon counsel for the designating person a written notice stating with particularity the grounds of the objection or request. If agreement cannot be reached promptly, counsel for all affected persons will convene a joint telephone call with the Court to obtain a ruling.

9.     All persons are hereby placed on notice that the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced in evidence at trial, even if such

**EXHIBIT E**

material has previously been sealed or designated as Confidential. The Court also retains unfettered discretion whether or not to afford confidential treatment to any Confidential Document or information contained in any Confidential Document submitted to the Court in connection with any motion, application, or proceeding that may result in an order and/or decision by the Court.

10.    Each person who has access to Discovery Material that has been designated as Confidential shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

11.    If, in connection with this litigation, a party inadvertently discloses information subject to a claim of attorney-client privilege or attorney work product protection ("Inadvertently Disclosed Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Inadvertently Disclosed Information and its subject matter.

12.    If a disclosing party makes a claim of inadvertent disclosure, the receiving party shall not thereafter review the Inadvertently Disclosed Information for any purpose, except by order of the Court. The receiving party shall, within five business days, return or destroy all copies of the Inadvertently Disclosed Information, and provide a certification of counsel that all such information has been returned or destroyed.

13.    Within five business days of the notification that such

EXHIBIT E

Inadvertently Disclosed Information has been returned or destroyed, the disclosing party shall produce a privilege log with respect to the Inadvertently Disclosed Information.

14.    As with any information redacted or withheld, the receiving party may move the Court for an Order compelling production of the Inadvertently Disclosed Information. The motion shall be filed under seal, and shall not assert as a ground for entering such an Order the fact or circumstances of the inadvertent production.

15.    The disclosing party retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Nothing in this Order shall limit the right of any party to request an in camera review of the Inadvertently Disclosed Information.

16.    This Protective Order shall survive the termination of the litigation. Within 30 days of the final disposition of this action, all Discovery Material designated as "Confidential," and all copies thereof, shall be promptly returned to the producing person, or, upon permission of the producing person, destroyed, except to the extent that, with regard to any documents in the possession of Plaintiff Securities and Exchange Commission ("Commission"), the Commission or its staff determines that it needs to retain such documents to fulfill its record-keeping obligations, its obligations under the Freedom of Information Act, 5 U.S.C. § 552, et seq., and the applicable rules and regulations promulgated thereunder, or to carry

EXHIBIT E

out any permitted uses under 17 C.F.R. 240.24c-1(b).

17.    Nothing in this Protective Order shall be construed to have any effect on the obligations of the Commission under the Freedom of Information Act, 5 U.S.C. § 552, et seq., or to limit or restrict the Commission from using or disclosing any materials to the extent otherwise required by law or permitted pursuant to 17 C.F.R. § 240.24c-1(b). Provided, however, that the Commission shall notify the party that produced the Confidential Discovery Material in the event it discloses such material as permitted pursuant to 17 C.F.R. § 240.24c-1(b).  In the event the Commission determines that providing notice to a party regarding the sharing of Confidential Discovery Material would compromise law enforcement interests, the Commission may apply to the Court for an order relieving it of its notification obligation.

18.    This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

**SO STIPULATED AND AGREED.**

/s/ Devon Staren
**Counsel for the SEC**
Dated: May 15, 2023

/s/ Douglas W. Henkin
**Counsel for Defendants**
Dated: May 15, 2023

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:     New York, New York
           5/15/23

9

EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

      v.

TERRAFORM LABS PTE LTD. and
DO HYEONG KWON,

Defendants.

##-CV-#### (JSR)

**NON-DISCLOSURE AGREEMENT**

    I, _____, acknowledge that I have read and understand the Protective Order in this action governing the non-disclosure of those portions of Discovery Material that have been designated as Confidential. I agree that I will not disclose such Confidential Discovery Material to anyone other than for purposes of this litigation and that at the conclusion of the litigation I will return all discovery information to the party or attorney from whom I received it. By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of Court.

    Dated: _____     _____

EXHIBIT E

# EXHIBIT F

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Securities and Exchange Commission

                                    Plaintiff

                                                              Civil Action No.: 1:23-cv-01346-JSR

                                            *vs.*

Terraform Labs, PTE Ltd., et al.

                                    Defendant(s)

### AFFIDAVIT OF SERVICE

I, Michael Lynn Henry, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Subpoena Duces Tecum with Schedule A and Exhibit 1: Protective Order in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 06/28/2023 at 11:30 AM, I served Payward, Inc. d/b/a "Kraken" c/o California Corporate Agents, Inc., Registered Agent with the Subpoena Duces Tecum with Schedule A and Exhibit 1: Protective Order at 2108 N Street, Suite C, Sacramento, California 95816 by serving Kristie Briggs, Agent, authorized to accept service on behalf of California Corporate Agents, Inc..

Kristie Briggs is described herein as:

Gender: Female   Race/Skin: White   Age: 30   Weight: N/A   Height: 5'5"   Hair: Blonde   Glasses: No

I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

_7/11/23_
Executed On

_Michael Lynn Henry_
Michael Lynn Henry

Client Ref Number:15808004-000002
Job #: 1620206

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

EXHIBIT F

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Southern District of New York

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) |
| _Plaintiff_ | ) |
| v. | ) |
| TERRAFORM LABS, PTE LTD, AND DO HYEONG KWON | ) |
| _Defendant_ | ) |

Civil Action No.  No. 1:23-cv-01346-JSR

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Payward, Inc., d/b/a "Kraken"
c/o California Corporate Agents, Inc.,
2108 N ST, Ste C, Sacramento, CA 95816

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A

| Place:  Mark Califano, Dentons US LLP<br>1999 Harrison Street, Suite 1300<br>Oakland, CA 94612 | Date and Time:<br><br>07/28/2023 at 10:00 am EST |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  06/28/2023

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Mark Califano |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_    Defendants,
Terraform Labs, PTE LTD, and Do Hyeong Kwon                           , who issues or requests this subpoena, are:

Mark G. Califano, Dentons US LLP, mark.califano@dentons.com

### Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

EXHIBIT F

# EXHIBIT G

**Archived:** Wednesday, September 27, 2023 7:51:32 PM
**From:** Lafferman, Matthew A.
**Sent:** Friday, July 28, 2023 4:46:02 PM
**To:** daniel.clarkson@kraken.com
**Cc:** Califano, Mark G.
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

Daniel,

We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?

Thanks,

Matt

Matthew A. Lafferman
Partner

⊙ +1 202 496 7303
Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Friday, July 28, 2023 12:47 AM
**To:** Califano, Mark G. <mark.califano@dentons.com>
**Cc:** Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>
**Subject:** Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Mr. Califano:

We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of *SEC v. Terraform Labs, Pte. Ltd. et al.* Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.

Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.

Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and any other user

accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.

Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.

Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.

Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.

Best regards,

Daniel Clarkson
Senior Counsel
Payward, Inc. d/b/a Kraken
daniel.clarkson@kraken.com

# EXHIBIT H

**Archived:** Wednesday, September 27, 2023 7:26:17 PM
**From:** Daniel Clarkson
**Mail received time:** Wed, 9 Aug 2023 01:01:20
**Sent:** Tuesday, August 08, 2023 9:01:20 PM
**To:** Lafferman, Matthew A.
**Cc:** Califano, Mark G.
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

**[WARNING: EXTERNAL SENDER]**

I'm available on Thursday after 1pm MT or Friday after 11am MT.

On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss. Let us know when you are available later this week.
>
> Thanks,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
> ⊙ +1 202 496 7303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, August 08, 2023 12:09 PM
**To:** Califano, Mark G. <mark.califano@dentons.com>; Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>

**EXHIBIT H**

**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

Matt and Mark:

Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.

First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or "Wormhole UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any responsive records to those portions of the requests.

Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of the three Kraken accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up call if that would be helpful.

As for Request No. 4, I will review your proposal and get back to you.

Thanks,

Daniel Clarkson

On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relation to Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").

**EXHIBIT H**

First, we will be withdrawing Request No. 6 of the Subpoena.

Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should narrow the scope significantly.

Please let us know when you can meet and confer this week to further discuss the above and next steps.

Regards,

Matt

Matthew A. Lafferman
Partner

Ⓨ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Monday, July 31, 2023 3:45 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

---

[WARNING: EXTERNAL SENDER]

**EXHIBIT H**

I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works for you.


Thanks,

Dan


On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
>
> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.
>
>
> Thanks,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
>
> ⊗ +1 202 496 7303   |   ?US Internal 47303
>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC

---

**From:** Lafferman, Matthew A.
**Sent:** Friday, July 28, 2023 4:46 PM
**To:** daniel.clarkson@kraken.com
**Cc:** Califano, Mark G. <mark.califano@dentons.com>

EXHIBIT H

**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

Daniel,

We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?

Thanks,

Matt

Matthew A. Lafferman
Partner

ⓐ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Friday, July 28, 2023 12:47 AM
**To:** Califano, Mark G. <mark.califano@dentons.com>
**Cc:** Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>
**Subject:** Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Mr. Califano:

EXHIBIT H

We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of *SEC v. Terraform Labs, Pte. Ltd. et al*. Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.

Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.

Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.

Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.

Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.

Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.

Best regards,

Daniel Clarkson

Senior Counsel

Payward, Inc. d/b/a Kraken

daniel.clarkson@kraken.com

**EXHIBIT H**

# EXHIBIT I

**Archived:** Wednesday, September 27, 2023 7:37:16 PM
**From:** Daniel Clarkson
**Mail received time:** Tue, 15 Aug 2023 00:56:52
**Sent:** Monday, August 14, 2023 8:56:52 PM
**To:** Lafferman, Matthew A.
**Cc:** Califano, Mark G.  Michael O'Connor  Marco Santori
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

[WARNING: EXTERNAL SENDER]

Matt,

We have already sent notifications to the three affected account holders regarding your subpoena and informed them of our intent to produce account records if they do not object by August 23. As for Request 4, we are still reviewing internally, and I will let you know our position later this week.

Best regards,
Daniel Clarkson

On Mon, Aug 14, 2023 at 5:22 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> We wanted to follow-up on our call last week. Can you let us know your client's position as to production of the materials that we have discussed during our meet and confers as soon as you can?
>
> Thanks,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
> ⊙ +1 202 496 7303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC

**EXHIBIT I**

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Thursday, August 10, 2023 3:28 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd


**[WARNING: EXTERNAL SENDER]**

Matt and Mark,


I'm held up on another call.  Don't think I'll be much longer, but will probably be a little beyond our call start. I can email you when I'm off.


On Wed, Aug 9, 2023 at 5:28 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

No problem. Please see attached.

Thanks,

Matt

Matthew A. Lafferman
Partner



⊚ +1 202 496 7303



Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

EXHIBIT I

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Wednesday, August 09, 2023 7:27 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt,

Can you please also send me a fully digital version of the subpoena (i.e., not a scanned copy). It makes it much easier to deal with the digital asset addresses so they can be copied and pasted.

Thanks,

Dan

On Tue, Aug 8, 2023 at 8:49 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> We circulated an invite for 1:30 pm MT. Let us know if that time do not work.
>
> Thanks,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
> ⊚ +1 202 496 7303

EXHIBIT I

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, August 08, 2023 9:01 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd


**[WARNING: EXTERNAL SENDER]**

---

I'm available on Thursday after 1pm MT or Friday after 11am MT.


On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss. Let us know when you are available later this week.
>
> Thanks,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
>
> ⊙ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932

**EXHIBIT I**

Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, August 08, 2023 12:09 PM
**To:** Califano, Mark G. <mark.califano@dentons.com>; Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd


**[WARNING: EXTERNAL SENDER]**


Matt and Mark:


Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.


First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or "Wormhole UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any responsive records to those portions of the requests.


Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of the three Kraken accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up call if that would be helpful.


As for Request No. 4, I will review your proposal and get back to you.


Thanks,

EXHIBIT I

Daniel Clarkson

On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

Daniel,

Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relation to Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").

First, we will be withdrawing Request No. 6 of the Subpoena.

Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should narrow the scope significantly.

Please let us know when you can meet and confer this week to further discuss the above and next steps.

Regards,

Matt

Matthew A. Lafferman
Partner

 +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

EXHIBIT I

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Monday, July 31, 2023 3:45 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works for you.

Thanks,

Dan

On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.
>
> Thanks,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
> ⊗ +1 202 496 7303   |   ?US Internal 47303

EXHIBIT I

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Lafferman, Matthew A.
**Sent:** Friday, July 28, 2023 4:46 PM
**To:** daniel.clarkson@kraken.com
**Cc:** Califano, Mark G. <mark.califano@dentons.com>
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

Daniel,

We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?

Thanks,

Matt

Matthew A. Lafferman
Partner

(Q) +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

EXHIBIT I

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Friday, July 28, 2023 12:47 AM
**To:** Califano, Mark G. <mark.califano@dentons.com>
**Cc:** Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>
**Subject:** Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

Mr. Califano:

We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of *SEC v. Terraform Labs, Pte. Ltd. et al.* Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.

Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.

Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.

Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.

EXHIBIT I

Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.

Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.

Best regards,

Daniel Clarkson

Senior Counsel

Payward, Inc. d/b/a Kraken

daniel.clarkson@kraken.com

EXHIBIT I

# EXHIBIT J

**Archived:** Wednesday, September 27, 2023 7:43:22 PM
**From:** Daniel Clarkson
**Mail received time:** Thu, 31 Aug 2023 04:25:20
**Sent:** Thursday, August 31, 2023 12:25:20 AM
**To:** Lafferman, Matthew A.
**Cc:** Michael OConnor   Califano, Mark G.   Marco Santori
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

[WARNING: EXTERNAL SENDER]

Matt and Mark:

Having discussed your subpoena further internally, Kraken is willing to produce the following:

1. The account records for the three accounts associated with the "Target Wallets" identified in the subpoena. As previously discussed, our standard production package will include profile information, communications, IP addresses, and trading history, and we view it as sufficient to respond to each of the requests relating to the Target Wallets (i.e., all requests except 4 and 6, which was withdrawn).
2. For Request 4, a spreadsheet of completed trade data on Kraken's platform in the UST/USD and LUNA/USD pairings for the three-day period starting on May 6, 2022, which would capture the UST de-peg. The data would not include client identifying information. We do not view the subpoena as seeking order data, and even if it did, producing such data would be much more voluminous, overbroad, and unduly burdensome. In addition, we view the request for trading data in Bitcoin as overbroad and unduly burdensome, particularly given the volume of trades and that Kraken offers numerous different trading pairs involving Bitcoin.

Presuming we can agree that this production satisfies any obligations under the subpoena, I expect we could produce such records by next week. All documents produced would be Confidential under the Protective Order.

Best regards,
Daniel Clarkson

On Sun, Aug 27, 2023 at 10:38 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
>
> We understand that you are back at the office this week. Please let us know when you can provide an update/schedule a call to discuss an update.
>
>
> Thanks,

EXHIBIT J

Matt

**Matthew A. Lafferman**
Partner

Ⓧ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Michael OConnor <michaelo@kraken.com>
**Sent:** Thursday, August 17, 2023 8:23 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>; Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd


[WARNING: EXTERNAL SENDER]

Mr. Lafferman -

Mr. Clarkson is out until August 25th. I understand that he attempted to
connect with internal stakeholders on this matter before taking leave,
but was unable to complete his inquiries. I expect he will get back to
you the week following next.

Best regards,

Michael O'Connor
Associate General Counsel
Payward, Inc. d/b/a Kraken


On 8/17/23 8:15 PM, Lafferman, Matthew A. wrote:
> Daniel,
>
> Please let us know if you have any updates on Request No. 4 as discussed below.
>
> Thanks,
>

**EXHIBIT J**

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com>

> Sent: Monday, August 14, 2023 8:57 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>

> Cc: Califano, Mark G. <mark.califano@dentons.com>; Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> Matt,

>

> We have already sent notifications to the three affected account holders regarding your subpoena and informed them of our intent to produce account records if they do not object by August 23. As for Request 4, we are still reviewing internally, and I will let you know our position later this week.

>

> Best regards,

> Daniel Clarkson

>

>

> On Mon, Aug 14, 2023 at 5:22 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> Daniel,

>

> We wanted to follow-up on our call last week. Can you let us know your client's position as to production of the materials that we have discussed during our meet and confers as soon as you can?

>

> Thanks,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

EXHIBIT J

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Thursday, August 10, 2023 3:28 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark,
>
> I'm held up on another call. Don't think I'll be much longer, but will probably be a little beyond our call start. I can email you when I'm off.
>
> On Wed, Aug 9, 2023 at 5:28 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> No problem. Please see attached.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Wednesday, August 09, 2023 7:27 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt,
>
> Can you please also send me a fully digital version of the subpoena (i.e., not a scanned copy). It makes it much easier to deal with the digital asset addresses so they can be copied and pasted.
>

**EXHIBIT J**

> Thanks,

> Dan

>

> On Tue, Aug 8, 2023 at 8:49 'a0PM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> We circulated an invite for 1:30 pm MT. Let us know if that time do not work.

>

> Thanks,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>

> Sent: Tuesday, August 08, 2023 9:01 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> I'm available on Thursday after 1pm MT or Friday after 11am MT.

>

> On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> Daniel,

>

> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss. Let us know when you are available later this week.

>

> Thanks,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

EXHIBIT J

> 
> 
> 
> 
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 12:09 PM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>; Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> 
> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark:
> 
> Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.
> 
> First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or "Wormhole UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any responsive records to those portions of the requests.
> 
> Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of the three Kraken accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up call if that would be helpful.
> 
> As for Request No. 4, I will review your proposal and get back to you.
> 
> Thanks,
> Daniel Clarkson
> 
> 
> On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
> 
> Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relation to Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").
> 
> First, we will be withdrawing Request No. 6 of the Subpoena.
> 
> Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should

EXHIBIT J

narrow the scope significantly.
>
> Please let us know when you can meet and confer this week to further discuss the above and next steps.
>
> Regards,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Monday, July 31, 2023 3:45 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works for you.
>
> Thanks,
> Dan
>
> On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303> | ?US Internal 47303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

EXHIBIT J

>

>

>

>

> From: Lafferman, Matthew A.

> Sent: Friday, July 28, 2023 4:46 PM

> To: daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Subject: RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> Daniel,

>

> We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?

>

> Thanks,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>

> Sent: Friday, July 28, 2023 12:47 AM

> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>>

> Subject: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> Mr. Califano:

>

> We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of SEC v. Terraform Labs, Pte. Ltd. et al. Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.

>

> Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how those accounts

EXHIBIT J

are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.

>

> Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.

>

> Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.

>

> Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.

>

> Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.

>

> Best regards,

>

> Daniel Clarkson

> Senior Counsel

> Payward, Inc. d/b/a Kraken

> daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

EXHIBIT J

# EXHIBIT K

**Archived:** Wednesday, September 27, 2023 7:49:04 PM
**From:** Daniel Clarkson
**Mail received time:** Tue, 5 Sep 2023 19:28:56
**Sent:** Tuesday, September 05, 2023 3:28:56 PM
**To:** Lafferman, Matthew A.
**Cc:** Michael OConnor  Califano, Mark G.  Marco Santori  Landow, Alyssa
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

**[WARNING: EXTERNAL SENDER]**

Matt,

We produced the account records earlier today. As for the trading data, I still expect that to be produced this week once our Market Surveillance team has finished assembling the data.

Best regards,
Daniel Clarkson

On Mon, Sep 4, 2023 at 6:58 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
>
> Please let us know when we can expect the production.
>
>
> Thanks,
>
>
> Matt
>
>
> Matthew A. Lafferman
> Partner
>
> ⊙ +1 202 496 7303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC

**EXHIBIT K**

**From:** Lafferman, Matthew A.
**Sent:** Thursday, August 31, 2023 12:18 PM
**To:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

Daniel,

We agree that any and all documents produced will be designed Confidential under the Protective Order.

We would like to proceed with the materials below and review to determine whether we need additional data. Given that its more than a month since the response date indicated on the subpoena (July 28, 2023), and we have expert reports due on September 7, we would request that you expedite the production to the extent possible

Best,

Matt

Matthew A. Lafferman
Partner

⊙ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Thursday, August 31, 2023 12:25 AM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

EXHIBIT K

[WARNING: EXTERNAL SENDER]

Matt and Mark:

Having discussed your subpoena further internally, Kraken is willing to produce the following:

1. The account records for the three accounts associated with the "Target Wallets" identified in the subpoena. As previously discussed, our standard production package will include profile information, communications, IP addresses, and trading history, and we view it as sufficient to respond to each of the requests relating to the Target Wallets (i.e., all requests except 4 and 6, which was withdrawn).
2. For Request 4, a spreadsheet of completed trade data on Kraken's platform in the UST/USD and LUNA/USD pairings for the three-day period starting on May 6, 2022, which would capture the UST de-peg. The data would not include client identifying information. We do not view the subpoena as seeking order data, and even if it did, producing such data would be much more voluminous, overbroad, and unduly burdensome. In addition, we view the request for trading data in Bitcoin as overbroad and unduly burdensome, particularly given the volume of trades and that Kraken offers numerous different trading pairs involving Bitcoin.

Presuming we can agree that this production satisfies any obligations under the subpoena, I expect we could produce such records by next week. All documents produced would be Confidential under the Protective Order.

Best regards,

Daniel Clarkson

On Sun, Aug 27, 2023 at 10:38 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

Daniel,

We understand that you are back at the office this week. Please let us know when you can provide an update/schedule a call to discuss an update.

Thanks,

**EXHIBIT K**

Matt

Matthew A. Lafferman
Partner

Ⓐ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Michael OConnor <michaelo@kraken.com>
**Sent:** Thursday, August 17, 2023 8:23 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>; Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

Mr. Lafferman -

Mr. Clarkson is out until August 25th. I understand that he attempted to
connect with internal stakeholders on this matter before taking leave,
but was unable to complete his inquiries. I expect he will get back to
you the week following next.

Best regards,

Michael O'Connor
Associate General Counsel
Payward, Inc. d/b/a Kraken

On 8/17/23 8:15 PM, Lafferman, Matthew A. wrote:

EXHIBIT K

> Daniel,
>
> Please let us know if you have any updates on Request No. 4 as discussed below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com>
> Sent: Monday, August 14, 2023 8:57 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com>; Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt,
>
> We have already sent notifications to the three affected account holders regarding your subpoena and informed them of our intent to produce account records if they do not object by August 23. As for Request 4, we are still reviewing internally, and I will let you know our position later this week.
>
> Best regards,
> Daniel Clarkson
>
>
> On Mon, Aug 14, 2023 at 5:22 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> We wanted to follow-up on our call last week. Can you let us know your client's position as to production of the materials that we have discussed during our meet and confers as soon as you can?
>
> Thanks,
>
> Matt
> Matthew A. Lafferman

EXHIBIT K

> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Thursday, August 10, 2023 3:28 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark,
>
> I'm held up on another call. Don't think I'll be much longer, but will probably be a little beyond our call start. I can email you when I'm off.
>
> On Wed, Aug 9, 2023 at 5:28 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> No problem. Please see attached.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Wednesday, August 09, 2023 7:27 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]

EXHIBIT K

> _____

> Matt,

>

> Can you please also send me a fully digital version of the subpoena (i.e., not a scanned copy). It makes it much easier to deal with the digital asset addresses so they can be copied and pasted.

>

> Thanks,

> Dan

>

> On Tue, Aug 8, 2023 at 8:49 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> We circulated an invite for 1:30 pm MT. Let us know if that time do not work.

>

> Thanks,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>

> Sent: Tuesday, August 08, 2023 9:01 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> I'm available on Thursday after 1pm MT or Friday after 11am MT.

>

> On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> Daniel,

>

> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss. Let us know when you are available later this week.

>

> Thanks,

>

> Matt

> Matthew A. Lafferman

**EXHIBIT K**

> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 12:09 PM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>; Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori
<marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark:
>
> Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.
>
> First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or "Wormhole
UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any responsive records to those
portions of the requests.
>
> Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially
connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of the three Kraken
accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any
transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted
any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to
correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your
subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up
call if that would be helpful.
>
> As for Request No. 4, I will review your proposal and get back to you.
>
> Thanks,
> Daniel Clarkson
>
>
> On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relating to

Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").

>

> First, we will be withdrawing Request No. 6 of the Subpoena.

>

> Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should narrow the scope significantly.

>

> Please let us know when you can meet and confer this week to further discuss the above and next steps.

>

> Regards,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>

> Sent: Monday, July 31, 2023 3:45 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works for you.

>

> Thanks,

> Dan

>

> On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> Daniel,

>

> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.

>

> Thanks,

>

> Matt

EXHIBIT K

> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303> | ?US Internal 47303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Lafferman, Matthew A.
> Sent: Friday, July 28, 2023 4:46 PM
> To: daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> Daniel,
>
> We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday
of next week?
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Friday, July 28, 2023 12:47 AM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori
<marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Mr. Califano:
>
> We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of SEC v.

Terraform Labs, Pte. Ltd. et al. Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.

>

> Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.

>

> Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.

>

> Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.

>

> Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.

>

> Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.

>

> Best regards,

>

> Daniel Clarkson

> Senior Counsel

> Payward, Inc. d/b/a Kraken

> daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

# EXHIBIT L

**Archived:** Wednesday, September 27, 2023 7:54:11 PM
**From:** Daniel Clarkson
**Mail received time:** Tue, 19 Sep 2023 18:07:01
**Sent:** Tuesday, September 19, 2023 2:07:01 PM
**To:** Lafferman, Matthew A.
**Cc:** Michael OConnor   Califano, Mark G.   Marco Santori   Landow, Alyssa
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

[WARNING: EXTERNAL SENDER]

Matt,

I can talk today after 2pm MT or tomorrow between 10am and 12pm MT.

On Mon, Sep 18, 2023 at 2:07 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> We will go back and look at this. In the meantime, we still want to meet and confer on other issues. Please let us know when you are available tomorrow or Wednesday to discuss.
>
>
> Regards,
>
>
> Matt
>
>
> Matthew A. Lafferman
> Partner
>
> ⊗ +1 202 496 7303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC
>
>
>
> ---
>
> **From:** Daniel Clarkson <daniel.clarkson@kraken.com>
> **Sent:** Monday, September 18, 2023 4:05 PM
> **To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
> **Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
> **Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**EXHIBIT L**

[WARNING: EXTERNAL SENDER]

Matt,

We have already produced records for the Kraken account involved in this transaction. It is the account with the Public Account ID:  AA38 N84G E265 ATOI. The transaction you are referring to is the deposit of 2,500,000 USDC reflected in the account ledger (produced at PAYWARD_000060) on May 8, 2022.

Best,

Daniel Clarkson

On Mon, Sep 18, 2023 at 12:44 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

Daniel,

We have had a chance to review the data, and it is missing some information that you agreed to produce—notably the information related to the deposit of USDC into the Targeted Wallet address 0x447218712fb6472ea43e1d7d280a3aa4c43f754e on May 8, 2022.

Please let us know when you would be available tomorrow or Wednesday to meet and confer. With us almost two months past the response date of the subpoena, we would appreciate a prompt response to this email.

Regards,

Matt

Matthew A. Lafferman
Partner

EXHIBIT L

@ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, September 05, 2023 3:29 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

---

Matt,

We produced the account records earlier today. As for the trading data, I still expect that to be produced this week once our Market Surveillance team has finished assembling the data.

Best regards,

Daniel Clarkson

On Mon, Sep 4, 2023 at 6:58 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> Please let us know when we can expect the production.
>
> Thanks,

**EXHIBIT L**

Matt

**Matthew A. Lafferman**
Partner

&#9410; +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Lafferman, Matthew A.
**Sent:** Thursday, August 31, 2023 12:18 PM
**To:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

Daniel,

We agree that any and all documents produced will be designed Confidential under the Protective Order.

We would like to proceed with the materials below and review to determine whether we need additional data. Given that its more than a month since the response date indicated on the subpoena (July 28, 2023), and we have expert reports due on September 7, we would request that you expedite the production to the extent possible

Best,

Matt

Matthew A. Lafferman                                                                                    **EXHIBIT L**

Partner

&#9737; +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Thursday, August 31, 2023 12:25 AM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

<span style="color:red">**[WARNING: EXTERNAL SENDER]**</span>

---

Matt and Mark:

Having discussed your subpoena further internally, Kraken is willing to produce the following:

1. The account records for the three accounts associated with the "Target Wallets" identified in the subpoena. As previously discussed, our standard production package will include profile information, communications, IP addresses, and trading history, and we view it as sufficient to respond to each of the requests relating to the Target Wallets (i.e., all requests except 4 and 6, which was withdrawn).

2. For Request 4, a spreadsheet of completed trade data on Kraken's platform in the UST/USD and LUNA/USD pairings for the three-day period starting on May 6, 2022, which would capture the UST de-peg. The data would not include client identifying information. We do not view the subpoena as seeking order data, and even if it did, producing such data would be much more voluminous, overbroad, and unduly burdensome. In addition, we view the request for trading data in Bitcoin as overbroad and unduly burdensome, particularly given the volume of trades and that Kraken offers numerous different trading pairs involving Bitcoin.

<span style="color:blue">**EXHIBIT L**</span>

Presuming we can agree that this production satisfies any obligations under the subpoena, I expect we could produce such records by next week. All documents produced would be Confidential under the Protective Order.

Best regards,

Daniel Clarkson

On Sun, Aug 27, 2023 at 10:38 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

Daniel,

We understand that you are back at the office this week. Please let us know when you can provide an update/schedule a call to discuss an update.

Thanks,

Matt

Matthew A. Lafferman
Partner

+1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

EXHIBIT L

**From:** Michael OConnor <michaelo@kraken.com>
**Sent:** Thursday, August 17, 2023 8:23 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>; Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd


[WARNING: EXTERNAL SENDER]

Mr. Lafferman -

Mr. Clarkson is out until August 25th. I understand that he attempted to
connect with internal stakeholders on this matter before taking leave,
but was unable to complete his inquiries. I expect he will get back to
you the week following next.

Best regards,

Michael O'Connor
Associate General Counsel
Payward, Inc. d/b/a Kraken


On 8/17/23 8:15 PM, Lafferman, Matthew A. wrote:
> Daniel,
>
> Please let us know if you have any updates on Request No. 4 as discussed below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com>
> Sent: Monday, August 14, 2023 8:57 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com>; Michael O'Connor <michaelo@kraken.com>; Marco
Santori <marco@kraken.com>

EXHIBIT L

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
>
> _____
> Matt,
>
> We have already sent notifications to the three affected account holders regarding your subpoena and informed them of our intent to produce account records if they do not object by August 23. As for Request 4, we are still reviewing internally, and I will let you know our position later this week.
>
> Best regards,
> Daniel Clarkson
>
>
> On Mon, Aug 14, 2023 at 5:22 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> We wanted to follow-up on our call last week. Can you let us know your client's position as to production of the materials that we have discussed during our meet and confers as soon as you can?
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Thursday, August 10, 2023 3:28 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
>
> _____
> Matt and Mark,
>
> I'm held up on another call. Don't think I'll be much longer, but will probably be a little beyond our call start. I can email you when I'm off.
>

EXHIBIT L

> On Wed, Aug 9, 2023 at 5:28 'a0PM Lafferman, Matthew A.
> <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> No problem. Please see attached.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Wednesday, August 09, 2023 7:27 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt,
>
> Can you please also send me a fully digital version of the subpoena (i.e., not a scanned copy). It makes it much easier to deal with the digital asset addresses so they can be copied and pasted.
>
> Thanks,
> Dan
>
> On Tue, Aug 8, 2023 at 8:49 'a0PM Lafferman, Matthew A.
> <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> We circulated an invite for 1:30 pm MT. Let us know if that time do not work.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

**EXHIBIT L**

> \
> \
> \
> \
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 9:01 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> \
> [WARNING: EXTERNAL SENDER]
> _____
> I'm available on Thursday after 1pm MT or Friday after 11am MT.
> \
> On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A.
> <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
> \
> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss. Let us know when you are available later this week.
> \
> Thanks,
> \
> Matt
> Matthew A. Lafferman
> Partner
> \
> [D] +1 202 496 7303<tel:+12024967303>
> \
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
> \
> \
> \
> \
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 12:09 PM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>; Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> \
> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark:
> \
> Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.

**EXHIBIT L**

>
> First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or "Wormhole UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any responsive records to those portions of the requests.
>
> Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of the three Kraken accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up call if that would be helpful.
>
> As for Request No. 4, I will review your proposal and get back to you.
>
> Thanks,
> Daniel Clarkson
>
>
> On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relation to Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").
>
> First, we will be withdrawing Request No. 6 of the Subpoena.
>
> Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should narrow the scope significantly.
>
> Please let us know when you can meet and confer this week to further discuss the above and next steps.
>
> Regards,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>

**EXHIBIT L**

>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Monday, July 31, 2023 3:45 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works for you.
>
> Thanks,
> Dan
>
> On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A.
> <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303> | ?US Internal 47303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Lafferman, Matthew A.
> Sent: Friday, July 28, 2023 4:46 PM
> To: daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> Daniel,
>
> We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?
>
> Thanks,

EXHIBIT L

>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Friday, July 28, 2023 12:47 AM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori
<marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Mr. Califano:
>
> We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of SEC v. Terraform Labs, Pte. Ltd. et al. Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.
>
> Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.
>
> Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.
>

EXHIBIT L

> Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.
>
> Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.
>
> Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.
>
> Best regards,
>
> Daniel Clarkson
> Senior Counsel
> Payward, Inc. d/b/a Kraken
> daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

**EXHIBIT L**

# EXHIBIT M

**Archived:** Wednesday, September 27, 2023 8:10:27 PM
**From:** Lafferman, Matthew A.
**Sent:** Wednesday, September 20, 2023 1:55:25 PM
**To:** Daniel Clarkson
**Cc:** Michael OConnor  Califano, Mark G.  Marco Santori  Landow, Alyssa
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

Daniel,

Thanks for taking the time to speak with us today. Per our discussion today, we would request that Kraken reproduce trade data related to Request No. 4 from May 6 – May 9, 2022 to include (1) all Terra Native Tokens (not just UST/USD and LUNA/USD pairings) and (2) anonymized account IDs, which will allow us to analyze trading at the account level.

**Please let us know if you agree to this request by the end of the day on Thursday, September 21, 2023 (tomorrow).** As we discussed, if you object or we otherwise do not hear from you, in light of the fact that the discovery deadline coming up and this data is essential for building our defense, we intend to pursue a motion to compel.

Thanks,

Matt

Matthew A. Lafferman
Partner

⊕ +1 202 496 7303   |   ?US Internal 47303
Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, September 19, 2023 2:06 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

Matt,

I can talk today after 2pm MT or tomorrow between 10am and 12pm MT.

On Mon, Sep 18, 2023 at 2:07 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> We will go back and look at this. In the meantime, we still want to meet and confer on other issues. Please let us know
> when you are available tomorrow or Wednesday to discuss.
>
> Regards,

**EXHIBIT M**

Matt

**Matthew A. Lafferman**
Partner

&#9737; +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Monday, September 18, 2023 4:05 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santoro
<marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt,

We have already produced records for the Kraken account involved in this transaction. It is the account with the Public
Account ID:  AA38 N84G E265 ATOI. The transaction you are referring to is the deposit of 2,500,000 USDC reflected in the
account ledger (produced at PAYWARD_000060) on May 8, 2022.

Best,
Daniel Clarkson

On Mon, Sep 18, 2023 at 12:44 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

Daniel,

We have had a chance to review the data, and it is missing some information that you agreed to produce—notably the
information related to the deposit of USDC into the Targeted Wallet address
0x447218712fb6472ea43e1d7d280a3aa4c43f754e on May 8, 2022.

Please let us know when you would be available tomorrow or Wednesday to meet and confer. With us almost two
months past the response date of the subpoena, we would appreciate a prompt response to this email.

Regards,

Matt

**Matthew A. Lafferman**
Partner

&#9737;  +1 202 496 7303

**EXHIBIT M**

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, September 05, 2023 3:29 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt,

We produced the account records earlier today. As for the trading data, I still expect that to be produced this week once our Market Surveillance team has finished assembling the data.

Best regards,
Daniel Clarkson

On Mon, Sep 4, 2023 at 6:58 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> Please let us know when we can expect the production.
>
> Thanks,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
> ⊙ +1 202 496 7303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC

---

**From:** Lafferman, Matthew A.
**Sent:** Thursday, August 31, 2023 12:18 PM
**To:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

Daniel,

We agree that any and all documents produced will be designed Confidential under the Protective Order.

**EXHIBIT M**

We would like to proceed with the materials below and review to determine whether we need additional data. Given that its more than a month since the response date indicated on the subpoena (July 28, 2023), and we have expert reports due on September 7, we would request that you expedite the production to the extent possible

Best,

Matt

Matthew A. Lafferman
Partner

🔘 +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Thursday, August 31, 2023 12:25 AM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt and Mark:

Having discussed your subpoena further internally, Kraken is willing to produce the following:

1. The account records for the three accounts associated with the "Target Wallets" identified in the subpoena. As previously discussed, our standard production package will include profile information, communications, IP addresses, and trading history, and we view it as sufficient to respond to each of the requests relating to the Target Wallets (i.e., all requests except 4 and 6, which was withdrawn).
2. For Request 4, a spreadsheet of completed trade data on Kraken's platform in the UST/USD and LUNA/USD pairings for the three-day period starting on May 6, 2022, which would capture the UST de-peg. The data would not include client identifying information. We do not view the subpoena as seeking order data, and even if it did, producing such data would be much more voluminous, overbroad, and unduly burdensome. In addition, we view the request for trading data in Bitcoin as overbroad and unduly burdensome, particularly given the volume of trades and that Kraken offers numerous different trading pairs involving Bitcoin.

Presuming we can agree that this production satisfies any obligations under the subpoena, I expect we could produce such records by next week. All documents produced would be Confidential under the Protective Order.

Best regards,
Daniel Clarkson

On Sun, Aug 27, 2023 at 10:38 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wro…

Daniel,

We understand that you are back at the office this week. Please let us know when you can provide an update/schedule a call to discuss an update.

Thanks,

Matt

Matthew A. Lafferman
Partner

⊘ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Michael OConnor <michaelo@kraken.com>
**Sent:** Thursday, August 17, 2023 8:23 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>; Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

Mr. Lafferman -

Mr. Clarkson is out until August 25th. I understand that he attempted to connect with internal stakeholders on this matter before taking leave, but was unable to complete his inquiries. I expect he will get back to you the week following next.

Best regards,

Michael O'Connor
Associate General Counsel
Payward, Inc. d/b/a Kraken


On 8/17/23 8:15 PM, Lafferman, Matthew A. wrote:
> Daniel,
>
> Please let us know if you have any updates on Request No. 4 as discussed below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner

EXHIBIT M

> 
> [D] +1 202 496 7303<tel:+12024967303>
> 
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
> 
> 
> 
> 
> From: Daniel Clarkson <daniel.clarkson@kraken.com>
> Sent: Monday, August 14, 2023 8:57 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com>; Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> 
> [WARNING: EXTERNAL SENDER]
> _____
> Matt,
> 
> We have already sent notifications to the three affected account holders regarding your subpoena and informed them of our intent to produce account records if they do not object by August 23. As for Request 4, we are still reviewing internally, and I will let you know our position later this week.
> 
> Best regards,
> Daniel Clarkson
> 
> 
> On Mon, Aug 14, 2023 at 5:22 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
> 
> We wanted to follow-up on our call last week. Can you let us know your client's position as to production of the materials that we have discussed during our meet and confers as soon as you can?
> 
> Thanks,
> 
> Matt
> Matthew A. Lafferman
> Partner
> 
> [D] +1 202 496 7303<tel:+12024967303>
> 
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
> 
> 
> 
> 
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Thursday, August 10, 2023 3:28 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**EXHIBIT M**

> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark,
>
> I'm held up on another call. Don't think I'll be much longer, but will probably be a little beyond our call start. I can email you when I'm off.
>
> On Wed, Aug 9, 2023 at 5:28 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> No problem. Please see attached.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Wednesday, August 09, 2023 7:27 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt,
>
> Can you please also send me a fully digital version of the subpoena (i.e., not a scanned copy). It makes it much easier to deal with the digital asset addresses so they can be copied and pasted.
>
> Thanks,
> Dan
>
> On Tue, Aug 8, 2023 at 8:49 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> We circulated an invite for 1:30 pm MT. Let us know if that time do not work.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>

EXHIBIT M

> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 9:01 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> I'm available on Thursday after 1pm MT or Friday after 11am MT.
>
> On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss. Let us
know when you are available later this week.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 12:09 PM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>; Lafferman, Matthew
A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori
<marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark:
>
> Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.
>
> First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or
"Wormhole UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any
responsive records to those portions of the requests.

EXHIBIT M

>

> Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of the three Kraken accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up call if that would be helpful.

>

> As for Request No. 4, I will review your proposal and get back to you.

>

> Thanks,

> Daniel Clarkson

>

>

> On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> Daniel,

>

> Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relation to Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").

>

> First, we will be withdrawing Request No. 6 of the Subpoena.

>

> Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should narrow the scope significantly.

>

> Please let us know when you can meet and confer this week to further discuss the above and next steps.

>

> Regards,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>

> Sent: Monday, July 31, 2023 3:45 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works

**EXHIBIT M**

for you.
>
> Thanks,
> Dan
>
> On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303> | ?US Internal 47303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Lafferman, Matthew A.
> Sent: Friday, July 28, 2023 4:46 PM
> To: daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> Daniel,
>
> We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Friday, July 28, 2023 12:47 AM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

**EXHIBIT M**

> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori
<marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Mr. Califano:
>
> We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of SEC v. Terraform Labs, Pte. Ltd. et al. Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.
>
> Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.
>
> Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.
>
> Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.
>
> Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.
>
> Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.
>
> Best regards,

**EXHIBIT M**

> 
> Daniel Clarkson
> Senior Counsel
> Payward, Inc. d/b/a Kraken
> daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

# EXHIBIT N

**Archived:** Wednesday, September 27, 2023 8:17:01 PM
**From:** Lafferman, Matthew A.
**Sent:** Wednesday, September 20, 2023 7:14:52 PM
**To:** Daniel Clarkson
**Cc:** Michael OConnor   Califano, Mark G.   Marco Santori   Landow, Alyssa
**Bcc:** Henkin, Douglas W.
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

Daniel,

We would request that Kraken produces the trading data for May 9 (in the manner specified below). The May 2022 depeg occurred through this date and there was a significant amount of trading volume of Terra Native Tokens (as defined in the Subpoena) that occurred on this day—as such, this data is clearly relevant to our case. If you refuse to produce the trading data for this day, we will move to compel the data.

Although we have been working with you in good faith to narrow the production in the manner that is least burdensome to Kraken, we would remind you that Kraken's objections are waived because it served them after the deadline specified under Rule 45.
**Please let us know if you agree to this request by the end of the day on Thursday, September 21, 2023 (tomorrow).** As mentioned below, if you object or we otherwise do not hear from you, in light of the fact that the discovery deadline coming up and this data is essential for building our defense, we will seek a motion to compel this data.
Thanks,
Matt

Matthew A. Lafferman
Partner

+1 202 496 7303
Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Wednesday, September 20, 2023 2:55 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

---

Matt,

Please note that Kraken's prior production of data was for May 6 through May 8, not May 9. Kraken will agree to produce the same time range of data for the other three Terra-based pairs that it supports: (1) UST/Euro, LUNA/Euro, and UST/USDT. Those are the only other "Terra Native Token" trading pairs offered by Kraken. We will include the anonymized IDs. However, as discussed, Kraken maintains its objection to producing any account profile or other client-identifying information. I expect it will take at least until later next week before Kraken can produce any additional data.

EXHIBIT N

Best regards,
Daniel Clarkson

On Wed, Sep 20, 2023 at 11:55 'a0AM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

Daniel,

Thanks for taking the time to speak with us today. Per our discussion today, we would request that Kraken reproduce trade data related to Request No. 4 from May 6 – May 9, 2022 to include (1) all Terra Native Tokens (not just UST/USD and LUNA/USD pairings) and (2) anonymized account IDs, which will allow us to analyze trading at the account level.

**Please let us know if you agree to this request by the end of the day on Thursday, September 21, 2023 (tomorrow).** As we discussed, if you object or we otherwise do not hear from you, in light of the fact that the discovery deadline coming up and this data is essential for building our defense, we intend to pursue a motion to compel.

Thanks,

Matt

Matthew A. Lafferman
Partner

☺ +1 202 496 7303   |   ?US Internal 47303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, September 19, 2023 2:06 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt,

I can talk today after 2pm MT or tomorrow between 10am and 12pm MT.

On Mon, Sep 18, 2023 at 2:07 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

We will go back and look at this. In the meantime, we still want to meet and confer on other issues. Please let us know when you are available tomorrow or Wednesday to discuss.

Regards,

Matt

Matthew A. Lafferman

**EXHIBIT N**

Partner

⊙ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Monday, September 18, 2023 4:05 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt,

We have already produced records for the Kraken account involved in this transaction. It is the account with the Public Account ID:  AA38 N84G E265 ATOI. The transaction you are referring to is the deposit of 2,500,000 USDC reflected in the account ledger (produced at PAYWARD_000060) on May 8, 2022.

Best,
Daniel Clarkson

On Mon, Sep 18, 2023 at 12:44 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> We have had a chance to review the data, and it is missing some information that you agreed to produce—notably the information related to the deposit of USDC into the Targeted Wallet address 0x447218712fb6472ea43e1d7d280a3aa4c43f754e on May 8, 2022.
>
> Please let us know when you would be available tomorrow or Wednesday to meet and confer. With us almost two months past the response date of the subpoena, we would appreciate a prompt response to this email.
>
> Regards,
>
> Matt
>
> Matthew A. Lafferman
> Partner
>
> ⊙ +1 202 496 7303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC

**EXHIBIT N**

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, September 05, 2023 3:29 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt,

We produced the account records earlier today. As for the trading data, I still expect that to be produced this week once our Market Surveillance team has finished assembling the data.

Best regards,
Daniel Clarkson

On Mon, Sep 4, 2023 at 6:58 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Daniel,
>
> Please let us know when we can expect the production.
>
> Thanks,
>
> Matt
>
> **Matthew A. Lafferman**
> Partner
>
> ⊙ +1 202 496 7303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC

**From:** Lafferman, Matthew A.
**Sent:** Thursday, August 31, 2023 12:18 PM
**To:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
**Subject:** RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

Daniel,

We agree that any and all documents produced will be designed Confidential under the Protective Order.

We would like to proceed with the materials below and review to determine whether we need additional data. Given that its more than a month since the response date indicated on the subpoena (July 28, 2023), and we have expert reports due on September 7, we would request that you expedite the production to the extent possible

EXHIBIT N

Best,

Matt

Matthew A. Lafferman
Partner

⊗ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Thursday, August 31, 2023 12:25 AM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori
<marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**[WARNING: EXTERNAL SENDER]**

Matt and Mark:

Having discussed your subpoena further internally, Kraken is willing to produce the following:

1. The account records for the three accounts associated with the "Target Wallets" identified in the subpoena. As previously discussed, our standard production package will include profile information, communications, IP addresses, and trading history, and we view it as sufficient to respond to each of the requests relating to the Target Wallets (i.e., all requests except 4 and 6, which was withdrawn).
2. For Request 4, a spreadsheet of completed trade data on Kraken's platform in the UST/USD and LUNA/USD pairings for the three-day period starting on May 6, 2022, which would capture the UST de-peg. The data would not include client identifying information. We do not view the subpoena as seeking order data, and even if it did, producing such data would be much more voluminous, overbroad, and unduly burdensome. In addition, we view the request for trading data in Bitcoin as overbroad and unduly burdensome, particularly given the volume of trades and that Kraken offers numerous different trading pairs involving Bitcoin.

Presuming we can agree that this production satisfies any obligations under the subpoena, I expect we could produce such records by next week. All documents produced would be Confidential under the Protective Order.

Best regards,
Daniel Clarkson

On Sun, Aug 27, 2023 at 10:38 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

  Daniel,

  We understand that you are back at the office this week. Please let us know when you can provide an

**EXHIBIT N**

update/schedule a call to discuss an update.

Thanks,

Matt

Matthew A. Lafferman
Partner

⊙ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Michael OConnor <michaelo@kraken.com>
**Sent:** Thursday, August 17, 2023 8:23 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>; Daniel Clarkson <daniel.clarkson@kraken.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

Mr. Lafferman -

Mr. Clarkson is out until August 25th. I understand that he attempted to connect with internal stakeholders on this matter before taking leave, but was unable to complete his inquiries. I expect he will get back to you the week following next.

Best regards,

Michael O'Connor
Associate General Counsel
Payward, Inc. d/b/a Kraken


On 8/17/23 8:15 PM, Lafferman, Matthew A. wrote:
> Daniel,
>
> Please let us know if you have any updates on Request No. 4 as discussed below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>

EXHIBIT N

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com>

> Sent: Monday, August 14, 2023 8:57 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>

> Cc: Califano, Mark G. <mark.califano@dentons.com>; Michael O'Connor <michaelo@kraken.com>; Marco Santori <marco@kraken.com>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> Matt,

>

> We have already sent notifications to the three affected account holders regarding your subpoena and informed them of our intent to produce account records if they do not object by August 23. As for Request 4, we are still reviewing internally, and I will let you know our position later this week.

>

> Best regards,

> Daniel Clarkson

>

>

> On Mon, Aug 14, 2023 at 5:22 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> Daniel,

>

> We wanted to follow-up on our call last week. Can you let us know your client's position as to production of the materials that we have discussed during our meet and confers as soon as you can?

>

> Thanks,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>

> Sent: Thursday, August 10, 2023 3:28 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

**EXHIBIT N**

> Matt and Mark,
>
> I'm held up on another call. Don't think I'll be much longer, but will probably be a little beyond our call start. I can email you when I'm off.
>
> On Wed, Aug 9, 2023 at 5:28 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> No problem. Please see attached.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Wednesday, August 09, 2023 7:27 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt,
>
> Can you please also send me a fully digital version of the subpoena (i.e., not a scanned copy). It makes it much easier to deal with the digital asset addresses so they can be copied and pasted.
>
> Thanks,
> Dan
>
> On Tue, Aug 8, 2023 at 8:49 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> We circulated an invite for 1:30 pm MT. Let us know if that time do not work.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>

>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 9:01 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> I'm available on Thursday after 1pm MT or Friday after 11am MT.
>
> On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A.
> <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss. Let us know when you are available later this week.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Tuesday, August 08, 2023 12:09 PM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>; Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> [WARNING: EXTERNAL SENDER]
> _____
> Matt and Mark:
>
> Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.
>
> First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or "Wormhole UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any responsive records to those portions of the requests.
>
> Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of

EXHIBIT N

the three Kraken accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up call if that would be helpful.

>

> As for Request No. 4, I will review your proposal and get back to you.

>

> Thanks,

> Daniel Clarkson

>

>

> On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:

> Daniel,

>

> Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relation to Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").

>

> First, we will be withdrawing Request No. 6 of the Subpoena.

>

> Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should narrow the scope significantly.

>

> Please let us know when you can meet and confer this week to further discuss the above and next steps.

>

> Regards,

>

> Matt

> Matthew A. Lafferman

> Partner

>

> [D] +1 202 496 7303<tel:+12024967303>

>

> Assistant: Carlene A. Wright +1 202 408 7932

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>

> Sent: Monday, July 31, 2023 3:45 PM

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

> [WARNING: EXTERNAL SENDER]

> _____

> I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works for you.

>

> Thanks,

**EXHIBIT N**

> Dan
>
> On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A.
> <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>> wrote:
> Daniel,
>
> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303> | ?US Internal 47303
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Lafferman, Matthew A.
> Sent: Friday, July 28, 2023 4:46 PM
> To: daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Subject: RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
> Daniel,
>
> We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?
>
> Thanks,
>
> Matt
> Matthew A. Lafferman
> Partner
>
> [D] +1 202 496 7303<tel:+12024967303>
>
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
> Sent: Friday, July 28, 2023 12:47 AM
> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>>
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>>; Marco Santori
> <marco@kraken.com<mailto:marco@kraken.com>>
> Subject: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

**EXHIBIT N**

>

> [WARNING: EXTERNAL SENDER]

> _____

> Mr. Califano:

>

> We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of SEC v. Terraform Labs, Pte. Ltd. et al. Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.

>

> Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.

>

> Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.

>

> Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.

>

> Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.

>

> Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.

>

> Best regards,

>

> Daniel Clarkson

EXHIBIT N

> Senior Counsel
> Payward, Inc. d/b/a Kraken
> daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

EXHIBIT N

# EXHIBIT O

**Archived:** Wednesday, September 27, 2023 8:38:34 PM
**From:** Lafferman, Matthew A.
**Sent:** Tuesday, September 26, 2023 8:45:44 PM
**To:** Daniel Clarkson
**Cc:** Michael OConnor   Califano, Mark G.   Marco Santori   Landow, Alyssa   Waddell, Anne E.   Janda, Nick
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
**Importance:** Normal
**Sensitivity:** None

---

Daniel,

We can agree not to seek any additional data or documents pursuant to the currently pending subpoena.

We want to avoid seeking any further data, but because we cannot be certain how the case will proceed, we cannot foreclose the need for further information and cannot make any other assurances.

Regards,

Matt

Matthew A. Lafferman
Partner

+1 202 496 7303
Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

> On Sep 26, 2023, at 7:58 PM, Daniel Clarkson <daniel.clarkson@kraken.com> wrote:
>
> ⏍
> **[WARNING: EXTERNAL SENDER]**
> _____
> Matt,
>
> After further internal discussions, Kraken will produce the previously discussed data if you agree not to seek any additional data or documents pursuant to the currently pending subpoena and not to serve any additional subpoenas seeking data or documents demanded in the original subpoena. We believe such a representation should not be problematic to avoid revisiting or renegotiation of demands that have already been discussed in good faith. If you are not willing to abide by this minimum agreement, we will defend the motion in court.
>
> Best regards,
> Daniel Clarkson
>
>
> On Tue, Sep 26, 2023 at 3:24 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

**EXHIBIT O**

Daniel,

We can confirm that Kraken would satisfy its obligations under the current subpoena to produce trade data for May 6 through May 10 of all Terra Native Tokens pairs that you have represented that Kraken supports (Luna/USD, UST/USD, Luna/Euro, UST/Euro, UST/USDT, and UST/USDC), which will be produced in the same format as Kraken's prior production for Luna/USD and UST/USD, with one additional data field for anonymized client IDs.

However, as we have mentioned below, we cannot agree that no further subpoenas will be issued to Kraken in this matter. We can represent that we are working to avoid further requests, and we hope that this data should allow us to do that. But we cannot definitively commit to not issuing further discovery requests, especially as we do not know how the SEC intends to proceed after discovery.

Based on your email below, we assume that this means that you will not make the production identified below. Please let us know if you will do otherwise by the end of the day. If we do not hear from you by the end of the day, we intend to file our motion to compel tomorrow.

Regards,

Matt

Matthew A. Lafferman
Partner

☺ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Daniel Clarkson <daniel.clarkson@kraken.com>
**Sent:** Tuesday, September 26, 2023 2:50 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>
**Cc:** Michael OConnor <michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>; Waddell, Anne E. <anne.waddell@dentons.com>; Janda, Nick <nick.janda@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

Matt,

After consulting internally with our client, Kraken will agree to produce the following:

Completed trade data for May 6 through May 10 for the Luna/USD, UST/USD, Luna/Euro, UST/Euro, UST/USDT, and UST/USDC pairs (we recently confirmed that Kraken previously listed this pair).  The data will be produced in the same format as our prior production for Luna/USD and UST/USD, with one additional data field for anonymized client IDs.

Kraken will only produce this data on the condition that you agree in writing that this production will fully satisfy Kraken's obligations under the subpoena and that you will not serve any additional discovery requests on Kraken in this matter.  Without that agreement, Kraken will not move forward with production.  If you agree, we will endeavor to produce data by the end of next week (any production before then is infeasible due to our trade surveillance team being at an offsite this week).

Best regards,

Daniel Clarkson

On Fri, Sep 22, 2023 at 4:18 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> wrote:

> Michael,
>
> As I stated on our call, we would disagree with your characterization of our request as a rolling expansion or even an expansion at all. Based on the requests in our subpoena dated and served on June 28, 2023 and multiple meet and confers, we have made extensive efforts to narrow the requests in that subpoena to a very specific and limited set of materials.
>
> We would confirm that Kraken's reproduction of the trade data related to Request No. 4 from May 6 through May 10 to include all Terra Native Tokens pairs that you have represented that Kraken supports (Luna-USD,

EXHIBIT O

UST-USD, UST-Euro, Luna-Euro, and UST-USDT) and with anonymized account IDs will fully satisfy this subpoena.

However, we do not and cannot agree that no further subpoenas will be issued to Kraken in this matter.

We understand that your client does not consent to any motion to transfer this matter or expedite the hearing schedule that may be filed in conjunction with a motion to compel in relation to the subpoena.

Regards,

Matt

Matthew A. Lafferman
Partner

ⓐ +1 202 496 7303

Assistant: Carlene A. Wright +1 202 408 7932
Washington, DC

---

**From:** Michael OConnor <michaelo@kraken.com>
**Sent:** Friday, September 22, 2023 5:57 PM
**To:** Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>; Daniel Clarkson
<daniel.clarkson@kraken.com>
**Cc:** Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow,
Alyssa <alyssa.landow@dentons.com>; Waddell, Anne E. <anne.waddell@dentons.com>; Janda, Nick
<nick.janda@dentons.com>
**Subject:** Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

[WARNING: EXTERNAL SENDER]

**EXHIBIT O**

Mr. Lafferman -

Thank you for the courtesy of a call.

As you know, your request for data through May 10 represents a further rolling expansion of your client's demands even from your May 9 demand issued only two days ago. My client is extremely concerned about the burden placed by these slow-rolling, constantly-shifting demands.

With that in mind, I asked you whether production of the trading pairs referenced (Luna-USD, UST-USD, UST-Euro, Luna-Euro, and UST-USDT) from May 6 through May 10 will fully satisfy your current subpoena and no further subpoenas will be issued by your client to any Payward entity. You agreed to both points. On condition of that agreement, I will take your proposal to my client and let you know my client's position. Should my client agree to produce these records, that production is expressly conditioned on this agreement.

Should motion practice be required, however, my client does not consent to transfer, and does not consent to an expedited hearing schedule. This is a routine third-party subpoena and does not present the "exceptional circumstances" necessary to bypass the safeguards incorporated into Rule 45 for the benefit of third parties.

Best regards,

Michael O'Connor
Associate General Counsel
Payward, Inc. d/b/a Kraken


On 9/22/23 4:55 PM, Lafferman, Matthew A. wrote:
> Michael and Daniel,
>
> We want to make one last attempt to meet and confer on our final request. In addition to our request for May 9th trading data, we would also request the trading data for May 10th. Trading data shows that when UST lost its peg on May 9, LFG and TFL engaged in a major effort to support the price. On May 10th, that effort was overwhelmed by a tidal wave of trading. As a result, we believe that the trading data for May 10th is also directly relevant to our case.
>
> Please let us know if you agree to produce this requested data by the end of the day on Tuesday, September 26. Unless we hear from you by that deadline, we will proceed with filing a Motion to Compel on Wednesday, September 27.
>
> We also intend to move the Court to transfer the motion to compel to the SDNY and for an expedited hearing date. Please let us know whether you would consent to either of these motions by the end of the day on Tuesday, September 26. Again, if we don't hear from you on this by that deadline, we will assume that you do not consent and file it as such.

EXHIBIT O

> 
> Regards,
> 
> Matt
> Matthew A. Lafferman
> Partner
> 
> [D] +1 202 496 7303<tel:+12024967303>
> 
> Assistant: Carlene A. Wright +1 202 408 7932
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
> 
> 
> 
> From: Michael OConnor <michaelo@kraken.com>
> Sent: Wednesday, September 20, 2023 8:14 PM
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com>; Daniel Clarkson
<daniel.clarkson@kraken.com>
> Cc: Califano, Mark G. <mark.califano@dentons.com>; Marco Santori <marco@kraken.com>; Landow,
Alyssa <alyssa.landow@dentons.com>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> 
> [WARNING: EXTERNAL SENDER]
> _____
> 
> Mr. Lafferman -
> 
> Mr. Clarkson is out for the rest of the week.
> 
> If that is your position, we are happy to resolve this before a judge in the Northern District of California,
which as the place of compliance, is the sole jurisdiction where you can bring a motion to compel. See Fed. R.
Civ. P. (d)(2)(B)(i). We will accept service of said motion directed to
legal@kraken.com<mailto:legal@kraken.com>.
> 
> Best regards,
> Michael O'Connor
> Associate General Counsel
> Payward, Inc. d/b/a Kraken
> 
> 
> On 9/20/23 7:14 PM, Lafferman, Matthew A. wrote:
> 
> Daniel,
> 
> 
> 
> We would request that Kraken produces the trading data for May 9 (in the manner specified below). The
May 2022 depeg occurred through this date and there was a significant amount of trading volume of Terra

EXHIBIT O

Native Tokens (as defined in the Subpoena) that occurred on this day—as such, this data is clearly relevant to our case. If you refuse to produce the trading data for this day, we will move to compel the data.

>

>

>

> Although we have been working with you in good faith to narrow the production in the manner that is least burdensome to Kraken, we would remind you that Kraken's objections are waived because it served them after the deadline specified under Rule 45.

>

> Please let us know if you agree to this request by the end of the day on Thursday, September 21, 2023 (tomorrow). As mentioned below, if you object or we otherwise do not hear from you, in light of the fact that the discovery deadline coming up and this data is essential for building our defense, we will seek a motion to compel this data.

>

> Thanks,

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc> <https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>

>

> Sent: Wednesday, September 20, 2023 2:55 PM

>

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com> <mailto:Matthew.Lafferman@dentons.com>

>

> Cc: Michael OConnor <michaelo@kraken.com><mailto:michaelo@kraken.com>; Califano, Mark G. <mark.califano@dentons.com><mailto:mark.califano@dentons.com>; Marco Santori <marco@kraken.com>

EXHIBIT O

<mailto:marco@kraken.com>; Landow, Alyssa <alyssa.landow@dentons.com>
<mailto:alyssa.landow@dentons.com>

>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> [WARNING: EXTERNAL SENDER]

>

> _____

>

> Matt,

>

>

>

> Please note that Kraken's prior production of data was for May 6 through May 8, not May 9. Kraken will agree to produce the same time range of data for the other three Terra-based pairs that it supports: (1) UST/Euro, LUNA/Euro, and UST/USDT. Those are the only other "Terra Native Token" trading pairs offered by Kraken. We will include the anonymized IDs. However, as discussed, Kraken maintains its objection to producing any account profile or other client-identifying information. I expect it will take at least until later next week before Kraken can produce any additional data.

>

>

>

> Best regards,

>

> Daniel Clarkson

>

>

>

>

>

>

>

> On Wed, Sep 20, 2023 at 11:55 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>> wrote:

>

> Daniel,

>

>

>

> Thanks for taking the time to speak with us today. Per our discussion today, we would request that Kraken reproduce trade data related to Request No. 4 from May 6 – May 9, 2022 to include (1) all Terra Native Tokens (not just UST/USD and LUNA/USD pairings) and (2) anonymized account IDs, which will allow us to analyze trading at the account level.

>

>

>

> Please let us know if you agree to this request by the end of the day on Thursday, September 21, 2023 (tomorrow). As we discussed, if you object or we otherwise do not hear from you, in light of the fact that the discovery deadline coming up and this data is essential for building our defense, we intend to pursue a motion to compel.

>

>

>

> Thanks,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303> | US Internal 47303

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc><https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>>

>

> Sent: Tuesday, September 19, 2023 2:06 PM

>

> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>>

>

> Cc: Michael OConnor <michaelo@kraken.com<mailto:michaelo@kraken.com><mailto:michaelo@kraken.com><mailto:michaelo@kraken.com>>; Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>

<mailto:marco@kraken.com><mailto:marco@kraken.com>>; Landow, Alyssa
<alyssa.landow@dentons.com<mailto:alyssa.landow@dentons.com><mailto:alyssa.landow@dentons.com>
<mailto:alyssa.landow@dentons.com>>

>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> [WARNING: EXTERNAL SENDER]

>

> _____

>

> Matt,

>

>

>

> I can talk today after 2pm MT or tomorrow between 10am and 12pm MT.

>

>

>

> On Mon, Sep 18, 2023 at 2:07 'a0PM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>> wrote:

>

> We will go back and look at this. In the meantime, we still want to meet and confer on other issues. Please let
us know when you are available tomorrow or Wednesday to discuss.

>

>

>

> Regards,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>

**EXHIBIT O**

<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>>

>

> Sent: Monday, September 18, 2023 4:05 PM

>

> To: Lafferman, Matthew A.

<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>

<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>>

>

> Cc: Michael OConnor <michaelo@kraken.com<mailto:michaelo@kraken.com>

<mailto:michaelo@kraken.com><mailto:michaelo@kraken.com>>; Califano, Mark G.

<mark.califano@dentons.com<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com>

<mailto:mark.califano@dentons.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>

<mailto:marco@kraken.com><mailto:marco@kraken.com>>; Landow, Alyssa

<alyssa.landow@dentons.com<mailto:alyssa.landow@dentons.com><mailto:alyssa.landow@dentons.com>

<mailto:alyssa.landow@dentons.com>>

>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> [WARNING: EXTERNAL SENDER]

>

> _____

>

> Matt,

>

>

>

> We have already produced records for the Kraken account involved in this transaction. It is the account with the Public Account ID: AA38 N84G E265 ATOI. The transaction you are referring to is the deposit of 2,500,000 USDC reflected in the account ledger (produced at PAYWARD_000060) on May 8, 2022.

>

>

>

> Best,

>

> Daniel Clarkson

>

>

>

>

>

>

>

> On Mon, Sep 18, 2023 at 12:44 'a0PM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>> wrote:

>

> Daniel,

>

>

>

> We have had a chance to review the data, and it is missing some information that you agreed to produce—notably the information related to the deposit of USDC into the Targeted Wallet address 0x447218712fb6472ea43e1d7d280a3aa4c43f754e on May 8, 2022.

>

>

>

> Please let us know when you would be available tomorrow or Wednesday to meet and confer. With us almost two months past the response date of the subpoena, we would appreciate a prompt response to this email.

>

>

>

> Regards,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
<https://www.dentons.com/en/global-presence/united-states/washington-dc>

>

>

>

**EXHIBIT O**

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>>
<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>>

>

> Sent: Tuesday, September 05, 2023 3:29 PM

>

> To: Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>>

>

> Cc: Michael OConnor <michaelo@kraken.com<mailto:michaelo@kraken.com>>
<mailto:michaelo@kraken.com><mailto:michaelo@kraken.com>>; Califano, Mark G.
<mark.califano@dentons.com<mailto:mark.califano@dentons.com>><mailto:mark.califano@dentons.com>>
<mailto:mark.califano@dentons.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>>
<mailto:marco@kraken.com><mailto:marco@kraken.com>>; Landow, Alyssa
<alyssa.landow@dentons.com<mailto:alyssa.landow@dentons.com>><mailto:alyssa.landow@dentons.com>>
<mailto:alyssa.landow@dentons.com>>

>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> [WARNING: EXTERNAL SENDER]

>

> _____

>

> Matt,

>

>

>

> We produced the account records earlier today. As for the trading data, I still expect that to be produced this
week once our Market Surveillance team has finished assembling the data.

>

>

>

> Best regards,

>

> Daniel Clarkson

>

>

>

> On Mon, Sep 4, 2023 at 6:58 'a0PM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>> wrote:

>

**EXHIBIT O**

> Daniel,
>
>
>
> Please let us know when we can expect the production.
>
>
>
> Thanks,
>
>
>
> Matt
>
> Matthew A. Lafferman
>
> Partner
>
>
>
> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>
>
>
>
> Assistant: Carlene A. Wright +1 202 408 7932
>
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
<https://www.dentons.com/en/global-presence/united-states/washington-dc>
>
>
>
>
>
>
>
> From: Lafferman, Matthew A.
>
> Sent: Thursday, August 31, 2023 12:18 PM
>
> To: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>>
>
> Cc: Michael OConnor <michaelo@kraken.com<mailto:michaelo@kraken.com>
<mailto:michaelo@kraken.com><mailto:michaelo@kraken.com>>; Califano, Mark G.
<mark.califano@dentons.com<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com>
<mailto:mark.califano@dentons.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>
<mailto:marco@kraken.com><mailto:marco@kraken.com>>; Landow, Alyssa
<alyssa.landow@dentons.com<mailto:alyssa.landow@dentons.com><mailto:alyssa.landow@dentons.com>

EXHIBIT O

<[mailto:alyssa.landow@dentons.com](mailto:alyssa.landow@dentons.com)>>

>

> Subject: RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> Daniel,

>

>

>

> We agree that any and all documents produced will be designed Confidential under the Protective Order.

>

>

>

> We would like to proceed with the materials below and review to determine whether we need additional data. Given that its more than a month since the response date indicated on the subpoena (July 28, 2023), and we have expert reports due on September 7, we would request that you expedite the production to the extent possible

>

>

>

> Best,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<[tel:+12024967303](tel:+12024967303)><[tel:+12024967303](tel:+12024967303)>

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<[https://www.dentons.com/en/global-presence/united-states/washington-dc](https://www.dentons.com/en/global-presence/united-states/washington-dc)>
<[https://www.dentons.com/en/global-presence/united-states/washington-dc](https://www.dentons.com/en/global-presence/united-states/washington-dc)>

>

>

>

>

>

>

**EXHIBIT O**

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>>

>

> Sent: Thursday, August 31, 2023 12:25 AM

>

> To: Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>>

>

> Cc: Michael OConnor <michaelo@kraken.com<mailto:michaelo@kraken.com>
<mailto:michaelo@kraken.com><mailto:michaelo@kraken.com>>; Califano, Mark G.
<mark.califano@dentons.com<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com>
<mailto:mark.califano@dentons.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>
<mailto:marco@kraken.com><mailto:marco@kraken.com>>

>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> [WARNING: EXTERNAL SENDER]

>

> _____

>

> Matt and Mark:

>

>

>

> Having discussed your subpoena further internally, Kraken is willing to produce the following:

>

>

>

>

>

> 1. The account records for the three accounts associated with the "Target Wallets" identified in the subpoena. As previously discussed, our standard production package will include profile information, communications, IP addresses, and trading history, and we view it as sufficient to respond to each of the requests relating to the Target Wallets (i.e., all requests except 4 and 6, which was withdrawn).

>

> 2. For Request 4, a spreadsheet of completed trade data on Kraken's platform in the UST/USD and LUNA/USD pairings for the three-day period starting on May 6, 2022, which would capture the UST de-peg. The data would not include client identifying information. We do not view the subpoena as seeking order data, and even if it did, producing such data would be much more voluminous, overbroad, and unduly burdensome. In addition, we view the request for trading data in Bitcoin as overbroad and unduly burdensome, particularly given the volume of trades and that Kraken offers numerous different trading pairs involving Bitcoin.

>

>

EXHIBIT O

>

> Presuming we can agree that this production satisfies any obligations under the subpoena, I expect we could produce such records by next week. All documents produced would be Confidential under the Protective Order.

>

>

>

> Best regards,

>

> Daniel Clarkson

>

>

>

>

>

>

> On Sun, Aug 27, 2023 at 10:38 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com> <mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>> wrote:

>

> Daniel,

>

>

>

> We understand that you are back at the office this week. Please let us know when you can provide an update/schedule a call to discuss an update.

>

>

>

> Thanks,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc>
<https://www.dentons.com/en/global-presence/united-states/washington-dc>

> 

> 

> 

> 

> 

> 

> 

> 

> 

> From: Michael OConnor <michaelo@kraken.com<mailto:michaelo@kraken.com>
<mailto:michaelo@kraken.com><mailto:michaelo@kraken.com>>

> 

> Sent: Thursday, August 17, 2023 8:23 PM

> 

> To: Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>>; Daniel Clarkson
<daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>
<mailto:daniel.clarkson@kraken.com>>

> 

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>
<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com>>; Marco Santori
<marco@kraken.com<mailto:marco@kraken.com><mailto:marco@kraken.com>
<mailto:marco@kraken.com>>

> 

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

> 

> 

> 

> [WARNING: EXTERNAL SENDER]

> 

> 

> 

> Mr. Lafferman -

> 

> 

> 

> Mr. Clarkson is out until August 25th. I understand that he attempted to

> 

> connect with internal stakeholders on this matter before taking leave,

> 

> but was unable to complete his inquiries. I expect he will get back to

> 

> you the week following next.

> 

>

> 
> Best regards,
> 
> 
> 
> Michael O'Connor
> 
> Associate General Counsel
> 
> Payward, Inc. d/b/a Kraken
> 
> 
> 
> 
> 
> On 8/17/23 8:15 PM, Lafferman, Matthew A. wrote:
> 
> Daniel,
> 
> 
> 
> Please let us know if you have any updates on Request No. 4 as discussed below.
> 
> 
> 
> Thanks,
> 
> 
> 
> Matt
> 
> Matthew A. Lafferman
> 
> Partner
> 
> 
> 
> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>
> 
> 
> 
> Assistant: Carlene A. Wright +1 202 408 7932
> 
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc>
> <https://www.dentons.com/en/global-presence/united-states/washington-dc>
> <https://www.dentons.com/en/global-presence/united-states/washington-dc>>
> 

EXHIBIT O

>
>
>
>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com>>
>
> Sent: Monday, August 14, 2023 8:57 PM
>
> To: Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com>>
>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>
<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com>>; Michael O'Connor
<michaelo@kraken.com<mailto:michaelo@kraken.com><mailto:michaelo@kraken.com>
<mailto:michaelo@kraken.com>>; Marco Santori <marco@kraken.com<mailto:marco@kraken.com>
<mailto:marco@kraken.com><mailto:marco@kraken.com>>
>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
>
>
> [WARNING: EXTERNAL SENDER]
>
> _____
>
> Matt,
>
>
>
> We have already sent notifications to the three affected account holders regarding your subpoena and
informed them of our intent to produce account records if they do not object by August 23. As for Request 4,
we are still reviewing internally, and I will let you know our position later this week.
>
>
>
> Best regards,
>
> Daniel Clarkson
>
>
>
>

EXHIBIT O

>

> On Mon, Aug 14, 2023 at 5:22 'a0PM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>> wrote:

>

> Daniel,

>

>

>

> We wanted to follow-up on our call last week. Can you let us know your client's position as to production of the materials that we have discussed during our meet and confers as soon as you can?

>

>

>

> Thanks,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc>
<https://www.dentons.com/en/global-presence/united-states/washington-dc>
<https://www.dentons.com/en/global-presence/united-states/washington-dc>>

>

>

>

>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>

<mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>>

>

> Sent: Thursday, August 10, 2023 3:28 PM

>

> To: Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>>

>

> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>
<mailto:mark.califano@dentons.com<mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com>>>

>

> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> [WARNING: EXTERNAL SENDER]

>

> _____

>

> Matt and Mark,

>

>

>

> I'm held up on another call. Don't think I'll be much longer, but will probably be a little beyond our call start. I can email you when I'm off.

>

>

>

> On Wed, Aug 9, 2023 at 5:28 'a0PM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>> wrote:

>

> No problem. Please see attached.

>

>

>

> Thanks,

>

>

>

> Matt

>

> Matthew A. Lafferman
>
> Partner
>
>
>
> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>
>
>
>
> Assistant: Carlene A. Wright +1 202 408 7932
>
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc><https://www.dentons.com/en/global-presence/united-states/washington-dc><https://www.dentons.com/en/global-presence/united-states/washington-dc>>
>
>
>
>
>
>
>
>
>
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>>
>
> Sent: Wednesday, August 09, 2023 7:27 PM
>
> To: Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>>
>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com<mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com>>>
>
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
>
>
> [WARNING: EXTERNAL SENDER]
>
> _____

> 
> Matt,
> 
> 
> 
> Can you please also send me a fully digital version of the subpoena (i.e., not a scanned copy). It makes it much easier to deal with the digital asset addresses so they can be copied and pasted.
> 
> 
> 
> Thanks,
> 
> Dan
> 
> 
> 
> On Tue, Aug 8, 2023 at 8:49 'a0PM Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com> <mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com> <mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>> wrote:
> 
> We circulated an invite for 1:30 pm MT. Let us know if that time do not work.
> 
> 
> 
> Thanks,
> 
> 
> 
> Matt
> 
> Matthew A. Lafferman
> 
> Partner
> 
> 
> 
> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>
> 
> 
> 
> Assistant: Carlene A. Wright +1 202 408 7932
> 
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc> <https://www.dentons.com/en/global-presence/united-states/washington-dc> <https://www.dentons.com/en/global-presence/united-states/washington-dc>>

EXHIBIT O

> 
> 
> 
> 
> 
> 
> 
> 
> 
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
> <mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>>
> 
> Sent: Tuesday, August 08, 2023 9:01 PM
> 
> To: Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>>
> 
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>
<mailto:mark.califano@dentons.com<mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com>>>
> 
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> 
> 
> 
> [WARNING: EXTERNAL SENDER]
> 
> _____
> 
> I'm available on Thursday after 1pm MT or Friday after 11am MT.
> 
> 
> 
> On Tue, Aug 8, 2023 at 10:14 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>> wrote:
> 
> Daniel,
> 
> 
> 
> We think there has been a disconnect with respect to the Target Wallets. Let's jump on a call to discuss, but

Exhibit O

us know when you are available later this week.

>

>

>

> Thanks,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>

>

>

>

> Assistant: Carlene A. Wright +1 202 408 7932

>

> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc><https://www.dentons.com/en/global-presence/united-states/washington-dc><https://www.dentons.com/en/global-presence/united-states/washington-dc>>

>

>

>

>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>>

>

> Sent: Tuesday, August 08, 2023 12:09 PM

>

> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com<mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com>>>; Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com><mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>>

EXHIBIT O

> 
> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>
> <mailto:michaelo@kraken.com<mailto:michaelo@kraken.com%3cmailto:michaelo@kraken.com>
> <mailto:michaelo@kraken.com%3cmailto:michaelo@kraken.com>>>; Marco Santori
> <marco@kraken.com<mailto:marco@kraken.com>
> <mailto:marco@kraken.com<mailto:marco@kraken.com%3cmailto:marco@kraken.com>
> <mailto:marco@kraken.com%3cmailto:marco@kraken.com>>>
> 
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> 
> 
> 
> [WARNING: EXTERNAL SENDER]
> 
> _____
> 
> Matt and Mark:
> 
> 
> 
> Thanks for the call on Wednesday and the follow-up email. I would like to clarify a few things.
> 
> 
> 
> First, as you know, several requests in the subpoena refer to transactions of "Wrapped UST (Shuttle)" or "Wormhole UST". I confirmed that Kraken never listed or supported those tokens, so we will not have any responsive records to those portions of the requests.
> 
> 
> 
> Second, my understanding from our call is that you view the accounts associated with the "Target Wallets" as potentially connected to Terra (UST) trading activity leading up to and on May 7, 2022. However, upon review of the three Kraken accounts that we have identified as associated with the "Target Wallet" network addresses, none of them conducted any transactions (i.e., deposits, withdrawals, or trades) in UST on Kraken's platform. In addition, only one account conducted any transactions in LUNA and those transactions all occurred on or after May 23, 2022. So this does not appear to correspond to the explanation of relevance we discussed. Please confirm you have identified the correct addresses in your subpoena and if so, let me know if you can clarify the relevance of these accounts to your case. I'm available for a follow-up call if that would be helpful.
> 
> 
> 
> As for Request No. 4, I will review your proposal and get back to you.
> 
> 
> 
> 
> Thanks,
> 
> Daniel Clarkson

>

>

>

>

>

> On Mon, Aug 7, 2023 at 11:31 'a0AM Lafferman, Matthew A.
<Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>
<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>> wrote:

>

> Daniel,

>

>

>

> Thank you for meeting with us last week. After reviewing, we wanted to provide you with our positions in relation to Requests No. 4 and 6 of the subpoena served on Kraken dated June 28, 2023 (the "Subpoena").

>

>

>

> First, we will be withdrawing Request No. 6 of the Subpoena.

>

>

>

> Second, in relation to Request No. 4 of the Subpoena, we propose narrowing the request to the following tokens: (1) All Terra Native tokens, including "Wrapped UST (Shuttle)," and "Wormhole UST," and (2) All BTC trading, which should narrow the scope significantly.

>

>

>

> Please let us know when you can meet and confer this week to further discuss the above and next steps.

>

>

>

> Regards,

>

>

>

> Matt

>

> Matthew A. Lafferman

>

> Partner

>

>

>

> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>

>

> 
> 
> Assistant: Carlene A. Wright +1 202 408 7932
> 
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc> <https://www.dentons.com/en/global-presence/united-states/washington-dc> <https://www.dentons.com/en/global-presence/united-states/washington-dc>>
> 
> 
> 
> 
> 
> 
> 
> 
> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com> <mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>>
> 
> Sent: Monday, July 31, 2023 3:45 PM
> 
> To: Lafferman, Matthew A. <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com> <mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com> <mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>>
> 
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com> <mailto:mark.califano@dentons.com<mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com>>>
> 
> Subject: Re: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
> 
> 
> 
> [WARNING: EXTERNAL SENDER]
> 
> _____
> 
> I'm available on Wednesday after 11:00 AM Mountain Time. Please send a calendar invite at whatever time works for you.
> 
> 
> 
> Thanks,
>

> Dan
>
>
> On Mon, Jul 31, 2023 at 1:30 'a0PM Lafferman, Matthew A.
> <Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com>
> <mailto:Matthew.Lafferman@dentons.com<mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>
> <mailto:Matthew.Lafferman@dentons.com%3cmailto:Matthew.Lafferman@dentons.com>>> wrote:
>
> Daniel,
>
>
>
> Following-up on the below. Please let us know when you have time to talk tomorrow or Wednesday on your response and objections below.
>
>
>
> Thanks,
>
>
>
> Matt
>
> Matthew A. Lafferman
>
> Partner
>
>
>
> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303> | US Internal 47303
>
>
>
> Assistant: Carlene A. Wright +1 202 408 7932
>
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc>
> <https://www.dentons.com/en/global-presence/united-states/washington-dc>
> <https://www.dentons.com/en/global-presence/united-states/washington-dc>>
>
>
>
>
>
>
>

EXHIBIT O

>
>
> From: Lafferman, Matthew A.
>
> Sent: Friday, July 28, 2023 4:46 PM
>
> To: daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com> <mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>
>
> Cc: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com> <mailto:mark.califano@dentons.com<mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com>>>
>
> Subject: RE: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd
>
>
>
> Daniel,
>
>
>
> We would like to discuss the subpoena and your objections. What availability do you have for a call Monday or Tuesday of next week?
>
>
>
> Thanks,
>
>
>
> Matt
>
> Matthew A. Lafferman
>
> Partner
>
>
>
> [D] +1 202 496 7303<tel:+12024967303><tel:+12024967303>
>
>
>
> Assistant: Carlene A. Wright +1 202 408 7932
>
> Washington, DC<https://www.dentons.com/en/global-presence/united-states/washington-dc<https://www.dentons.com/en/global-presence/united-states/washington-dc>
<https://www.dentons.com/en/global-presence/united-states/washington-dc>

<https://www.dentons.com/en/global-presence/united-states/washington-dc>>

>

>

>

>

>

>

>

>

> From: Daniel Clarkson <daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
<mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>>

>

> Sent: Friday, July 28, 2023 12:47 AM

>

> To: Califano, Mark G. <mark.califano@dentons.com<mailto:mark.califano@dentons.com>
<mailto:mark.califano@dentons.com<mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com><mailto:mark.califano@dentons.com%3cmailto:mark.califano@dentons.com>>>

>

> Cc: Michael O'Connor <michaelo@kraken.com<mailto:michaelo@kraken.com>
<mailto:michaelo@kraken.com<mailto:michaelo@kraken.com%3cmailto:michaelo@kraken.com>
<mailto:michaelo@kraken.com%3cmailto:michaelo@kraken.com>>>; Marco Santori
<marco@kraken.com<mailto:marco@kraken.com>
<mailto:marco@kraken.com<mailto:marco@kraken.com%3cmailto:marco@kraken.com>
<mailto:marco@kraken.com%3cmailto:marco@kraken.com>>>

>

> Subject: Subpoena to Payward, Inc in SEC v. Terraform Labs, Pte Ltd

>

>

>

> [WARNING: EXTERNAL SENDER]

>

> _____

>

> Mr. Califano:

>

>

>

> We are in receipt of the above-referenced subpoena to Payward, Inc. d/b/a Kraken ("Kraken") in the matter of SEC v. Terraform Labs, Pte. Ltd. et al. Kraken objects to the subpoena as vague, overbroad, and unduly burdensome, and will not agree to produce documents in response to the subpoena at this time. The bases for our objections are further summarized below. Kraken reserves all rights and objections, including the right to amend its response to the subpoena. If you would like to discuss the subpoena and Kraken's responses further, I am available for a call.

>

>

>

EXHIBIT O

> Most of the requests in your subpoena (Request Nos. 1-3 and 5-10) refer to two digital asset addresses defined as the "Target Wallets." Kraken has identified three accounts using those addresses, but there is no indication of how these accounts are relevant to your case. None of the accounts are in the name of Terraform Labs or Do Kwon. At this time, Kraken will not agree to produce personal informational or confidential account records related to these accounts without further explanation of their relevance and the consent of the account holders. In addition, several of these requests refer to capitalized terms such as "Target Transactions" and "Related Addresses" that are not defined in the subpoena.

>

>

>

> Kraken further objects to Request No. 4, which seeks trading histories for "all Kraken affiliated accounts and all Kraken user accounts where one or more of the Hot Wallets was an intermediary, the transferor, or the recipient of any Terra Native Token, 'Wrapped UST (Shuttle)' and 'Wormhole UST,' and/or Third Party Token between May 1, 2022 and May 30, 2022." This request is extremely overbroad and unduly burdensome. The 15 digital asset addresses defined as the "Hot Wallets" are institutional addresses used by Kraken, not addresses that correspond to a specific client account. Thus, it is blatantly overbroad to expect Kraken to produce transaction histories for those addresses, particularly involving "Third Party Tokens," which the subpoena defines as "any other coin or token" that uses a blockchain. Thus, the subpoena is effectively seeking complete transaction histories for those institutional addresses during the specified time period. Kraken will not agree to produce documents in response to this request.

>

>

>

> Kraken further objects to Request No. 6, which asks for "Documents sufficient to identify the manner in which Kraken custodied, controlled, or facilitated the transfer of tokens or fiat currency that relates to the Target Transactions." This request is vague, overbroad, and has no apparent relevance to your case. First, "Target Transactions" is not a defined term in the subpoena. Second, even if it was, it is unreasonable to expect Kraken to produce documents regarding how it custodies or facilitates the transfer of assets. Such information touches upon confidential and proprietary information that is critical to Kraken's business and security measures.

>

>

>

> Kraken further objects to Request No. 7. Kraken will not agree to produce "All Documents regarding any of the Target Wallets that [have been disclosed] to any government agency, investigative body, tribunal, grand jury, prosecutor, or public official, irrespective of jurisdiction." This request is overbroad and unduly burdensome. It is unclear what relevance such documents have to your case. Moreover, this request could require production of documents that Kraken is not at liberty to disclose, such as Suspicious Activity Reports.

>

>

>

> Kraken further objects to Request No. 10, which seeks "All Communications and Documents regarding any actual or suspected violations of any terms or contractual Agreements governing the use of Your Platform, or any law or regulation (irrespective of jurisdiction) that concerns any account associated with a Target Wallet or Related Addresses." In addition to the aforementioned objections, this request would capture privileged information, given that it seeks documents regarding Kraken's legal assessment of potential violations of its Terms of Service or applicable laws and regulations.

>

EXHIBIT O

>
>
> Best regards,
>
>
>
> Daniel Clarkson
>
> Senior Counsel
>
> Payward, Inc. d/b/a Kraken
>
> daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com>
<mailto:daniel.clarkson@kraken.com<mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com><mailto:daniel.clarkson@kraken.com%3cmailto:daniel.clarkson@kraken.com>>

**EXHIBIT O**